## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER**<br>**1718 Connecticut Ave., N.W.**<br>**Suite 200**<br>**Washington, DC 20009**<br><br>        **Plaintiff,**<br><br>    **v.**<br><br>**THE UNITED STATES TRANSPORTATION**<br>**SECURITY ADMINISTRATION**<br>**601 South 12th Street**<br>**Arlington, VA 20598**<br><br>        **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **Civil Action No._____**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR INJUNCTIVE RELIEF

1.     This is an action under the Freedom of Information Act ("FOIA"),

5 U.S.C. § 552 (2010), for injunctive and other appropriate relief, seeking the release of agency

records requested by the Electronic Privacy Information Center from the United States

Transportation Security Administration.

2.     This lawsuit challenges TSA's failure to disclose documents in response to two of

EPIC's Freedom of Information Act ("FOIA") requests ("EPIC's FOIA Requests") to the agency.

3.     EPIC's FOIA Requests seek agency records concerning the specifications and

testing of automated target recognition ("ATR") technology in relation to TSA's full body scanner

program.

4.     Though EPIC filed its first FOIA request concerning ATR technology in June 2010,

TSA has failed to disclose a single record, and has failed to comply with agency deadlines under the

FOIA.

5.    EPIC asks the Court to immediately order the disclosure of all responsive records.

6.    On February 1, 2011, TSA began testing ATR software, operating on its current full body scanner hardware, at Las Vegas McCarran International Airport.

7.    TSA plans to begin testing ATR software, operating on its current full body scanner hardware, at Hartsfield Jackson Atlanta International Airport and Ronald Reagan Washington National Airport in the near future.

8.    Body scanner vendors have claimed that ATR technology will partially address the privacy risks posed by body scanners.

9.    However, neither the manufacturers not TSA has disclosed any documents or provided any evidence that the ATR software prevents body scanner from capturing, storing, and transmitting naked images of air travelers.

10.    TSA claims that the ATR technology "automatically detect[s] potential threats and show their location on a generic image of a person," but fails to reveal whether the generic image merely obscures an underlying naked image of a traveler that is nonetheless susceptible to capture, storage, and transmittal.

11.    EPIC seeks agency records that detail the operation and capabilities of the ATR software, permitting a public analysis of the sufficiency or insufficiency of ATR in mitigating risks to travelers' privacy.

**Jurisdiction and Venue**

12.    This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) (2010) and 5 U.S.C. § 552(a)(6)(C)(i) (2010). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2010). Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) (2010).

## Parties

13.     Plaintiff Electronic Privacy Information Center ("EPIC") is a public interest research organization incorporated as a not-for-profit corporation in Washington, D.C.  EPIC's activities include the review of federal activities and policies to determine their possible impacts on civil liberties and privacy interests.  Among its other activities, EPIC publishes books, reports, and a bi-weekly electronic newsletter.  EPIC also maintains a heavily visited Internet site, http://www.epic.org, which contains extensive information regarding privacy issues, including information EPIC has obtained from federal agencies under the FOIA. EPIC routinely and systematically disseminates information to the public.  This Court recognized EPIC's role as a representative of the news media in *EPIC v. Dep't of Defense,* 241 F. Supp. 2d. 5 (D.D.C. 2003).

14.     Defendant United States Transportation Security Administration ("TSA") is a component of the Department of Homeland Security, established in the Executive Branch of the United States Government. TSA is an agency within the meaning of 5 U.S.C. § 552(f)(1) (2010).

## Facts

### DHS is Implementing Full Body Scanner Technology as Primary Screening for Air Travelers

15.     In February 2007, TSA, a DHS component, began testing full body scanners – also called "whole body imaging" and "advanced imaging technology" – to screen air travelers.

16.     Full body scanners produce detailed, three-dimensional images of individuals.

17.     Experts have described full body scans as a "digital strip search."

18.     TSA is using full body scanner systems at airport security checkpoints, screening passengers before they board flights.

19.     TSA has provided various assurances regarding its use of body scanners.

20.     TSA has stated that body scanners would not be mandatory for passengers and that

3

images produced by the machines cannot be stored, transmitted, or printed.

21.     An EPIC FOIA lawsuit against DHS later revealed that TSA's body scanner images can be stored and transmitted.

22.     On February 18, 2009, TSA announced that it would require passengers at six airports to submit to full body scanners in place of the standard metal detector search, which contravenes its earlier statements that full body scanners would not be mandatory.

23.     On April 6, 2009, TSA announced its plans to expand the mandatory use of full body scanners to all airports.

24.     On June 4, 2009, the U.S. House of Representatives passed HR 2200, a bill that would limit the use of full body scanner systems in airports. The bill prevents use of full body scanner technology for primary screening purposes.

25.     HR 2200 was referred to the Senate for consideration on June 8, 2009. The legislation was referred to the Senate Committee on Commerce, Science, and Transportation. It remains pending through the date of this pleading.

26.     Since June 2009, the TSA has installed hundreds of additional full body scanners in American airports.

27.     On July 2, 2010, EPIC filed suit in the U.S. Court of Appeals for the D.C. Circuit to suspend the TSA's full body scanner program.

**ATR Software is Being Developed for Use in Airports Across the United States**

28.     ATR software is currently in use at the Schiphol Airport in Amsterdam, the Netherlands.

29.     On April 30, 2010, the TSA announced that it had begun development of ATR software.

4

30.     On September 17, 2010, the TSA announced that it had started testing ATR software.

31.     On February 1, 2011, the TSA announced that it would begin testing ATR software on AIT machines in three trial airports in Las Vegas, Atlanta, and Washington, D.C.

### EPIC's First FOIA Request

32.     On June 15, 2010, EPIC transmitted, via certified mail, a written FOIA request to TSA for agency records ("EPIC's First FOIA Request"). EPIC requested the following agency records:

a) All specifications provided by TSA to automated target recognition manufacturers concerning automated target recognition systems;

b) All records concerning the capabilities, operational effectiveness, or suitability of automated target recognition systems, as described in Secretary Napolitano's letter to Senator Collins;

c) All records provided to TSA from the Dutch government concerning automated target recognition systems deployed in Schiphol Airport, as described in Secretary Napolitano's letter to Senator Collins;

d) All records evaluating the [full-body scanning] program and determining automated target recognition requirements for nationwide deployment, as described in Secretary Napolitano's letter to Senator Collins.

33.     EPIC's First FOIA Request requested "News Media" fee status under the Freedom of Information Act, based on its status as a representative of the news media.

34.     EPIC's First FOIA Request further requested waiver of all duplication fees.

35.     Disclosure of the records requested in EPIC's First FOIA Request will contribute significantly to public understanding of the operations and activities of the government.

36.     On June 24, 2010, the TSA wrote to EPIC acknowledging receipt of EPIC's First FOIA Request and invoking a 10-day extension for the request under 5 U.S.C. § 552(a)(b)(B).

37.     The TSA constructively denied EPIC's request for a waiver of all duplication fees in

EPIC's First FOIA Request.

38.    The TSA assigned EPIC's First FOIA Request the case number TSA10-0609.

39.    On October 5, 2010, EPIC transmitted a written administrative appeal to TSA ("EPIC's First Administrative Appeal to TSA"), which appealed the TSA's denial of a waiver of duplication fees and non-responsiveness.

40.    EPIC's First Administrative Appeal to TSA was received on October 12, 2010.

41.    On October 18, 2010, TSA sent EPIC a letter that purported to "acknowledge receipt of your October 5, 2010 Freedom of Information Act (FOIA) request [*sic*] to the Transportation Security Administration (TSA), October 5, 2010 [*sic*] and appealing our decision to deny [*sic*] your FOIA request number TSA10-0609 ..."

42.    The TSA's October 18, 2010 letter further states that the "request has been assigned reference number TSA11-0023."

43.    The TSA's October 18, 2010 letter invokes a 10-day extension of the deadline under 5 U.S.C. § 552(a)(6)(B), stating that the "request seeks numerous documents that will necessitate a thorough and wide-ranging search." And the letter goes on to invite EPIC to "narrow the scope of your request [*sic*]."

44.    On November 2, 2010 the TSA sent EPIC an undated letter in further response to EPIC's First Administrative Appeal to TSA. The letter stated that "[a]lthough the FOIA permits you to appeal a constructive denial of your request, [the TSA] cannot act until an initial determination has been made as to whether any responsive records may be released."

45.    The TSA's October 18, 2010 and November 2, 2010 letters are an explicit or constructive denial of EPIC's First Administrative Appeal to TSA. The letters purport to respond to EPIC's First Administrative Appeal to TSA, but instead unlawfully place EPIC's appeal in a queue

for processing FOIA requests.

46.     Through the date of this pleading, which is filed more than thirty working days after the receipt of EPIC's First Administrative Appeal by the TSA, the TSA has not substantively responded to EPIC's First Administrative Appeal to the TSA.

47.     Through the date of this pleading, the TSA has not made a single determination concerning the substance of EPIC's First FOIA Request.

48.     Through the date of this pleading, the TSA has failed to produce any documents in response to EPIC's First FOIA Request.

### EPIC's Second FOIA Request

49.     On October 5, 2010, EPIC transmitted, via certified mail, a written FOIA request to United States Department of Homeland Security (DHS) for agency records ("EPIC's Second FOIA Request"). EPIC requested the following agency records:

a) All records provided from L3 Communications or Rapiscan in support of the submission or certification of ATR software modifications;

b) All contracts, contract amendments, or statement of work related to the submission or certification of ATR software modifications;

c) All information, including results, of government testing of ATR technology, as referenced by Greg Soule of the TSA in an e-mail to Bloomberg News, published September 8, 2010.

50.     EPIC requested expedited processing for EPIC's Second FOIA Request on the grounds that there was an "urgency to inform the public about an actual or alleged federal government activity."

51.     EPIC's Second FOIA Request also requested "News Media" fee status under the Freedom of Information Act, based on its status as a representative of the news media.

52.     EPIC's Second FOIA Request further requested waiver of all duplication fees.

53.     Disclosure of the records requested in EPIC's Second FOIA Request will contribute

significantly to public understanding of the operations and activities of the government.

54.     On October 20, 2010, the DHS wrote to EPIC acknowledging receipt of EPIC's Second FOIA Request and referring the request to the TSA. The DHS assigned EPIC's Second FOIA Request the case number DHS/OS/PRIV 11-0042.

55.     On November 8, 2010, the TSA wrote to EPIC acknowledging receipt of EPIC's Second FOIA Request. The TSA referenced case number TSA11-0080 in the subject line of their letter to EPIC, and later stated that they had assigned EPIC's Second FOIA Request reference number TSA10-0080.

56.     TSA denied EPIC's request for expedited processing in EPIC's Second FOIA Request.

57.     TSA denied EPIC's request for a waiver of all duplication fees in EPIC's Second FOIA Request.

58.     On December 14, 2010, EPIC transmitted a written administrative appeal to TSA ("EPIC's Second Administrative Appeal to TSA"), which appealed the TSA's denial of expedited processing, denial of a waiver of duplication fees, and non-responsiveness.

59.     EPIC's Second Administrative Appeal to TSA was received on December 20, 2010.

60.     On December 27, 2010, TSA sent EPIC a letter that purported to "acknowledge receipt of your December 14, 2010 correspondence to the Transportation Security Administration (TSA), to appeal TSA's decision regarding your request for a fee waiver and expedited processing for Freedom of Information Act (FOIA) request TSA appeal [*sic*] to TSA11-0080 (constructive denial and fee waiver) [*sic*]. Your request was received in this office on December 27, 2010 [*sic*]."

61.     The TSA's October 18, 2010 letter further states that the "request has been assigned reference number TSA11-0257."

8

62.     The TSA's December 27, 2010 letter invokes a 10-day extension of the deadline under 5 U.S.C. § 552(a)(6)(B), stating that the "request seeks numerous documents that will necessitate a thorough and wide-ranging search." And the letter goes on to invite EPIC to "narrow the scope of your request [*sic*]."

63.     The TSA's December 27, 2010 letter is an explicit or constructive denial of EPIC's Second Administrative Appeal to TSA. The letters purport to respond to EPIC's Second Administrative Appeal to TSA, but instead unlawfully places EPIC's appeal in a queue for processing FOIA requests.

64.     Through the date of this pleading, which is filed more than thirty working days after the receipt of EPIC's Second Administrative Appeal by the TSA, the TSA has not substantively responded to EPIC's Second Administrative Appeal to the TSA.

65.     Through the date of this pleading, the TSA has not made a single determination concerning the substance of EPIC's Second FOIA Request.

66.     Through the date of this pleading, the TSA has failed to produce any documents in response to EPIC's Second FOIA Request.

**Count I**
**Violation of the FOIA: Failure to Comply With Statutory Deadlines and**
**Wrongful Withholding of Agency Records in Regard to EPIC's First FOIA Request**

67.     Paragraphs 1-66 above are hereby incorporated by reference as if set forth fully herein.

68.     TSA's response to EPIC's First FOIA Request violated the statutory deadlines imposed by the FOIA, including the deadlines set forth in 5 U.S.C. § 552(a)(6)(A) (2010).

69.     TSA has wrongly withheld responsive agency records from EPIC.

70.     EPIC has exhausted the applicable administrative remedies with respect to EPIC's

First FOIA Request.

71.     EPIC is entitled to injunctive relief compelling the release and disclosure of the requested agency records.

### Count II
### Violation of the FOIA: Failure to Comply With Statutory Deadlines and Wrongful Withholding of Agency Records in Regard to EPIC's First FOIA Request

72.     Paragraphs 1-71 above are hereby incorporated by reference as if set forth fully herein.

73.     TSA's response to EPIC's Second FOIA Request violated the statutory deadlines imposed by the FOIA, including the deadlines set forth in 5 U.S.C. § 552(a)(6)(A) (2010).

74.     TSA has wrongly withheld responsive agency records from EPIC.

75.     EPIC has exhausted the applicable administrative remedies with respect to EPIC's Second FOIA Request.

76.     EPIC is entitled to injunctive relief compelling the release and disclosure of the requested agency records.

### Requested Relief

WHEREFORE, Plaintiff prays that this Court:

A.     order Defendant to make a complete determination regarding EPIC's FOIA Requests within ten days of the date of the Court's Order in this matter;

B.     order Defendant to conduct an adequate search for agency records responsive to EPIC's FOIA Requests within five working days of the date of the Court's Order in this matter;

C.     order Defendant to produce all responsive agency records to EPIC's FOIA Requests within ten days of the Court's Order in this matter;

D.    award Plaintiff its costs and reasonable attorneys' fees incurred in this action

pursuant to 5 U.S.C. § 552(a)(4)(E) (2010); and

E.    grant such other relief as the Court may deem just and proper.


                              Respectfully submitted,

               By:    _____

                              John Verdi, Esquire (DC Bar # 495764)
                              Marc Rotenberg, Esquire (DC Bar # 422825)
                              Amie Stepanovich, Esquire[*]
                              ELECTRONIC PRIVACY INFORMATION
                              CENTER
                              1718 Connecticut Avenue, N.W.
                              Suite 200
                              Washington, D.C. 20009
                              (202) 483-1140 (telephone)
                              (202) 483-1248 (facsimile)

Dated:  February 2, 2011

---

[*] Amie Stepanovich is barred in New York State. She is not currently admitted to practice in the District of Columbia.

11