**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:10-cv-0290 (ABJ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### DECLARATION OF PAUL SOTOUDEH

I, Paul Sotoudeh, do hereby declare as follows:

1. I am currently the Acting Freedom of Information Act (FOIA) Officer for the Transportation Security Administration ("TSA") within the Department of Homeland Security ("DHS").

2. Due to the nature of my official duties, I am familiar with DHS and TSA's obligations under FOIA and the Privacy Act, including application of the various exemptions. The statements made in this declaration are based on my personal knowledge, information made available to me in the performance of my official duties, and conclusions reached in accordance therewith.

3. The purpose of this declaration is to set forth the chronology of correspondence relating to the FOIA requests by the Plaintiff, the Electronic Privacy Information Center ("EPIC"), at issue in this action, to describe the searches conducted to identify responsive records, to explain TSA's procedures for processing responsive records; and to identify the basis for TSA's decision to withhold information requested by EPIC pursuant to exemptions 3, 4, 5

1

and 6 of the FOIA, and 114 U.S.C. § 114(r).

### EPIC's June 24, 2010 FOIA Request

4. By letter dated June 15, 2010, Ginger P. McCall submitted a FOIA request ("the request") on behalf of EPIC to DHS. The request is attached as Exhibit A. EPIC sought the following four categories of records:

> 1) All specifications provided by TSA to automated target recognition manufacturers concerning automated target recognition systems.
>
> 2) All records concerning the capabilities, operational effectiveness, or suitability of automated target recognition systems, as described in Secretary Napolitano's letter to Senator Collins.
>
> 3) All records provided to TSA from the Dutch government concerning automated target recognition systems deployed in Schiphol Airport, as described in Secretary Napolitano's letter to Senator Collins.
>
> 4) All records evaluating the FBS program and determining automated target recognition requirements for nationwide deployment, as described in Secretary Napolitano's letter to Senator Collins.

5. TSA assigned FOIA request identification number TSA10-0609 to the request.

6. By letter dated June 24, 2010, TSA acknowledged receipt of the request and invoked a 10-day extension of the request under 5 U.S.C. § 552(a)(b)(B) because EPIC sought numerous records. TSA also invited EPIC to narrow the scope of its request.

7. By letter dated October 5, 2010, EPIC wrote Kimberly Walton, TSA Special Counselor, stating that it was appealing "TSA's denial of EPIC's request for a fee waiver."

8. By letter dated October 18, 2010, TSA acknowledged receipt of EPIC's letter of October 5, 2010. TSA further advised that the first 100 pages of the release would be free and that EPIC would be charged ten cents ($.10) for each subsequent page.

### Scope of Search for Responsive Records

### EPIC's June, 24, 2010 Request

9. Automated Target Recognition (ATR) is an enhancement of existing Advanced Imaging Technology (AIT). TSA's FOIA Office identified the TSA offices that were most likely to have records concerning the four items in Plaintiff's June 2010 FOIA request and directed that they search for responsive records. The offices identified as likely to have responsive records were the Office of Security Technology ("OST"), the Office of Acquisitions, the Office of the Executive Secretary, the Office of Security Operations (OSO), the Office of Chief Counsel (OCC) and the Office of Global Strategies (OGS). These offices were therefore directed to search for responsive records. These offices were tasked on June 24, 2010 and began searching almost immediately..

10. The Office of Security Technology ("OST") is responsible for TSA's programs for transportation screening equipment and explosive detection solutions. Specifically, the Advanced Imaging Technology ("AIT") program is part of the Passenger Screening Program ("PSP") within the OST, which focuses on identifying, testing, procuring, deploying, and sustaining checkpoint security equipment that detects explosives and/or prohibited items that may be concealed on people and/or their carry-on items. OST also administers the contracts with the respective AIT vendors.

11. OST electronically searched for responsive records by searching the "AIT/ATR-related folder on the computer of the Deputy Program Manager for the Passenger Screening Program ("PSP"). OST also searched the Schiphol folder located in the classified records safe for responsive records. The FOIA office also consulted with the OST Deputy Assistant Administrator who personally recalled from his personal experience as a participant on the trip to Schiphol Airport in the Netherlands that, the Dutch Government shared information with DHS via an oral presentation but did not physically provide TSA or other DHS officials with actual

3

records pertaining to ATR test results during the visit referenced by Secretary Napolitano in her letter to Senator Collins. Thus, there were no records responsive to item 3 of EPIC's June 15, 2010 FOIA request.

12. The Office of Acquisitions maintains and manages all procurement activities for the PSP program. OA is responsible for contracting for goods and services, including such activity as procurement planning, pre-solicitation, solicitation, negotiation, evaluation, award and contract administration. A search of paper and computerized files within the office was conducted by contract number. Acquisitions searched the AIT/ATR contract files for responsive documents.

13. The mission of the Office of Global Strategies is to increase security by working proactively with foreign government and industry partners regarding overseas transportation operations affecting the U.S. OGS performed both an electronic and manual search at Headquarters (HQ OGS) by the OGC Chief of Staff, the Director for International Operations, and in the field by the Transportation Security Administration Representative (TSAR) for the region. The HQ OGS officials used the following terms in the electronic search conducted by OGS: "Advanced Imaging Technology," "AIT," "ATR," and "testing." The TSAR, who was located in Paris, conducted an electronic search using the terms: "ATR, Automated Threat Recognition, AIT, Schiphol, NCTB, Millimeter Wave, Body Scanner, Presentation, PowerPoint, Brochure, and Attachment." The TSAR also reviewed file folders that referenced the Dutch.

14. The Office of the Executive Secretary was tasked because this office maintains and tracks correspondence that pertains to officials in TSA's front office, including the Administrator, the Deputy Administrator, and that pertain to TSA interaction with the DHS

Office of the Secretary. The Executive Secretary conducted an electronic and manual search. The specific search terms used were "Dutch, KLM, ATR, Automated Target Recognition, AIT, Advanced Imaging Technology, Whole Body Imaging, and WBI. The Office of the Executive Secretary also searched for all Action Memos created between August 1, 2009 and June 25, 2010.

15. Finally, the FOIA office contacted the Office of Security Operations (OSO) because that office is responsible for operationalizing new technology both during the testing phase and ultimately once new technology is deployed. The Office of Technical Training, the Office of Operational Performance, and the Operations Improvement Branch within OSO facilitate the application of new technology, including during testing phases, in the operational setting with the workforce. The ATR points of contact searched their ATR folders for records concerning ATR operational effectiveness and produced responsive records.

16. Finally, the Office of Chief Counsel consulted the Deputy Chief Counsel for Procurement and the Assistant Chief Counsel for Information Law, both of whom determined that the responsive records were likely located within the Program Offices that ultimately located the responsive records.

### EPIC's October 5, 2010 FOIA Request

17. By letter dated October 20, 2010, Ginger P. McCall submitted a second FOIA request ("October 20, 2010 request") on behalf of EPIC to DHS. The request is attached as Exhibit B. EPIC sought the following three categories of records:

> 1. All records provided from L3 Communications or Rapiscan in support of the submission or certification of ATR software modifications;

2. All contracts, contract amendments, or statements of work related to the submission or certification of ATR software modifications;

3. All information, including results, of government testing of ATR technology, as referenced by Greg Soule of the TSA in an e-mail to Bloomberg News, published September 8, 2010.

18. DHS responded by letter indicating that the request was within TSA's purview, and was being referred to TSA for response. TSA sent EPIC a letter acknowledging receipt of its FOIA request on November 8, 2010, indicating that TSA had assigned case number TSA 11-0080 to that FOIA request.

19. On December 27, 2010, TSA received a letter from EPIC purporting to appeal TSA's denial of expedited processing, a denial of a waiver of duplication fees, and TSA's non-responsiveness.

### Scope of Search for Responsive Records

### EPIC's October 20, 2010 Request

20. TSA's FOIA Office identified the TSA offices that were most likely to have records concerning the three items in Plaintiff's October 20, 2010 request and directed that they search for responsive records. The offices identified as likely to have responsive records were the Office of Security Technology ("OST"), the Office of Acquisitions, and the Office of Security Operations (OSO). Although TSA initially began searching for responsive records pursuant to this FOIA request in December of 2010, the FOIA office determined that June 27, 2011 should be the search cut-off date because one office within TSA had not begun its search until that date.

21. The PSP Deputy Program Manager in the OST searched his AIT/ATR folder and located responsive records. The PSP Program Office also contacted the TSA Security Integration Facility (TSIF) to locate AIT/ATR test results because the TSIF is responsible for testing security technologies, processes, and procedures in a simulated operational environment

to support acquisition decisions, validate system conformance with technical specifications, and determine readiness to enter operational testing, evaluation, and deployment.

22. The Office of Acquisitions consulted the AIT/ATR contract file and determined that the responsive records were physically within the PSP Program Manager's office.

23. The FOIA office contacted the Office of Security Operations (OSO) because that office is responsible for operationalizing new technology both during the testing phase and ultimately once new technology is deployed. The Office of Technical Training, the Office of Operational Performance, and the Operations Improvement Branch within OSO facilitate the application of new technology, including during testing phases, in the operational setting with the workforce. The ATR points of contact searched their ATR folders for data concerning ATR operational testing and effectiveness work conducted in the field and produced responsive records.

## Release of Responsive Records

24. By letter dated July 29, 2011, TSA provided an interim response to EPIC's request, releasing 483 pages of responsive documents. In addition, TSA informed EPIC that records located in two databases of test results were withheld in full as Sensitive Security Information (SSI), and drafts were withheld in full as deliberative process privileged.

25. On August 22, 2011, TSA released an additional 166 pages of responsive records, and on September 8, 2011, TSA re-released eighteen (18) pages of TSA records to EPIC. These records were re-released after TSA, upon further examination and consultation, determined that certain excerpts previously withheld under Exemption 4 could, in fact, be publicly released. Accordingly, TSA's search for responsive records in both FOIA requests that are the subject of this action were reasonable.

## Exemptions

26. The following paragraphs generally describe the records withheld by TSA pursuant to FOIA's exemptions at 5 U.S.C. § 552(b). These records are described in greater detail in the TSA <u>Vaughn</u> index, attached as Exhibit C. The Vaughn index contains a complete and accurate description of the records' contents.

### *Exemption 6*

27. Exemption 6 of FOIA exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

28. As set forth in the TSA <u>Vaughn</u> index, records on the following Bates-numbered pages in TSA's records were redacted in part pursuant to Exemption 6 because they contained the names, email addresses, and phone numbers of both government and non-government employees: Bates Nos. 000004, 000055, 000057, 000059, 000060, 000150, 000264-000265, 000370-000373, 000378, 000390, 000393-000401, 000395-000396, 000399, 000422, 000447, 000451-000453, 000463-000464, 000477-000479, 000481-000483, 000485. This information is generally not available publicly. Release of direct contact information could subject the individuals to unwarranted solicitation and harassment. Release of names could subject the individuals to harassment or danger, given the high-profile, sensitive, and high-threat nature of aviation security. Release of the individuals' signatures could expose the individuals to impersonation or identity theft, as well as reveal the identities of key personnel.

29. Disclosure of the information specified above would constitute a clearly unwarranted invasion of the personal privacy of the individuals referenced. The privacy interests of the individuals referenced outweigh any minimal public interest in disclosure.

*Exemption 5*

30. Exemption 5 of FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption has been interpreted to encompass the privileges typically available to a party in litigation. As described below, TSA has asserted Exemption 5 to withhold information protected under the deliberative process privilege

*Deliberative Process Privilege*

31. TSA has asserted Exemption 5 to withhold certain information protected under the deliberative process privilege. The deliberative process privilege protects internal agency communications that are both predecisional, that is, that predate an agency decision or policy, and deliberative, that is, containing recommendations or opinions on legal or policy matters. It therefore applies to records such as recommendations, evaluations, drafts, proposals, suggestions, and other subjective documents (and excerpts thereof) which do not reflect final agency policy.

32. There are three primary concerns recognized under the deliberative process privilege: (1) to encourage open and frank discussion of policy matters between subordinates and supervisors; (2) to protect against the premature disclosure of proposed policies before they become final; and (3) to protect against public confusion that might result from the disclosure of reasons and rationales that were not, in fact, the ultimate grounds for the agency's action.

33. As described more specifically in the TSA <u>Vaughn</u> index, portions of the responsive records were withheld in part, and certain records were withheld in full, pursuant to the deliberative process privilege. These records, or portions thereof, are AIT/ATR PowerPoint

presentation, an Acquisition Review Board PowerPoint presentation, an AIT/ATR Letter of Assessment (Memorandum), Action Memoranda, and the Operational Test Plan (OTP) and Evaluation (OT&E) for AIT/ATR.

34. The records, or portions thereof, withheld pursuant to the deliberative process privilege fit into the following general categories. More specific descriptions are contained in the numbered entries in the TSA Vaughn index:

   a. **Draft documents, and deliberations, comments, and opinions offered during the drafting of documents.**

35. TSA Vaughn Index, Bates pages 000649-002693 constitute 44 draft versions of the AIT with ATR Functional Requirements Document (FRD). The final document was released to EPIC on July 29, 2011. The withheld records are drafts in their entirety, and the release of any portion of the draft would reveal the agency's deliberative process. Therefore, they were properly withheld under Exemption 5 of the FOIA. Additionally, because the final FRD provided to plaintiff contains SSI, these drafts also contain SSI. However, since the drafts were being withheld in their entirety under Exemption 5, and given that in prior AIT-related FOIA requests, plaintiff typically has agreed not to challenge our Exemption 5 designation over drafts, I decided to postpone the SSI review because such a review would unduly burden the SSI Program and delay release of the records. TSA, nonetheless, asserts Exemption 3 (49 U.S.C. § 114(r)) over those records and reserves the right to conduct the SSI review should this court so require.

   b. **Recommendations regarding future policy/testing steps:**

36. TSA Vaughn Index, Bates Nos. 000411-000412 were withheld in part from the AIT/ATR PowerPoint presentation. The AIT/ATR PowerPoint presentation was prepared by the TSA Office of Security Technology (OST) and presented in a briefing to the House

Appropriations Committee in connection with future funding for ATR. This document provides background on the ATR functionality and insight, opinions and deliberations on the testing results from the airport pilots. Bates pages 000413-000414 discuss positive operational impact/effectiveness data provided in furtherance of request for appropriations. Bates pages 000415-000417 contain the internal analysis of the pilot testing, including recommendations pertaining to the future use of ATR. These pages also discuss the "next steps" for ATR deployment and ATR testing. Bates pages 000418-000420 discuss future budget and purchase projections, along with a proposed procurement schedule and deployment goals. As such, they are the type of budgeting and planning deliberations that are protected under Exemption 5.

37. Similarly, bates pages 000423, 000425, 000427, 000431-000443, 000434-000436, 000437-000438, 000439-000440, 000442-000443, 000444-000445, 000448-000449, 000450, 000454-000455 and 000462 were withheld under Exemption 5 from the DHS Acquisition Review Board for ATR PowerPoint. The Acquisition Review Board PowerPoint was prepared by the Passenger Screening Program within the Office of Security Technology (OST) to brief the DHS Acquisition Review Board about TSA's proposal to acquire the ATR upgrade, and to seek permission to move forward with the ATR upgrades in the field. The information withheld from the bates pages referenced above discuss various proposals and future plans, strategy and risks for the acquisition, testing and evaluation, budgeting and cost projections, proposed procurement upgrades to the technology, proposed staffing plans and a projected acquisition schedule – all of which reflect deliberations, projections, proposals and recommendations.

38. Bates pages 000463-000476 were redacted partially or in full from a Letter of Assessment in the form of a Memorandum. The AIT/ATR Letter of Assessment was prepared by OST and used to brief the DHS Under Secretary for Management in furtherance of TSA's

request for authority to procure the ATR security upgrade. In particular, bates pages 000463-000464 discuss the criteria and thought processes underlying the assessment and follow-on recommendations for the ATR program. Bates pages 000466-000467 convey the internal policymaking progression and background deliberations that led to the conclusions in the assessment. Bates pages 000468-00475 constitute an analysis of ATR's compliance with specific security performance objectives, including recommendations for future testing and evaluation.

39. The June 6, 2011 Action Memorandum was prepared by the Office of Security Operations (OSO) and provided to OST to convey concurrence with and comment on OST's recommendations regarding deferring some of the AIT/ATR specification due dates. The June 7 Action Memorandum, also prepared by the Office of Security Operations (OSO) and provided to OST, discusses qualification testing results and provides recommendations concerning those results. The February, 2011 Memorandum was prepared by OST and presented to OSO. The redacted information advances opinions about the testing results and makes recommendations regarding contemplated changes to ATR qualification testing. Finally, the January, 2011 Memorandum, provided to OSO from OST also discusses qualification testing results and provides recommendations concerning those results. Information contained in the Action Memoranda located at bates pages 000478-000483 were withheld from release because they propose action on future policy decisions and contain contemplative discussions in furtherance of ATR procurement, evaluation, and deployment.

40. Finally, redacted information located in the range between bates pages 000490-000617 of the TSA <u>Vaughn</u> index derive from Appendix A of the Operational Test Plan (OTP) for Operational Testing and Evaluation (OT&E) for AIT/ATR. The OTP for OTE is an internal

document created by OST and presented internally that describes OST's proposal for how TSA will conduct the future pilot Operational Test and Evaluation. The overall testing proposal set forth in the OTP for the ATR OT&E thereafter was submitted by TSA to DHS's Office of Testing and Evaluation for review, deliberation, and ultimately for approval by DHS. In general, bates pages 000490, 000493-000494, 000495-000450, 000500, 000503, 000504-000514, 000515-000536, 000539, 000541, and 000548-000550 identify and describe TSA's plan for the entire ATR testing processes and the rationale behind those processes as proposed.. Specifically, bates page 000490 contains a discussion of proposed requirements that measure vendor capability along with a detailed discussions of AIT detection capabilities. Bates pages 000490 000495-000500 set forth a proposed operational testing schedule, a deliverable plan and additional testing goals, thus revealing proposals and internal thought processes. Bates page 000501, 000503-000514, 000515, 000532, and 000534-000536 discuss proposed testing methodology, specific threats, proposed operational testing data collection methods, testing features, criteria, and those pages reference performance specifications tested. Bates page 000539 references testing data review designations and bates pages 000541, 000548-000550 identify scoring and testing criteria which, again, reveal the component parts of the assessment process. Bates pages 000551-000558 reveal screen shots of operational testing data collection forms and bates page 000617 describes testing articles, all of which reveal proposed assessment tools.

### *Exemption 3*

41.   Exemption 3 of FOIA allows the withholding of information 'specifically exempted from disclosure by statute . . . if that statute "(A) (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii)

establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph." 5 U.S.C. § 552(b)(3).

42. 49 U.S.C. § 114(r) prohibits the disclosure of certain "sensitive security information" ("SSI") notwithstanding the FOIA. Disclosure of such information is prohibited if TSA determines that its disclosure would "(A) be an unwarranted invasion of personal privacy; (B) reveal a trade secret or privileged or confidential commercial or financial information; or (C) be detrimental to the security of transportation." 49 U.S.C. § 114(r)(1). TSA has promulgated regulations pursuant to § 114(r) defining specific categories of SSI, which are set forth at 49 C.F.R. Part 1520.

43. The TSA SSI Division is responsible for all aspects of the DHS-wide SSI Program, including policy, analysis, SSI Determinations, and regulatory execution. The SSI Division serves as the primary point of contact (POC) for the DHS Office of Security, other DHS Components, Stakeholders, and TSA as a whole on issues involving SSI in accordance with 49 C.F.R. Part 1520.

44. The SSI Division conducts assessments and reviews of TSA and DHS records, and upon request, records of other "covered persons" under 49 C.F.R. § 1520.7, to determine which information contained within those records is SSI. The SSI Division thereafter ensures that the appropriate SSI designations and redactions are made in accordance with 49 C.F.R. Part 1520. The prohibition on public release of SSI is not discretionary but is mandatory in accordance with 49 C.F.R. § 1520.15(a). The SSI Division also determines whether specific information should no longer be protected as SSI in accordance with 49 C.F.R. § 1520.5(c) and whether information previously not deemed SSI should be so designated.

45. Pursuant to 49 U.S.C. § 114(r) and its implementing regulations, TSA has determined that certain limited portions of records responsive to EPIC's requests were SSI pursuant to 49 U.S.C. § 114(r)(1)(C) because their disclosure would be detrimental to the security of transportation.

### *Exemption 4*

46. Exemption 4 of the FOIA protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."

47. Certain records, and portions thereof, located in TSA have been withheld pursuant to Exemption 4 because they contain confidential commercial information obtained from AIT manufacturers. As described in more detail in the Vaughn index, these documents include:

(1) Rapiscan Systems Qualification Data Package (QDP);

(2) L-3's AIT ATR QPL, which includes the ATR Operations Manual, the Qualification Plan, the ProVision Service/Technical Manual and the Operator Training Manual; and

(3) L-3's Request for Deviation

(4) Rapiscan Amendment of Solicitation/Modification of Contract and Order for Supplies or Services

48. Some of the information withheld pursuant to Exemption 4 is contained in a contract modification that was created by the Government. The information withheld under Exemption 4 was itself derived from information obtained from Rapiscan.

49. The records discussed below were withheld because they have been determined to be confidential under Exemption 4 whether they are voluntary or required submissions; that is, they would not customarily not be released to the public by the person from whom they were

obtained, and disclosure is likely to cause substantial harm to the competitive position of the vendors from whom the information was obtained.

50. As explained in greater detail in the Declarations of Peter Modica (Paragraphs 10-11), Whitney T. Weller (Paragraph 3), significant actual competition exists in the marketplace for AIT devices with ATR, not only in the United States, but worldwide. AIT devices with the ATR enhancement are in demand, and have been used, not only for airport screening, but at courthouses, prisons, and borders. Competitors in this industry include, among others, the two AIT manufacturers whose commercial information is at issue in this litigation.

51. As explained further in the declarations of Peter Modica (Paragraphs 4-9 and Whitney T. Weller (Paragraphs 6-16), disclosure of the information referenced above is likely to cause Rapiscan and L3 substantial competitive harm because it would enable competitors to gain insight into the proprietary technologies, methods, mechanisms, and design and operational parameters used by these companies, and to use this information to more effectively design and build their own systems, techniques, and approaches, which could then directly compete with the systems manufactured by Rapiscan and L3. As explained further in the declarations of Peter Modica (Paragraphs 4-9) and Whitney T. Weller (Paragraphs 6-16), disclosure of the information referenced above is likely to cause Rapiscan and L3 substantial competitive harm because it would enable competitors to gain insight into the proprietary technologies, methods, mechanisms, and design and operational parameters used by these companies, and to use this information to more effectively design and build their own systems, techniques, and approaches, which could then directly compete with the systems manufactured by Rapiscan and L3.

52. The FOIA office reviewed the pages that were withheld in full and determined that the entirety of the page was exempt from disclosure, and the release of any portion of the

proprietary content on the page would precipitate the substantial competitive harm identified by the manufacturers.

53. For the same reasons, as set forth in the Modica Declaration (Paragraphs 4-9), Weller Declaration (Paragraphs 6-16), these companies would not normally disclose this type of information to the public.

54. For these reasons, this information, described more specifically in the Vaughn index, has been withheld under Exemption 4.

## Conclusion

55. All TSA offices that were expected to maintain records concerning the categories identified in Plaintiff's FOIA requests were searched. Further, all non-exempt responsive records that were located were provided to Plaintiff. For all records partially withheld, TSA produced the segregable portion of each of the records, and provided a justification for withholding the remainder of the information in its response letters, and clearly marked each document with the applicable exemption. As noted above, some records were re-released after it was determined they contained additional releasable non-exempt information. No further segregation was possible.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

**Dated: September 16, 2011**

_[signature]_
Paul Sotoudeh
Acting Freedom of Information Act Officer
Transportation Security Administration
Department of Homeland Security