**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**EXHIBIT 2**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ELECTRONIC PRIVACY INFORMATION CENTER,

Plaintiff,

v.

THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

Defendant.

Case No. 1:11-cv-0290 (ABJ)

DECLARATION OF WILLIAM E. BENNER, JR.

I, WILLIAM BENNER, make this declaration in support of Defendant's Motion for Summary Judgment.

1. I have served as Chief of the Sensitive Security Information (SSI) Program of the Transportation Security Administration (TSA), a Department of Homeland Security (DHS) component, since August 2010. The statements made in this declaration are based upon my personal knowledge and information made available to me by subject-matter experts within TSA in the performance of my official duties, my personal review of the records in question, and conclusions reached in accordance therewith. My position as Chief of the SSI Program places me in a position to determine the potential harm to transportation security of releasing records containing potentially sensitive information.

2. The TSA SSI Program serves as the DHS principal point of contact and TSA program manager for implementing all laws and regulations regarding the development, maintenance,

safeguarding and disclosure of Sensitive Security Information (SSI), in order to protect the nation's transportation systems to ensure freedom of movement for people and commerce pursuant to 49 U.S.C. § 114(r).

3. The SSI Program analysts, with technical advice of program area subject-matter experts, conduct assessments and reviews of TSA and DHS records and, upon request, records of other "covered persons[1]" under 49 C.F.R. § 1520.7, to determine which information contained within those records is SSI. The SSI Program analysts possess a specialized knowledge of what types of information constitute SSI based on their information protection training and expertise and their routine consultations with subject-matter experts in the various DHS and TSA program offices who provide expertise on technical matters and describe the ever-evolving technological and systematic threats posed by our adversaries. The training and expert consultation enable the analysts to filter seemingly ordinary words, phrases and technological concepts through the prism of the current threat environment to determine how our systems and technology could be undermined by terrorists with the release of even seemingly innocuous terms, phrases, or concepts.

4. The SSI Program thereafter ensures that the appropriate SSI designations and protections (redactions) are made in accordance with 49 U.S.C. § 114(r) and 49 C.F.R. part 1520. The prohibition on public release of SSI is not discretionary but is mandatory in accordance with 49 C.F.R. § 1520.15(a). The SSI Program also determines whether specific information should no longer be protected as SSI in accordance with 49 C.F.R. § 1520.5(c) and whether information previously not deemed SSI should be so designated.

---

[1] Vendors submit to a vetting and clearance process to become covered parties, a term described in 49 C.F.R. § 1520.7, who are authorized to have access to relevant SSI. Vendors also must execute non-disclosure agreements governing the handling of SSI prior to receiving access to this sensitive information.

5. I understand that Plaintiff, the Electronic Privacy Information Center (EPIC), submitted Freedom of Information Act (FOIA) requests for records including: (1) All specifications provided by TSA to automated target recognition manufacturers (ATR) concerning automated target recognition systems; (2) All records concerning the capabilities, operational effectiveness, or suitability of automated target recognition systems as described in Secretary Napolitano's letter to Senator Collins; (3) All records provided to TSA from the Dutch government concerning automated target recognition systems deployed in Schiphol Airport, as described in Secretary Napolitano's letter to Senator Collins; (4) All records evaluating the FBS program and determining automated target recognition requirements for nationwide deployment, as described in Secretary Napolitano's letter to Senator Collins; (5) All records provided from L3 Communications or Rapiscan in support of the submission or certification of ATR software modifications; (6) All contracts, contract amendments, or statements of work related to the submission or certification of ATR software modifications; and (7) All information, including results, of government testing of ATR technology, as referenced by Greg Soule of the TSA in an e-mail to Bloomberg News, published September 8, 2010.

6. The SSI Program analysts and various program office subject-matter technical experts have reviewed the documents found by the FOIA office to be responsive to the FOIA requests referenced in paragraph 5. Specifically, the SSI Program and subject-matter experts reviewed the TSA AIT/ATR Performance Specifications, the AIT/ATR Functional Requirements Document (FRD) for an Advanced Imaging Technology (AIT) System with Automated Target Recognition (ATR) for Checkpoint Operations, the Rapiscan Systems Qualification Data Package (QDP), the L-3 Communications Security and Detection System AIT ATR QPL, the

Order/Statement of Work for the AIT System with ATR for Checkpoint Operations, the ATR OTE Weekly Data Report, the AIT/ATR PowerPoint, the DHS Acquisition Review Board for ATR PowerPoint, Internal TSA ATR Action Memoranda, the TSA Operational Test Plan and Operational Test and Evaluation for AIT/ATR, and the Final Lab Qualification Test for L-3's ProVision. Of the 649 pages released to EPIC, contained SSI and were protected in part or in full.

7. Exemption 3 of the Freedom of Information Act (FOIA) allows the withholding of information "specifically exempted from disclosure by statute . . . if that statute '(A) (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.'"

8. Pursuant to 49 U.S.C. § 114(r) and implementing regulations at 49 C.F.R. part 1520 ("TSA's implementing regulations"), information designated as Sensitive Security Information (SSI) is exempt from disclosure notwithstanding the Freedom of Information Act, 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, or any other laws because release would "(A) be an unwarranted invasion of personal privacy; (B) reveal a trade secret or privileged or confidential commercial or financial information; or (C) be detrimental to the security of transportation." 49 U.S.C. § 114(r)(1). TSA's determinations as to what constitutes SSI are exclusively reviewable by the United States Courts of Appeals. 49 U.S.C. § 46110.

9. Specifically, TSA's implementing regulations expressly prohibit disclosure of specified types of information relating to transportation security, including the following

categories of information relevant to the records responsive to EPIC's FOIA requests that are the subject of this action:

> Any performance specification and any description of a test object or test procedure, for [a]ny device used by the Federal Government or any other person pursuant to any aviation or maritime transportation security requirements of Federal law for the detection of any person, and any weapon, explosive, incendiary, or destructive device, item, or substance, 49 C.F.R § 1520.5(b)(4)(i);
>
> Any vulnerability assessment directed, created, held, funded, or approved by the DOT, DHS, or that will be provided to DOT or DHS in support of a Federal security program, 49 C.F.R § 1520.5(b)(5);
>
> Any procedures, including selection criteria and any comments, instructions, and implementing guidance pertaining thereto, for screening of persons, accessible property, checked baggage, U.S. mail, stores, and cargo, that is conducted by the Federal government or any other authorized person, 49 C.F.R § 1520.5(b)(9)(i);
>
> Performance or testing data from security equipment or screening systems, 49 C.F.R. § 1520.5(b)(9)(v);
>
> Any electronic image shown on any screening equipment monitor, including threat images and descriptions of threat images for threat image projection systems, 49 C.F.R § 1520.5(b)(9)(vi);
>
> Records created or obtained for the purpose of training persons employed by, contracted with, or acting for the Federal government or another person to carry out aviation, maritime, or rail transportation security measures required or recommended by DHS or DOT, 49 C.F.R § 1520.5(b)(10);
>
> Solicited or unsolicited proposals received by DHS or DOT, and negotiations arising therefrom, to perform work pursuant to a grant, contract, cooperative agreement, or other transaction, but only to the extent that the subject matter of the proposal relates to aviation or maritime transportation security measures; 49 C.F.R. § 1520.5(b)(14)(i);
>
> Trade secret information, including information required or requested by regulation or Security Directive, obtained by DHS or DOT in carrying out aviation or maritime transportation security responsibilities, 49 C.F.R. § 1520.5(b)(14)(ii); and
>
> Information obtained or developed in the conduct of research related to aviation, maritime, or rail transportation security activities, where such research is approved, accepted, funded, recommended, or directed by DHS or DOT, including research results. 49 C.F.R. § 1520.5(b)(15).

Below, I discuss the TSA's implementing Sensitive Security Information (SSI) regulation citations that apply to the various protections.

Performance Specifications/Test Objects and Test Procedures

10. Performance specifications, test objects and test procedures developed and deployed by vendors and potential contractors to demonstrate compliance with the DHS functional requirements documents or performance specifications are exempt from disclosure as SSI by 49 C.F.R. § 1520.5(b)(4)(i). Performance specifications are not released to the public. Rather, they are released only to (1) vendors who hold a facility clearance under the National Industrial Security Program (NISP) permitting access to classified information and only after the vendor executed non-disclosure agreements (NDAs) with TSA, (2) vendors who are already covered parties within the regulation and permitted access to SSI because they have existing contracts with TSA, or (3) vendors who are vetted and cleared as covered parties under the SSI regulations to have access to SSI, and again, only after they had executed non-disclosure agreements governing the handling of SSI.

11. Release of such information would be detrimental to transportation security because this type of information explicitly and implicitly reveals TSA testing performance parameters - what types of objects, materials and substances TSA is looking for, and by implication – items or anomalies that any screening equipment, including the AIT machines, may not be required to detect, critical facts that could be exploited by terrorists. Moreover, were this category of information released to the public, a terrorist could better be able to obtain the precise test objects with which TSA tests and trains and thereafter simulate the testing and/or training environment to learn how to circumvent TSA procedures. Finally, current intelligence confirms

that TSA security technology is an area adversaries have targeted for exploitation and circumvention.

12. Additionally, woven throughout several pages of these records are discussions devoted to testing interpretation, testing methodology, protocols, anomalies and analysis which, if released to the public, would reveal, among other things, TSA's processes, routines, vulnerabilities, the locations of those materials, and the limitations on TSA's capabilities. Below, I discuss the specific SSI redactions and the bases for those redactions.

13. Bates page 000002 was partially withheld from the Performance Specification because it identified a specific threat detection requirement. As such, the redacted information constituted SSI and was properly withheld from disclosure.

14. Bates pages 000003, 000005-000020, 000022, 000024, 000025-000031, 000033, 000034-000054 were withheld in part or in full from the AIT/ATR Functional Requirements Document (FRD), because it is a foundational document from which Performance Specifications are derived. The document defines minimum requirements for AIT systems with the ATR software upgrade that provide the capability to locate potential threats on a person.

15. In particular, the redacted pages contain the functional and operational requirements, or the "shalls" that reflect system requirements, thus constituting a performance specification. They also contain the FRD version revision history, along with portions of the table of contents that set forth a roadmap to our testing methodology and analysis. Notably, in a different threat environment, previous versions of specifications were released with less stringent protections. To protect our evolution in methodology and technology, it is imperative that the overall version revision history be protected to preclude our adversaries from comparing the contents of released documentation to determine our most recent or current standards. It is important to protect

development dates and milestones to deny our adversaries advance knowledge of when new capabilities may be deployed. Also redacted were specifications related to specific search items, screening techniques, security concepts, and in-depth discussion of AIT system requirements and methodology to be used to evaluate AIT systems. As such, the redacted information was properly withheld from disclosure.

16. Bates pages 000056, 000057, 000061-000087, 000088, 000089, 000090, 000091-000099,000103-000105, 000110-000112, 000113-000115, 000116-000120, 000126, 000132-000133, and 000135-000148 were withheld in part or in full from Rapiscan System's AIT Qualification Data Package (QDP) for ATR provided to TSA in November of 2010 in furtherance of the ATR procurement process. Specifically, the redacted information was withheld because they reference sensitive security plans, described test items and test procedures, identify the various functional requirements and the system's compliance with the requirements or specifications. As such, the redacted information constituted SSI and was properly withheld from disclosure.

17. Bates pages 000153, 000154, 000155-000162, 000163-000164, 000166-000171, 000173, 000175, 000177-000195, 000198-000228, 000239-000240, 000242-000245, 000247, 000249, 000252-000256, 000260, 000262, 000267-000290, 000291-000321, 000328-000329, 000331-000333, 000336, 000337-000352, and 000354-000355, 000357, and 000360-000367 were withheld either in part or in full from L-3's QPL, which include its Operations Manual, Qualification Plan, the ProVision Service/Technical and the Operator Training Manual. As with Rapiscan, the redacted information referenced and/or discussed the specific threat detection process, the software and testing methodology it used, including testing images, threat detection evaluation criteria and specification compliance information. The Operations Manual set forth

the operational procedures to be used by TSA officers. The Qualifications Plan contains details on the specification qualification and verification which included its testing methodology, description of test items, test plans and schedules, and the test equipment and design. The Service/Technical manual describes the actual system design and configuration and includes diagrams, measurements, dimensions, a description of component parts, and a discussion of system safety and installation. The Operator Training Manual describes the specific steps to be followed by the image operators and it references the threat objects and detection processes and capabilities throughout the document. As such, the redacted information constitutes SSI and was properly withheld from disclosure.

18. Bates pages 000382-000386, 000383, 000384-000386 were partially withheld from the TSA Task Order/Statement of Work for AIT System with ATR for Checkpoint Operations because they set forth performance specifications to be performed by the vendor.

19. Bates page 000403 was partially withheld from an ATR OTE Weekly Data Report, and bates pages 000406, 000407, 000411-000412, 000413, 000414, 000416-000417 were partially withheld from the AIT/ATR PowerPoint because they consist of ATR testing results, image analysis, and they contain screen shots of hidden items. As such, the images are also being withheld under 49 C.F.R. § 1520.5(b)(9)(vi). Bates pages 000411-000412 also discuss performance parameters and analysis, and thus, constitute specifications.

20. Bates pages 000424-000427, 000430, 000431-000432, 000436, 000437-000438, 000440, 000433, 000450, and 000470 were withheld in part from the DHS Acquisition Review Board for ATR PowerPoint because they set forth future proposed changes to specifications and other procurement upgrades. They also discuss ATR's capabilities, performance, including data

and performance metrics, effectiveness and testing methodology, and reference threat objects -- all of which constitute performance specifications, test objects and test procedures.

Bates pages 000466-000467, 000473-000474, 000477-000479 and 000481-000483 were withheld in part or in full because from the Letter of Assessment for the TSA L-3 Communications ProVision 100 AIT System with ATR Follow-on Operational Test and Evaluation (OT&E) and the June 6, 2011 and June 7, 2011 ATR Action Memoranda because the pages make specific references to security screening elements and concepts and provide an internal analysis of the specifications, evaluation, and outcomes of the respective vendor's AIT/ATR qualifications submissions.

21. Bates pages 000489, 000493-000494, 000497-000499, 000500-000503, 000504-000521, 000523, 000526, 000530-000536, 000538, 000542, 000544-000558, and 000566-000617 were withheld in full or in part from TSA's Operational Test Plan (OTP) and Operational Test and Evaluation (OT&E) or AIT/ATR because throughout they discuss and reference performance specifications or "shalls" and frequently reference, describe or feature test objects, proposed or actual test procedures, test methodology and criteria, test data collection methods, along with detailed discussions of threat detection capabilities. These bates pages also contain acronyms for undisclosed sensitive security specifications, and a matrix that sets forth each specification to be tested, the testing criterion, discussion of testing articles, the performance measurement and comments. As such, they are properly withheld as SSI.

22. Bates pages 000618, 000620, 000622, 000624, 000626-000637, and 000641-000649 were withheld in part or in full from the Final Report Lab Qualification Test for L-3 Pro-Vision because they consist almost entirely of testing methodology, test objects, qualification test

results, testing specifications, threat detection objectives, and several pages of tables setting forth test results.

Screening Procedures

23. The disclosure of "[a]ny procedures, including selection criteria and any comments, instructions, and implementing guidance pertaining thereto, for screening of persons, accessible property, checked baggage, U.S. mail, stores, and cargo, that is conducted by the Federal government or any other authorized person" is expressly prohibited by 49 C.F.R. § 1520.5(b)(9)(i). The release of this information could be detrimental to transportation security because knowledge of the particular algorithms, procedures, protocols, and safeguards used by TSA screeners could enable terrorists to evade or circumvent those procedures.

24. Bates pages 000000490-000494, and 000519 are being withheld in part from TSA's Operational Test Plan (OTP) and Operational Test and Evaluation (OT&E) or AIT/ATR because they reference procedures, including selection criteria and any comments, instructions, and implementing guidance pertaining thereto, for screening persons and are protected as SSI under 49 C.F.R § 1520.5(b)(9)(i).

Performance or Testing Data

25. The disclosure of performance or testing data from security equipment or screening systems is prohibited by 49 C.F.R. § 1520.5(b)(9)(v). Testing results can reveal vulnerabilities in that they identify the minimum testing standards which can be exploited by our adversaries. Test results expose potential limitations or capability gaps in certain technology. The testing performance parameters also expose critical elements that TSA highlights for qualification decisions, and they also document in greater detail technological limitations.

26. Bates 000425-000427, 000431-000432, 000436 were withheld from the DHS

Acquisition Review Board for ATR PowerPoint because they include an analysis of test results and ATR effectiveness as revealed by the test data.

27. Bates pages 000618, 000620, 000622, 000624, 000626-000637, and 000641-00064 from the Final Report Lab Qualification Test for L-3 Pro-Vision were withheld in part or in full under 9(v) because they consist of several pages of tables containing test results.

28. In addition, two databases containing raw ATR testing data pertaining to ATR testing were withheld in full under 49 C.F.R. § 1520.5(b)(9)(v).

Vulnerability Assessment

29. Any vulnerability assessment directed, created, held, funded, or approved by the DOT, DHS, or that will be provided to DOT or DHS in support of a Federal security program, constitutes SSI and is properly withheld under 49 C.F.R § 1520.5(b)(5). Vulnerability assessments, discussions of risk, technological limitations, and other research and development proposals either explicitly or implicitly identify areas where security is vulnerable – information that this country's adversaries pursue relentlessly and aim to exploit.

30. Bates 000424, 000437-000438 were partially withheld from the DHS Acquisition Review Board for ATR PowerPoint because they discuss risks and, as such, constitute a vulnerability assessment.

Electronic Images

31. The disclosure of "[a]ny electronic image shown on any screening equipment monitor, including threat images and descriptions of threat images for threat image projection systems," is prohibited by 49 C.F.R. § 1520.5(b)(9)(vi) due to the ability of terrorists to derive a range of operationally useful information from them.

32. The information on the withheld test images includes insight into difficulties that may exist in identifying specific types of prohibited items, their sizes, shapes and consistencies; our ability to detect obscured or camouflaged threat objects, and the degree to which TSA settings and calibrations of screening equipment are distinct from the standards used by other security systems must be protected from public disclosure.

33. Bates page 000110-000112, 000116-000120, 000126 from the Rapiscan Systems QDP were protected from disclosure because they contain electronic images. Any electronic image shown on any screening equipment monitor, including threat images and descriptions of threat images for threat image projection systems, is properly withheld as SSI.

Training Records

34. Training materials are records that were created or obtained for the purpose of training persons employed by, contracted with, or acting for the Federal government, or another person to carry out aviation security measures required by DHS. Specifically, they were created to train TSA employees who operate the AIT machines. Training materials, if released to the public, could reveal TSA security screening steps, processes and communication protocols – the type of information that can be exploited by terrorists. Accordingly, they are expressly prohibited from disclosure as SSI by 49 C.F.R. § 1520.5(b)(10).

35. Bates pages 000329, 000333-000334, 000336, 000339-000368 were withheld in part or in full because they constitute records developed to train the TSA image operators. As such, they were withheld under this SSI provision.

Confidential Business Information

36. Solicited or unsolicited proposals received by DHS or DOT, and negotiations arising therefrom, to perform work pursuant to a grant, contract, cooperative agreement, or other

transaction, but only to the extent that the subject matter of the proposal relates to aviation or maritime transportation security measures are protected from disclosure by 49 C.F.R. § 1520.5(b)(14)(i). In addition, trade secret information, including information required or requested by regulation or Security Directive, obtained by DHS or DOT in carrying out aviation or maritime transportation security responsibilities constitute SSI under 49 C.F.R. § 1520.5(b)(14)(ii).

37. Bates pages 000061-000087, 000090, 000091-000099, 000103-000105, 000113-000115, 000116-000120 were withheld in part or in full from Rapiscan System's QDP because they contain confidential business information and/or trade secrets.

38. Bates pages 000153, 000154, 000267, 000269-000290, 000291-000321, 000328-00329, 000333-000334, 000337-000352, 000354-000368 were withheld in part or in full from L-3's QPL because they contain confidential business information and trade secrets. In particular, the information discusses and references trade secret information belonging to and submitted by L-3 pertaining to classes of testing equipment, and thus was withheld under § 1520.5(b)(4)(i), as well as § 1520.5(14)(ii). The QPL, which was provided in response to TSA's request for information and request for proposals, contain L-3's explanation of product features, design information, specification compliance information, as well as substantiation data. Woven throughout these records, which include the operating manual and the training manuals used to train the image operators, are the TSA specifications, test objects, testing methodology and the vendor's step-by-step process for meeting the specifications. This trade secret information is protected as SSI because, in the hands of our adversaries, the systems, the equipment, the component parts used to build the systems can be sabotaged and exploited to create system vulnerabilities; that information also can be used to replicate the design, operating and training

manuals ultimately to learn TSA's security theories, methodology, and even vulnerabilities. Finally, any inappropriate compromise of the various vendors' competitive positions can delay and hinder TSA's ability to procure the necessary technology to secure the nation's transportation systems.

Research and Development

39. Information obtained or developed in the conduct of research related to aviation, maritime, or rail transportation security activities, where such research is approved, accepted, funded, recommended, or directed by DHS or DOT, including research results, constitutes SSI under 49 C.F.R. § 1520.5(b)(15). This information includes both technical and theoretical research and development both at the planning and testing stages.

40. Bates page 000003 and 000005 in the FRD constitute the requirements document version revision history and were withheld as SSI because their exposure would allow our adversaries to compare prior versions to determine specification changes that potentially reveal a vulnerability.

41. Bates pages 000408, 000411-000112, 000416, 000417 were withheld in part or in full_from the ATR Weekly Report/AIT/ATR PowerPoint because the redacted information discusses future testing and deployment plans for AIT/ATR, the release of which can harm transportation security.

42. Bates page 000430, 000440 and 000450 were partially withheld from the DHS Acquisition Review Board Power Point because they contain information that reveals future AIT acquisition strategy and outlines the path forward for new procurements. This information discusses new technology and potential upgrades to existing requirements that could, by inference, reveal vulnerabilities, gaps, and limitations in current technology.

43. Bates pages 000464-000465 were partially withheld from the ATR Internal Action Memoranda because they contain operational requirements and other AIT technical document version dates. This information provides a blueprint for TSA's security development.

44. Bates pages 000484-000617 were redacted from TSA's Operational Test Plan (OTP) and Operational Test and Evaluation (OT&E) or AIT/ATR because they contain the testing report and signature dates which are properly withheld because they identify the DHS research and development schedule and progression which could allow adversaries to track the pace of the Government's technological advancement. Bates pages 000493-000494, 000495-000496, 000500-000502, 000560 and 000564 also reference the AIT/ATR research and development test planning and schedule, which not only reveal the pace of TSA's technological enhancements but, by inference, also reveal technological arenas not yet explored.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

William E. Benner Jr., 16 September 2011
WILLIAM E. BENNER, JR.