**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**EXHIBIT 3**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>Plaintiff,<br><br>v.<br><br>TRANSPORTATION SECURITY ADMINISTRATION,<br><br>Defendant. | No. 11-0290 (ABJ) |

## DECLARATION OF PETER MODICA

I, Peter Modica, hereby declare as follows:

1. I am currently employed by Rapiscan Systems, Inc. ("Rapiscan"). I have been employed by Rapiscan for 16 years, and am currently the Vice President, Product Line Management, which includes oversight of all product research and development projects. In this role, I have firsthand knowledge regarding the Advanced Imaging Technology Automatic Target Recognition Qualification Data Package ("QDP") that Rapiscan provided to the Transportation Security Administration ("TSA") in November 2010. I also have firsthand knowledge regarding the Amendment order for Supplies or Services (Contract HSTS04-09-D-CT2077 and Modification P0003) issued by TSA to Rapiscan. I have personal

knowledge of the facts stated herein, and if called as a witness in any proceeding, I would be competent to testify to the following facts.

2. This declaration is being provided at the request of the Department of Justice ("DOJ") for use in litigation under the Freedom of Information Act against the TSA involving, in part, documents that Rapiscan has provided to the government. Attachment 1 to this declaration includes a list of all documents that I have been informed are at issue in the TSA litigation. I am familiar with the contents of these documents and I have carefully reviewed them.

3. While not intended to be an exhaustive list of the types of information Rapiscan considers proprietary, release of Rapiscan's (a) unit-pricing information; (b) design details and specifications and performance capabilities for Rapiscan's scanner systems; (c) testing methods used for demonstrating compliance with government scanner-system requirements; and (d) the contact and other personal information of Rapiscan's employees, all contained in the documents at issue in the TSA litigation, would cause Rapiscan substantial competitive harm in future government and commercial procurements.

Unit Pricing Information

4. Disclosure of this unit-pricing information contained in Contract HSTS04-09-D-CT2077 and Modification P0003 would cause Rapiscan substantial harm as competitors could undercut Rapiscan's prices in future competitions. Such disclosure would place Rapiscan at a competitive disadvantage in all future

procurements because Rapiscan's competitors would have a roadmap to how Rapiscan prices its scanner systems and related research and development projects. In addition, the disclosure of Rapiscan's unit-pricing information, when combined with other pricing information, would provide competitors insight into how Rapiscan and its suppliers and subcontractors adjust their prices over time, thereby allowing Rapiscan's competitors additional information as to how Rapiscan will price its systems and services in the future. The confidential unit-pricing information would give Rapiscan's competitors insight into Rapiscan's pricing strategy, costs, markups, efficiencies, and economies of scale. As such, disclosure of Rapiscan's unit-pricing information would cause Rapiscan substantial competitive harm.

<u>Systems Design and Specification Information</u>

5. Rapiscan would suffer substantial competitive harm if design information and performance specifications and capabilities for its Secure 1000 scanner system contained in the QDP at issue here were made public. The information at issue describes the capabilities of the Secure 1000 scanner system, including, for example, image resolution measurements, detection capabilities, effectiveness of the system at particular distances, and the ability of Rapiscan's scanner to operate in multiple configurations. Furthermore, the QDP at issue reveals the component parts of the Secure 1000 scanner system. This system design and capabilities information is customarily not made available to the public.

6.  The disclosure of design information and performance specifications and capabilities is likely to cause substantial harm to the competitive position of Rapiscan. The ability to design and build the most effective and efficient scanner system is an extremely important part of the competitive landscape for scanner systems. Rapiscan considers the design for its Secure 1000 system an important technical achievement that gives it a decisive advantage over its competitors. The performance capabilities of this system are very important aspect of the overall design and construction of Rapiscan's scanner system. Knowledge of such performance capabilities would give Rapiscan's competitors insight into the design specifications of the Secure 1000 system and would alert competitors to the standard of performance they must achieve to successfully compete against Rapiscan. Access to such capabilities information, and to design details themselves, would permit a competitor to more effectively design and build its own systems and would, therefore, cause Rapiscan substantial competitive injury.

Testing Methods

7.  Rapiscan would suffer substantial competitive harm if the testing methods Rapiscan uses to demonstrate that its scanner systems comply with government requirements were made public. The QDP at issue contains information about tests that were run to assess the Secure 1000 systems' compliance with TSA requirements. The manner in which these tests were performed reveals aspects of the Secure 1000 system design, and Rapiscan

considers the testing methods themselves to be proprietary. If a competitor would gain access to this information, it would have a blueprint for demonstrating compliance with the TSA's scanner-systems requirements. Rapiscan carefully designed a testing protocol to demonstrative compliance with TSA's functional requirements. A competitor would benefit, and Rapiscan would be harmed, if this information were made public.

<u>Information Related to Employees</u>

8. Rapiscan would suffer substantial competitive harm if the contact and other personal information of employees and contractors involved in the QDP and contracts at issue here were made available to a competitor. Rapiscan's employee contact information is contained throughout all the documents provided by DOJ. The contact information and other personal information of Rapiscan's key employees and the work they perform is not made public.

9. Rapiscan has invested heavily in the training of its employees and considers this human capital Rapiscan's most valuable asset. A competitor would benefit (and Rapiscan would be harmed) by the release of the employee information in the documents at issue here because the competitor would know the information about key Rapiscan employees with knowledge of the development and capabilities of Rapiscan's scanner systems. A competitor would then be armed with the information to "raid" these employees and ascertain this information.

### Competitive Environment

10.   Having worked in the scanner systems industry for over a decade, I understand the competitive environment in which Rapiscan competes. Further, I am familiar with the firms against which Rapiscan competes. The market for advanced imaging technology is highly competitive both in the United States, in Europe, and around the world. In such a competitive environment, contractors seek any increment of useful information about their competitors' businesses, particularly their pricing and technical capabilities, because obtaining that information could give them a decisive advantage.

11.   There is considerable "actual competition" for the provision of scanner systems to the United States government. For instance, Rapiscan expects that the TSA will procure 500 Advanced Imaging Technology systems (which is synonymous with Rapiscan's Secure 1000 systems), as specified in the FY2011 appropriations bill. Rapiscan expects other firms to compete for this work. These firms would benefit from Rapiscan's confidential information at issue because they could more effectively design their scanner systems and structure their proposals to compete with Rapiscan.

12.   I understand that the entity with which TSA is engaged in litigation – and which seeks disclosure of Rapiscan's propriety information – is not itself a competitor of Rapiscan, but instead is a private entity with the stated mission of making public information related to scanner systems used by the government. If

this entity obtained Rapiscan's propriety information, I believe it is extremely likely that this information would enter the public domain (i.e. by being published on the Internet) and would be available to Rapiscan's competitors.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Peter Modica

Executed on: September 15, 2011

## ATTACHMENT 1

|   | Document Title | Document Description |
|---|---|---|
| 1 | Rapiscan Systems Advanced Imaging Technology Automatic Target Recognition QDP (Qualification Data Package), November 12, 2010 | The document provides substantiation that Rapiscan's Secure 1000 system complies with the functional requirements for an Advanced Imaging Technology System with Automatic Target Recognition. |
| 2 | HSTS04-09-D-CT2077 (excerpts) | Rapiscan's Advanced Imaging Technology System contract with TSA. |
| 3 | Modification P0003 | The purpose of the modification was to include a new pricing structure in the Advanced Imaging Technology System contract. |