**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **)** | |
| ELECTRONIC PRIVACY ) | |
| INFORMATION CENTER ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
|    v. ) | No. 1:11-cv-00290-ABJ |
| ) | |
| THE UNITED STATES TRANSPORTATION ) | |
| SECURITY ADMINISTRATION ) | |
| ) | |
|    Defendant. ) | |
| ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff the Electronic Privacy Information Center ("EPIC") opposes Defendant U.S.

Transportation Security Administration's ("TSA") September 16, 2011 Motion for Summary

Judgment, and cross-moves for summary judgment in favor of EPIC.

Specifically, EPIC:

(1)    challenges the TSA's withholding of documents, in full and in part, related to
EPIC's Freedom of Information Act ("FOIA") requests seeking records
concerning the agency's development and procurement of Automated Target
Recognition ("ATR") software updates for Full-Body Scanners; and

(2)    seeks an order compelling the TSA to pay EPIC's fees and costs for this lawsuit,
because EPIC qualifies for such relief irrespective of the outcome of the parties'
cross-motions for judgment.

## FACTUAL BACKGROUND

In 2005, the TSA began testing Full Body Scanning machines in U.S. airports to examine

air travelers on commercial aircraft. These machines, which use either backscatter x-ray or

millimeter wave technology, capture detailed, three-dimensional images of individuals. The

machines literally can peer through clothing to observe and capture an image of the naked human body.

On April 21, 2010, EPIC and thirty other organizations sent a petition for suspension of the Full Body Scanner program to Janet Napolitano, Secretary of the Department of Homeland Security ("DHS"), and Mary Ellen Callahan, Chief Privacy Officer of DHS. The petition highlighted several problems with the FBS program and with the body scanners themselves. On April 30, 2010, the TSA publicly announced that it was interested in ATR software modifications to the Full Body Scanners. The TSA responded to EPIC's petition on May 28, 2010. In its response letter, the TSA disclosed that it has "worked closely" with ATR manufacturers as well as with Dutch authorities in their field-testing of ATR software at Schiphol Airport in Amsterdam. TSA also included a letter sent from Secretary Napolitano to Senator Susan Collins, further detailing the timetable for ATR deployment.

TSA spokesman Greg Soule was quoted in a story that appeared in Bloomberg News on September 8, 2010. Mr. Soule stated, "TSA continues to explore additional privacy protections for imaging technology." He went on to assert that testing of ATR software was "currently under way." On September 17, 2010, the TSA announced publicly that the Agency had "just started testing" the ATR software. Field-testing of the software modifications commenced on February 1, 2011, and took place at three airports: Las Vegas McCarran International Airport ("LAS"), Hartsfield Jackson Atlanta International Airport ("ATL"), and Ronald Reagan Washington International Airport ("DCA"). A large-scale roll out of the software modifications started on July 20, 2011 for millimeter wave scanners. Testing of ATR software on the backscatter x-ray machines is set to commence at some point during Fall 2011.

On June 15, 2010, EPIC filed a FOIA request with the TSA ("EPIC's First FOIA Request"). EPIC's request sought:

1. All specifications provided by TSA to automated target recognition manufacturers concerning automated target recognition systems;

2. All records concerning the capabilities, operational effectiveness, or suitability of automated target recognition systems, as described in Secretary Napolitano's letter to Senator Collins;

3. All records provided to TSA from the Dutch government concerning automated target recognition systems deployed in Schiphol Airport, as described in Secretary Napolitano's letter to Senator Collins; and

4. All records evaluating the [Full Body Scanning] program and determining automated target recognition requirements for nationwide deployment, as described in Secretary Napolitano's letter to Senator Collins.

The TSA acknowledged receipt of EPIC's First FOIA Request on June 24, 2010. The TSA failed to make a timely determination concerning EPIC's First FOIA Request and failed to disclose any records within the FOIA's statutory deadline. On October 5, 2010, EPIC filed an administrative appeal ("EPIC's First Appeal") challenging the TSA's failure to disclose responsive records. The TSA failed to comply with the statutory deadline to substantively reply to EPIC's First Appeal.

On October 10, 2010, EPIC filed a related FOIA request with DHS. ("EPIC's Second FOIA Request"). The TSA is a DHS component. EPIC's second request sought:

1. All records provided from L3 Communications or Rapiscan in support of the submission or certification of ATR software modifications;

2. All contracts, contract amendments, or statements of work related to the submission or certification of ATR software modifications;

3. All information, including results, of government testing of ATR technology, as reference by Greg Soule of the TSA in an e-mail to Bloomberg News, published September 8, 2010.

3

On October 20, 2010, DHS responded to EPIC and indicated that the Department had referred EPIC's Second FOIA Request to the TSA. The TSA acknowledged receipt of EPIC's Second FOIA Request on November 8, 2010. The TSA failed to make a timely determination concerning EPIC's Second FOIA Request and failed to disclose any records within the FOIA's statutory deadline. On December 14, 2010, EPIC filed an administrative appeal ("EPIC's Second Appeal") challenging the TSA's failure to disclose responsive records. The TSA failed to comply with the statutory deadline to substantively reply to EPIC's Second Appeal.

The TSA failed to make a timely determination concerning either EPIC's First FOIA Request or EPIC's Second FOIA Request (jointly, "EPIC's FOIA Requests"), and failed to disclose any records within the FOIA's statutory deadline.

EPIC filed this action against the TSA on February 1, 2011 for non-responsiveness and failure to comply with statutory deadlines under the FOIA. In response to this lawsuit, the TSA made a preliminary release of responsive records on July 29, 2011. 166 additional pages of responsive records were released on August 22, 2011. On September 8, 2011, the TSA re-released the initial productions, plus additional documents. 645 pages of records were released in whole or in part. Approximately 2,865 pages of records were withheld in full.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to the material facts, and the moving party demonstrates it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). FOIA lawsuits are typically resolved on cross-motions for summary judgment. *Reliant Energy Power Generation v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007). A court reviews agency handling of a FOIA request *de novo*. 5 U.S.C. § 552(a)(4)(B).

The U.S. Supreme Court "repeatedly has stressed the fundamental principle of public access to Government documents that animates the FOIA." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-52 (1989). *See also JCI Metal Products v. U.S. Dept. of the Navy*, No. 09-2139, 2010 WL 2925436 at *3 (S.D.Cal. Sept. 30, 2006) ("FOIA was enacted to "facilitate public access to Government documents.") (internal citations omitted); S. Rep. No. 813, 89th Cong., 1st Sess., 5, p. 3 (1965) ("It is the purpose of the present bill...to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language."). "In enacting FOIA, Congress struck the balance it thought right--generally favoring disclosure, subject only to a handful of specified exemptions--and did so across the length and breadth of the Federal Government." *Milner v. Dep't of the Navy*, 131 S. Ct. 1259, 1266 (2011). As the Court has previously explained, "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  The FOIA's "basic purpose reflect[s] a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *U.S. Dept. of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976), quoting S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965). FOIA was meant to be a "disclosure statute," not a "withholding statute." *Milner*, 131 S. Ct. at 1262.

The FOIA includes exemptions from disclosure, "[b]ut these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361. Therefore FOIA exemptions "must be narrowly construed." *Id*. "The statute's goal is broad disclosure, and the exemptions must be given a narrow compass." *Milner*, 131 S. Ct. at 1261 (internal citations omitted). Furthermore, "the burden is on the agency to sustain its

action." 5 U.S.C. § 552(a)(4)(B); *see also EPIC v. Dept. of Homeland Security*, 384 F. Supp. 2d 100, 106 (D.D.C. 2005).

## ARGUMENT

I.      **The Language of the Sensitive Security Information Statute is Insufficient As a Qualifying Statute Under FOIA Exemption 3, And Does Not Permit the Agency to Partially Withhold 276 Pages and Withhold 3,048 Pages in Full**

FOIA Exemption 3 permits an agency to withhold responsive records "specifically exempted from disclosure by statute," if the statute

> (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3). Subsection (i) authorizes agency withholdings under FOIA when a statute "absolutely forbid[s] disclosure" and leaves no discretion to the agency. *Westchester General Hospital, Inc. v. Department of Health, Education & Welfare*, 464 F. Supp. 236, 240 (M.D. Fla. 1979); s*ee also Am. Jewish Cong. v. Dep't of the Treasury*, 549 F. Supp. 1270, 1275 (D.D.C. 1982), *aff'd sub nom. Am. Jewish Cong. v. U.S. Dep't of the Treasury,* 713 F.2d 864 (D.C. Cir. 1983) ("The statutes fit within (b)(3)(A), however, only if the congressional mandate of confidentiality is "absolute and without exception." (internal citations omitted)).

Statutes that provide a basis for Exemption 3 withholdings under Subsection (i) specifically identify the exempt documents, leaving no discretion to the agency. *See, e.g.,* 42 U.S.C. § 2000e-5(b) (barring disclosure of "charges" filed in EEOC proceedings); 50 U.S.C. § 403g (prohibiting disclosure of "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the [Central Intelligence] Agency.").

Subsection (ii) authorizes agency withholdings under FOIA when a statute "establishes particular criteria for withholding or refers to particular types of matters to be withheld." A

statute provides a basis for withholding under Subsection (ii) "if, but only if," the law "incorporates a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw." *Am. Jewish Cong. v. Kreps*, 574 F.2d 624, 629 (D.C. Cir. 1978); *see also Aguirre v. SEC*, 551 F. Supp. 2d 33, 50 (D.D.C. 2008) ("Exemption 3 does not apply to a statute that gives the agency wide latitude in determining which materials may be disclosed."). Statutes constitute a proper basis for Exemption 3 withholdings only when "Congress has itself made the basic decision, and has left to the administrator only the task of administration." *Am. Jewish Cong. v. Kreps,* at 630. "A central aim of the Freedom of Information Act has been to substitute legislative judgment for administrative discretion." *Times Publ'g Co.  v. U.S. Dep't of Commerce*, 236 F.3d 1286, 1289 (11th Cir. 2001); *see also Public Citizen, Inc. v. Mineta*, 444 F. Supp. 2d 12, 16-17 (D.D.C. 2006), *aff'd sub nom. Pub. Citizen, Inc. v. Rubber Manufacturers Ass'n*, 533 F.3d 810 (D.C. Cir. 2008) ("the purpose of the subsection 'is to assure that the basic policy decisions on governmental secrecy be made by the Legislative rather than the Executive branch.'" (internal citations omitted).

Exemption 3 is "explicitly confined to material exempted from disclosure 'by statute,'" and does not apply to non-statutory rules and regulations. *Founding Church of Scientology, Inc. v. Bell*, 603 F.2d 945, 952 (D.C. Cir. 1979) (rejecting Exemption 3 withholding based on non-statutory federal rules); *see also Wisconsin Project on Nuclear Arms Control v. U.S. Dept. of Commerce*, 317 F.3d 275, 280 (D.C. Cir. 2003) ("Exemption 3 takes literally the requirement that disclosure prevail absent 'clearly delineated statutory language.'" (internal citations omitted)). An agency may not base an Exemption 3 withholding on a mere rule, even if the rule was issued "under rulemaking powers delegated by Congress*." Bell*, 603 F.2d at 952.

The TSA argues that one statute, 49 U.S.C. § 114(r), and one regulation, 49 C.F.R. § 1520.5, justify its Exemption 3 withholdings in this case. Defendant's Motion for Summary Judgment ("TSA Motion") at 11-18. However, the statute does not "require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establish[] particular criteria for withholding or refer[] to particular types of matters to be withheld." And Part 1520 is a regulation, not a statute, and therefore fails to meet the threshold test for consideration as a basis for an Exemption 3 claim.

   *a.*   *Section 114(r) Does Not Justify the DHS's Exemption 3 Withholdings*

The TSA Motion argues that Section 114(r) provides a basis for its Exemption 3 withholdings in this case. However, Section 114(r) does not support the TSA's Exemption 3 claims because it grants unfettered discretion and fails to "establish particular criteria for withholding or refer to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Indeed, Section 114(r) is exactly the sort of broad, vague, discretionary statute that Congress explicitly eliminated as a basis for Exemption 3 claims in the 1976 FOIA amendments.

Section 114(r) authorizes the TSA to issue regulations barring the disclosure of information "if the Under Secretary decides that disclosing the information would … be detrimental to the security of transportation." 49 U.S.C. § 114(r)(1).

The FOIA permits two types of statutes to provide a basis for an Exemption 3 withholding: 1) laws that "absolutely forbid disclosure," leaving no discretion to the agency; and 2) laws that "incorporate a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw." *Westchester*, 464 F. Supp. at 240; *Am. Jewish Cong. v. Kreps*, 574 F.2d at 629. Section 114(r) plainly vests discretion in the TSA concerning what documents might be "be detrimental to the security of

transportation." Therefore, Section 114(r) does not "absolutely forbid disclosure," leaving no discretion to the agency. Section 114(r) also fails to "establish particular criteria for withholding or refer to particular types of matters to be withheld."

Congress added Exemption 3's present-day "establish particular criteria" language in 1976 when it passed the Government in the Sunshine Act. *Irons & Sears v. Dann*, 606 F.2d 1215, 1219 (D.C. Cir. 1979). "Congress' goal was to legislatively overrule the Supreme Court's decision in *Administrator of FAA v. Robertson*, 422 U.S. 255 (1975)." *Irons & Sears*, 606 F.2d at 1219; *see also Association of Retired R.R. Workers, Inc. v. U.S. R.R. Retirement Bd.*, 830 F.2s 331, 333 (D.C. Cir. 1987) ("The exemption was amended in 1976 to overturn a Supreme Court decision in *FAA Administrator v. Robertson*"). *Robertson* upheld an Exemption 3 claim based on Section 1104 of The Federal Aviation Act. 49 U.S.C. § 1104 (barring disclosure of information that "would adversely affect the interests of [the FAA] and is not required in the interest of the public."). Congress intended the "particular criteria" section of Exemption 3 to prevent courts from using similarly broad, vague statutes as bases for Exemption 3 claims. "The amended text and its legislative history make clear that Congress did not want the exemption to be triggered by every statute that in any way gives administrators discretion to withhold documents from the public." *Irons & Sears*, 606 F.2d at 1219. The legislative history of the 1976 FOIA amendments "expressly reveals Congress' intent to overturn *Robertson* and to narrow the scope of Exemption 3, thereby excluding from the exemption those statutes which permitted wholly discretionary non-disclosure." *Lee Pharm. v. Kreps*, 577 F.2d 610, 615 (9th Cir. 1978).

The "particular criteria" language has been interpreted to limit Exemption 3 to statutes where "Congress has itself made the basic decision, and has left to the administrator only the task of administration." *Am. Jewish Cong. v. Kreps*, 574 F.2d at 630. Exemption 3's

"unmistakable thrust … is to assure that basic policy decisions on governmental secrecy be made by the Legislative rather than the Executive branch." *Id*. at 629. An agency may withhold records under the "particular criteria" standard "if, but only if, the [underlying statute] is the product of congressional appreciation of the dangers inherent in airing particular data and *incorporates a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw*." *Id.* (emphasis added).

Courts uphold Exemption 3 withholdings only if they are based on statutes that describe specific, narrow categories of documents. *See, e.g.*, *ACLU v. FBI*, 429 F. Supp. 2d 179, 189 (D.D.C. 2006) (providing that tax "returns and return information" are exempt under 26 U.S.C. § 6103(a)); *Irons & Sears*, 606 F.2d at 1220 (upholding Exemption 3 claim based on 35 U.S.C. § 122, which provides "applications for patents shall be kept in confidence by the Patent and Trademark Office...."). These statutes reference specific kinds of records that are exempt from disclosure: tax returns and patent applications. They do not purport to exempt broad categories of records or give the agency broad authority to exempt records. These statutes provide clear guidelines for what documents may not be disclosed, and provide a proper basis for Exemption 3 withholdings. The language of Section 114(r) exempts broad categories of records and gives the agency broad authority to exempt records when the TSA Administrator "decides that disclosing the information would … be detrimental to the security of transportation." Section 114(r) is more akin to the impermissibly vague language in *Administrator of FAA v. Robertson* than it is to the permissibly specific language *ACLU* and *Irons & Sears*.

Conversely, Section 114(r) is not particular enough to demonstrate that "Congress has itself made the basic decision, and has left to the administrator only the task of administration." Instead, the statute allows the TSA Administrator to "decide" that any records are "detrimental to

the security of transportation" and then unilaterally exclude those records from disclosure. While Section 114 does identify a general danger that Congress seeks to prevent (threats to "security"), it lays out no specifics: it does not incorporate a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw. *Am. Jewish Cong. v. Kreps*, 574 F.2d at 629. What constitutes a disclosure that is "detrimental to the security of transportation" is anyone's guess, and completely within the discretion of the Agency. No particular types of records (photographs or training manuals, for instance) are specified. In fact, the statute doesn't even explicitly prohibit disclosure of records – instead it only uses the broader term "information." The statute simply identifies a broad, general danger, and fails to enumerate what "information" should be withheld in order to mitigate that danger.

Section 114(r) is precisely the sort of broad statute that Congress excluded as a basis for Exemption 3 withholdings. The language would improperly "permit wholly discretionary non-disclosure," and is strikingly similar to the Section 1104 language that the post-*Robertson* FOIA amendments excluded as a basis for Exemption 3 withholdings. *Compare* Section 114(r) ("information [that] would … be detrimental to the security of transportation") *with* Section 1104 (information that "would adversely affect the interests of [the FAA].").

> ### b.     *Section 1520.5 Does Not Justify the DHS's Exemption 3 Withholdings*

The TSA Motion also contends that an agency regulation, 49 C.F.R. § 1520.5, justifies the agency's Exemption 3 withholdings. *See, e.g.,* TSA Motion at 17 ("…Materials created to train screeners in the use of AIT scanners was withheld pursuant to 49 C.F.R. § 1520.5(b)(10)."). Section 1520.5 describes fifteen categories of "sensitive security information." *Id*. However, Section 1520.5 does not support the TSA's withholdings, because agency regulations cannot

serve as a basis for an Exemption 3 claim. Agency regulations are not statutes. The plain

language of the FOIA requires that Exemption 3 withholdings be "specifically exempted from

disclosure *by statute*." 5 U.S.C. § 52(b)(3) (emphasis added). In *Bell*, the D.C. Circuit described

the threshold test under Exemption 3 – whether the purported basis for the withholding is a

statute that was "affirmatively adopted by the legislature, as all statutes must be." *Bell*, 603 F.2d

at 952.

Indeed, *Bell* invalidated an Exemption 3 claim involving a rule that had a stronger nexus

to Congressional action than the regulation at issue here. *Bell* involved a challenge to an

Exemption 3 claim based on Rule 26(c) of the Federal Rules of Civil Procedure. Fed. R. Civ. P.

26(c), The Federal Rules are developed by the Supreme Court pursuant to Congress's statutory

mandate, but Congress retains authority to reject any proposed rule. 28 U.S.C. § 2072; *see also*

*Walko Corp. v. Burger Chef Systems*, 554 F.2d 1165, 1169 n.29 (D.C. Cir. 1977) ("Congress'

failure to suspend a proposed rule gives it the force not of a legislative enactment, but of a

regulation pursuant to the Act."). The D.C. Circuit noted that although "proposed [Fed. R. Civ.

P.] may be rejected by Congress," they "are not affirmatively adopted by the legislature" and do

not provide a basis for Exemption 3 withholdings. *Bell*, 603 F.2d at 952. Section 1520.5's

connection to the legislative process is weaker than the rule at issue in *Bell*. Congress retains no

authority concerning the TSA's issuance of Section 1520.5. The regulation is purely a creature of

administrative action, not a statute "affirmatively adopted by the legislature." Indeed, the DHS,

the agency to which the TSA is a component, acknowledges that Section 1520.5 is not a statute.

The Department's Annual FOIA Report to the Attorney General lists all statutes the agency

relied upon as bases for Exemption 3 claims. DHS, *2010 Annual Freedom of Information Act*

*Report to the Attorney General of the United States*, Feb. 2010.[1] Section 1520.5 is absent. *Id*. at 1-2.

The TSA Motion cites three district court cases is support of its contention that Section 114(r), Section 1520.5, or some combination thereof provide a statutory basis for the agency's Exemption 3 withholdings. TSA Motion at 13. Yet two of the cited authorities merely illustrate that the involved parties declined to litigate the issue. *EPIC v. Dept. of Homeland Security* notes "[t]he plaintiff does not dispute the defendants' use of these statutes in the Exemption 3 context." *EPIC v. Dept. of Homeland Security*, 384 F. Supp. 2d at 110 n.10 (D.D.C. 2005). In *Gordon v. FBI*, the court noted, "[t]here is no dispute that these statutes fall within Exemption 3." *Gordon v. FBI*, 390 F. Supp. 2d 897, 900 (N.D. Cal. 2004); *see also Sussman v. DOJ*, No. 03-3618, 2006 WL 2850608 at *16 (E.D.N.Y. Sept. 30, 2006) ("Plaintiff expressly waived any objections to documents redacted pursuant to § 552(b)(2) and (3).").

The third authority, *Tooley v. Bush*, does not bind this Court. *Tooley* holds that Section 114(r) is "a statute of exemption as contemplated by Exemption 3." *Tooley v. Bush*, No. 06-306, 2006 WL 3783142 at *20 (D.D.C. Dec. 21, 2006). However, *Tooley*'s only bases for this conclusion are *Public Citizen*, a D.C. Circuit case that did not involve a FOIA request, and *Gordon*, a California district court case in which the parties agreed as to the applicability of Section 114(r). *Id*.; *Public Citizen v. FAA*, 988 F.2d 186, 188 (D.C. Cir. 1993) ("petitioners challenge rules the [FAA] adopted pursuant to the Aviation Security Improvement Act of 1990, arguing that the rules, standing alone, are not detailed enough to satisfy ASIA" (internal citations omitted)); *Gordon*, 390 F. Supp. 2d at 900.

---

[1] http://www.dhs.gov/xlibrary/assets/foia/privacy-rpt-foia-2010.pdf.

II.     **FOIA Exemption 5 Does Not Permit the Agency to Withhold Congressional
         Briefing Materials or Purely Factual Information that is Neither Deliberative
         Nor Pre-Decisional.**

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or

letters which would not be available by law to a party other than an agency in litigation with the

agency.  5 U.S.C. § 552(b)(5). The exemption is to be applied "as narrowly as consistent with

efficient Government operation." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854,

868 (D.C. Cir. 1980) (citing S. Rep. No. 89-813 (1965)).

In order to determine the propriety of defendant's Exemption 5 claim, the Court must

determine whether the materials requested are inter- or intra-agency materials, whether they are

pre-decisional, and whether they are deliberative. *Times Journal Co. v. Dep't of Air Force*, 793

F. Supp. 1, 3 (D.D.C. 1991).

a.      *Document Created for and Presented to Congress are not "Inter-agency or Intra-
         agency Memorandums or Letters," and Are Not Exempt Under Exemption 5*

In order to qualify for the deliberative process privilege under Exemption 5, the

government must demonstrate that the document is either inter-agency or intra-agency in nature,

and also that it is both predecisional and part of the agency's deliberative process. *Dow Jones &
Co., Inc. v. Dep't of Justice*, 917 F.2d 571, 574 (D.C. Cir. 1990). In this case, the TSA is

attempting to withhold parts of a PowerPoint presentation that "was prepared by the TSA Office

of Security Technology (OST) and presented in a briefing to the House Appropriations

Committee in connection with future funding for ATR. Exhibit 1 to Defendant's Motion for

Summary Judgment (Sotoudeh Decl.) at ¶36.

Exemption 5 permits an agency to protect the confidentiality of communications from

outside the agency so long as those communications are part and parcel of the agency's

deliberative process. *Dow Jones*, 917 F.2d at 575. In determining whether to withhold a

document under Exemption 5, the "pertinent element is the role, if any, that the document plays in the process of agency deliberations." *Id*. Congress is strictly not an "agency" for purposes of the Freedom of Information Act. *See* 5 U.S.C. § 551(1)(A) (1982).

In *Dow Jones*, The D.C. Circuit Court held that Exemption 5 couldn't be invoked to withhold a letter from the Justice Department to House Representative Julian C. Dixon that revealed details of a grand jury investigation. *Dow Jones*, 917 F.2d 571. The court held that Exemption 5 does not extend to protect deliberations of a non-agency either as an interpretation of "intra-agency" or "inter-agency." *Id.* at 575. In this case, the PowerPoint presentation that the TSA seeks to withhold was prepared by a component of the TSA, not for any internal agency deliberations, but in order to assist with congressional deliberations regarding whether or not to fund the ATR program. Because the document assisted with the decision of a non-agency, and was not used for agency deliberations, the TSA's use of Exemption 5 to withhold the document is improper.

b. *Certain Documents Do Not Qualify for the Deliberative Process Privilege, Because They Are Neither Predecisional or Deliberative*

In order for documents to be withheld under Exemption 5, the documents "must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8, 121 S. Ct. 1060, 1063, 149 L. Ed. 2d 87 (2001). The agency has withheld briefing materials, testing criteria, and assessments, wrongly claiming that they are protected under the deliberative process privilege.

Encompassed in Exemption 5 is the "deliberative process" privilege, which protects from disclosure "documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which governmental decisions and policies are formulated." *Klamath Water*

*Users,* 532 U.S. at 8. The TSA applies the Exemption in an overly broad manner, which has prevented the disclosure of documents that should not be withheld. In order for the deliberative process privilege to apply, the document in question must be both predecisional and deliberative, meaning that it must be (1) "antecedent to the adoption of an agency policy," *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir.1978), and (2) "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Evans v. U.S. Office of Pers. Mgmt.*, 276 F. Supp. 2d 34, 38 (D.D.C. 2003).

The purpose of the Deliberative Process Privilege is to protect "frank discussions of legal or policy matters." *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 87, (1972) (finding that the justification for the deliberative process privilege is that "[I]t would be impossible to have any frank discussions of legal or policy matters in writing if all such writings were to be subjected to public scrutiny"); *Dow Jones,* 917 F.2d 571 (confirming that "[w]e have said that the purpose of Exemption 5 is to encourage the frank discussion of legal and policy issues") (internal citations omitted); *Judicial Watch, Inc. v. U.S. Dept. of Treasury*, 2011 WL 3582152 (D.D.C. Aug. 16, 2011) (finding that the purpose of Exemption 5 is to protect "frank exchange of ideas on legal or policy matters"); S. Rep. No. 89-813 (1965); *see also* H.R. Rep. No. 89-1497 (1966) (stating that "a full and frank exchange of *opinions* would be impossible if all internal communications were made public") (emphasis added). The privilege doesn't exist to protect "the free and frank exchange of *information*," it exists to protect "frank discussions of *legal or policy matters*." *Id.* (emphasis added).

The TSA claims that Exemption 5 is used to "redact internal recommendations and assessments regarding aspects of ATR, including proposals for future testing." TSA Motion at 27. Defendant's application of this doctrine would expand it to include not only discussions of

policy, "advisory opinions, recommendations, and deliberations," *Klamath Water Users,* 532 U.S. at 8, but would sweep in much post-decisional information, including information that is purely factual, contrary to case law and the stated purpose of the Exemption. *See, e.g., Petroleum Info. Corp. v. U.S. Dept. of Interior,* 976 F.2d 1429, 1434 (D.C. Cir. 1992); S. Rep. No. 89-813 (1965). This is, quite simply, not the purpose or scope of this privilege, as set out by the Supreme Court. *See Klamath Water Users,* 532 U.S. at 8.

Under the deliberative process privilege, factual information generally must be disclosed, but materials embodying officials' opinions are ordinarily exempt. *Petroleum Info. Corp.*, 976 F.2d at 1434, (citing *Mink,* 410 U.S. at 87-91 (endorsing the fact/opinion distinction); *Quarles v. Department of Navy,* 893 F.2d 390, 392 (D.C. Cir.1990) (observing that "the prospect of disclosure is less likely to make an adviser omit or fudge raw facts, while it is quite likely to have just such an effect" on materials reflecting agency deliberations)). "Purely factual reports and scientific studies cannot be cloaked in secrecy by an exemption designed to protect only 'those internal working papers in which opinions are expressed and policies formulated and recommended.'" *American Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 238 (D.C. Cir. 2008) (quoting *Bristol-Myers Company v. FTC,* 424 F.2d 935, 939 (D.C. Cir. 1970)).

Specifically, the D.C. Circuit has routinely held that factual information must be released. *Playboy Enterprises, Inc. v. Dep't of Justice*, 677 F.2d 931, 936 (D.C. Cir. 1982) (finding that the factual material in a government report was not protected under the deliberative process privilege and must be released); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d at 858 (holding that memoranda from regional counsel issued in response to requests for interpretations of regulations were not exempt under the deliberative process privilege because they were "straightforward explanations of agency regulations"); *see also Judicial Watch*, 2011 WL

2678930 (holding that headers at the top of several sets of minutes were factual and, hence, segregable and must be released),

The items in the Vaughn Index are described in detail in the Declaration of Paul Sotoudeh. Sotoudeh Decl at 8-17. The ATR Memoranda encompasses Bates Numbers 000463-000483. The first part, Bates Numbers 000463-000476, consist of an "AIT/ATR Letter of Assessment…prepared by OST and used to brief the DHS Under Secretary for Management in furtherance of TSA's request for authority to procure the ATR security upgrade. Sotoudeh Decl. at ¶36. The final part of this document, Bates Numbers 000478-000483, consists of a series of memoranda regarding testing results and recommendations. *See* Sotoudeh Decl. at ¶37.

The information contained in these memoranda is largely descriptive and factual. The text of the document is not written in permissive or advisory terms, but speaks in authoritative language of what the ATR program is and what it does. As such, OST is not offering advice or giving opinions but simply relaying facts: how the program has developed, and maintained. *See, e.g., Evans,* 276 F. Supp. 2d at 40 (bolstering a holding that a memorandum was not deliberative by noting that "the tone of the memo is authoritative" and that it "set forth an opinion without any phrases such as 'We believe' or 'We suggest.').

The Defendant has also wrongly withheld factual information in the "Operational Test Plan (OTP) & Operational Test and Evaluation (OT&E) for AIT/ATR," at Bates Numbers 000484-000617. This document "is an internal document created by OST and presented internally," and it "describes OST's proposal for how TSA will conduct the future pilot Operational Test and Evaluation." Sotoudeh Decl. at ¶39. Included in these documents are among other things, specific threats, testing features, and performance specifications tested. These facets simply describe factual details: what has been tested and what the machines are

designed to protect against, The document also includes scoring and testing criteria, screen shots

of operational testing data collection forms, and a description of testing articles. Sotoudeh Decl.

at ¶39. This type of information is not within the intended scope of deliberative process

privilege.

Following publication, this document was "submitted to DHS's Office of Testing and

Evaluation for review, deliberation, and ultimately approval by DHS." Sotoudeh Decl. at ¶39.

"The Freedom of Information Act exemption relating to 'intra-agency memoranda' can never

apply to final opinions which not only explain agency action already taken or an agency decision

already made but also constitute final dispositions of matters by an agency." *NLRB v. Sears,*

*Roebuck & Co.,* 421 U.S. 132, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975). "The incorporation of

what might otherwise be privileged material into a final opinion causes such material to lose its

privileged character." *Exxon Corp. v. Fed. Trade Comm'n,* 466 F. Supp. 1088, 1098 (D.D.C.

1978) *aff'd sub nom. Exxon Corp. v. Fed. Trade Comm'n*, 663 F.2d 120 (D.C. Cir. 1980). If the

Evaluation was signed and approved by DHS, it would represent a "final agency opinion" on the

matter, and the TSA would have to disclose the document. However, the approved document has

not been provided by the TSA in reply to EPIC's FOIA Requests. Further, since TSA has

redacted all dates and draft numbers attached to the documents as "Sensitive Security

Information" it is impossible to know how long ago the document was produced for approval.

    c.    *Even if the Court Finds that Portions of the Documents Are Protected Under the*
*Deliberative Process Privilege, the Unprotected Factual Portions Are Segregable*
*and Should be Released*

Even if this Court believes that the TSA has established that it has properly withheld

portions of these documents under FOIA Exemption 5, "it must nonetheless disclose all

reasonably segregable, nonexempt portions of the requested record(s)." *Roth v. U.S. Dep't of*

*Justice,* 642 F.3d 1161, 1167 (D.C. Cir. 2011); *North v. U.S. Dep't of Justice,* 774 F.Supp.2d

217, 222 (D.D.C.2011) (citing *Oglesby v. U.S. Dep't of the Army,* 79 F.3d 1172, 1178 (D.C. Cir.

1996)). The agency bears the burden of demonstrating that withheld documents contain no

reasonably segregable factual information. *Mokhiber v. U.S. Dept. of Treasury*, 335 F. Supp. 2d

65, 69 (D.D.C. 2004) (citing *Army Times Pub. Co. v. U.S. Dep't of Air Force,* 998 F.2d 1067,

1068 (D.C. Cir. 1993); *Mead Data Central, Inc. v. U.S. Dept. of Air Force,* 566 F.2d 242, 260

(D.C. Cir. 1977)). Here, the TSA has not clearly demonstrated that the documents contain no

reasonably segregable factual information. In fact, the descriptions of the documents in Paul

Sotoudeh's Declaration support a finding that much of the withheld material is non-deliberative

in nature, and therefore subject to disclosure.

Even if the Court finds that the Congressional Briefing materials meet the "inter-agency

or inter-agency" requirement, and even if the Court finds that portions of these records contain

"advisory opinions, recommendations, and deliberations that are part of a process by which

governmental decisions and policies are formulated," *Klamath Water Users,* 532 U.S. at 8, all

segregable factual portions of the records must still be released. *See Roth v. U.S. Dep't of Justice,*

642 F.3d at 1167. As discussed, the Sotoudeh Declaration, as well as the Defendant's Motion for

Summary Judgment and the Vaughn Index presented by the Defendant contains many references

to information that is most likely factual. Thus, even if the Court finds that there is a section of

one of these documents that contains an advisory opinion regarding what the agency should do

about the weaknesses of the prototype system, the agency must still disclose the underlying

factual information: what the strengths and weaknesses were.

### III.    EPIC Is Entitled to Recover Its Costs and Fees

*a.      EPIC "Substantially Prevailed" by Forcing Disclosure of TSA Records*

Irrespective of the outcome of the parties' cross-motions for summary judgment, EPIC is entitled to recover its fees and costs from the TSA in this matter. EPIC asks the Court to enter judgment as to EPIC's eligibility and entitlement to fees and to order further briefing as to the amount of costs and fees. "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). "A complainant has substantially prevailed if the complainant has obtained relief through … a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id*. The determination of whether the plaintiff has "substantially prevailed" is "largely a question of causation." *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984); *Church of Scientology v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981). The key inquiry is "did the institution and prosecution of the litigation cause the agency to release the documents obtained during the pendency of the litigation?" *Church of Scientology v. Harris*, 653 F.2d at 587.

EPIC has already "substantially prevailed" in this lawsuit. As described above, EPIC filed its FOIA requests concerning ATR body scanner software on June 15, 2010 and October 10, 2010. On October 5, 2011 and December 14, 2011, respectively, EPIC filed administrative appeals challenging the TSA's wrongful withholding of documents. On February 1, 2011, EPIC filed this lawsuit challenging the agency's wrongful withholding of documents. An initial release of documents was made on July 29, 2011, with two subsequent releases on August 22, 2011 and September 8, 2011.  "The institution and prosecution" of this suit plainly "cause[d] the agency to release the documents obtained during the pendency of the litigation."

     *b.*     *The Court Should Award EPIC Costs and Fees In This Case*

"The court should consider [four factors] in determining the appropriateness of an award of costs and attorney fees." *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C. Cir. 1977). The four factors are: 1) "the benefit to the public, if any, deriving from the case;" 2) "the commercial benefit of the complainant;" 3) "the nature of [the complainant's] interest in the records sought"; and 4) "whether the government's withholding of the records sought had a reasonable basis in law." H. Comm. on Gov't Operations and S. Comm. on the Judiciary, 94th Cong., *Freedom of Information Act and Amendments of 1974 (Pub. L. No. 93-502) Source Book,* 189-90 (J. Comm. Print 1975).

"Public benefit" can be demonstrated by a "newsman . . . seeking information to be used in a publication or a public interest group . . . seeking information to further a project benefiting the general public." *Id*. at 171. The "public benefit" factor supports an award where the complainant's victory is "likely to add to the fund of information that citizens may use in making in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (citations omitted). The D.C. District Court has found that news media coverage is relevant for determining "public benefit." *Elec. Privacy Info. Ctr. v. U.S. Dept. of Homeland Sec.,* 2011 WL 4014308 (D.D.C. Sept. 12, 2011).

EPIC's FOIA suit provided substantial benefit to the public. EPIC maintains two of the most popular websites in the world - www.epic.org and www.privacy.org - for searches on the term "privacy." EPIC disseminated the agency records it received on its www.epic.org web site[2] and to the approximately 8,000 recipients of its bi-weekly newsletter.[3] Many news organizations have reported on EPIC's FOIA work on this topic. *See, e.g.,* Andrea Sachs, *Body Scans: For*

---

[2] http://epic.org/privacy/body_scanners/epic_v_tsa.html.
[3] http://epic.org/alert/epic_alert_1816.html.

*Their Eyes Only*, TheStar.com, Feb. 6, 2010;[4] Justin Hienz, *Full Body Scanner "Naked" Pictures Eliminated with New TSA Software*, DefenseMediaNetwork, Sept. 25, 2011.[5] Members of Congress have also demonstrated interest in the privacy ramifications of body scanners. Cam Simpson and Daniel Michaels, *TSA Pressed on Full-Body Scans Despite Concerns*, the Wall Street Journal, Jan. 9, 2010.

"Commercial benefit to the complainant" might preclude an award if the beneficiary is a "large corporate interest (or a representative of such an interest)." *Freedom of Information Act and Amendments of 1974 Source Book* at 171. However, commercial benefit does not bar recovery "where the complainant was indigent or a nonprofit public interest group." *Id.* In fact, nonprofit organizations are "the sort of requester that Congress intended to recover attorney's fees under FOIA." *Elec. Frontier Found. v. Office of the Director of National Intelligence*, 2008 WL 2331959 (N.D. Cal. June 4, 2008). EPIC is a 501(c)(3) non-profit public interest research center. EPIC derived no commercial benefit from its FOIA request or lawsuit. The sole benefit was derived by the public, which benefited from the disclosure of the documents released in this case.

The "nature of the [complainant's] interest" factor is "closely related [to] and often considered together" with the commercial benefit criterion. *Tax Analysts v. Dep't of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992) Favored interests are "scholarly, journalistic or public-interest oriented." *Freedom of Information Act and Amendments of 1974 Source Book* at 171. *See Long v. IRS*, 932 F.2d 1309, 1316 (9th Cir. 1991) (holding that a lower court's ruling that the plaintiff's scholarly interest weighed against her recovery of fees was held "wrong as a matter of

---

[4] http://www.thestar.com/travel/article/761660--body-scans-for-their-eyes-only.
[5] http://www.defensemedianetwork.com/stories/full-body-scanner-naked-pictures-eliminated-with-new-tsa-software/.

law and an abuse of discretion."). As set forth above, EPIC's interest in this matter is squarely

within the "scholarly, journalistic or public-interest oriented" interests favored by the statute.

*See, e.g., Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.,* 760 F. Supp. 2d 4, 44

(D.D.C. 2011) ("[EPIC's] aims, which include dissemination of information regarding privacy

issues to the public, . . . fall within the scholarly and public-interest oriented goals promoted by

FOIA, . . .")

      The TSA did not have a "reasonable legal basis" for failing to disclose records to EPIC.

The TSA's delay in replying to EPIC's requests and appeals plainly violated the FOIA's

statutory deadlines. *See* 5 U.S.C. § 552(a)(6)(A). As described in EPIC's Complaint, the TSA

violated statutory deadlines by failing to make a timely determination concerning EPIC's

administrative request and appeal. Complaint at ¶¶32-66. The TSA has cited no legal basis in

opposition to EPIC's claims regarding the untimeliness of the agency's response. An agency's

representation that records were not produced more quickly due to processing backlogs,

confusion, and administrative error are "practical explanations, not reasonable legal bases" for

withholding. *Miller v. Dep't of State*, 779 F.2d 1378, 1390 (8th Cir. 1985). "The FOIA does not

contain a statutory exception for administrative inefficiency. When a private citizen is obliged to

seek legal services in order to wrest from the government information which the government had

no legal reason to withhold from him, he is entitled under the Act to be reimbursed for the cost to

which he has been put." *Id.*

      In this case, EPIC was forced to sue the TSA in order to wrest from the government

critical information concerning the body scanner software modifications. The TSA had no reason

or legal basis to withhold these records. The agency must be forced to reimburse EPIC for its

costs and fees.

## CONCLUSION

For the foregoing reasons, EPIC asks the Court to deny Defendant's Motion for Summary

Judgment and grant EPIC's Cross-motion for Summary Judgment.


Respectfully submitted,
         */s/ John Verdi*
MARC ROTENBERG
JOHN VERDI
Electronic Privacy Information Center
1718 Connecticut Ave., NW
Suite 200
Washington, D.C. 20009
(202) 483-1140
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of October 2011, I served the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, CROSS-MOTION FOR SUMMARY JUDGMENT, AND REQUEST FOR ORAL HEARING, including all exhibits and attachments, by electronic case filing upon:

> JOSEPH MEAD
> Trial Attorney
> United States Department of Justice
> Civil Division, Federal Programs Branch
> 20 Massachusetts Ave. NW
> Washington, DC 20530
> Tel.    (202) 305-8546
> Fax    (202) 305-8517
> joseph.w.mead@usdoj.gov

_____/s/ John Verdi_____
John Verdi
*Counsel for Plaintiff*