IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| TRANSPORTATION SECURITY ADMINISTRATION, | ) ) ) |
| Defendant. | ) ) ) |

Civil Action No. 11-0290 (ABJ)

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

EPIC's response does not challenge that the Transportation Security Administration (TSA) conducted an adequate search for documents.  Nor does it dispute that TSA properly withheld records under Exemptions 4 and 6 of the Freedom of Information Act (FOIA).  Instead, EPIC raises two narrow issues about TSA's withholdings: (1) whether material designated as Sensitive Security Information (SSI) under 49 U.S.C. §114(r) is exempt from disclosure despite an explicit statutory prohibition on disclosure "notwithstanding" the FOIA; and (2) whether TSA has properly asserted Exemption 5 to withhold deliberative material contained in documents created by TSA to recommend certain action.  EPIC also puts the cart before the horse and contends that it is entitled to attorney's fees and costs.  Because TSA has properly withheld exempt information, and because it is premature to decide whether EPIC is entitled to attorney's

1

fees and costs, TSA's motion for summary judgment should be granted, and EPIC's motion for summary judgment be denied.

## ARGUMENT

### I.   EPIC HAS CONCEDED THE SUFFICIENCY OF THE SCOPE OF TSA'S SEARCH AND THE PROPRIETY OF ALL WITHHOLDINGS UNDER EXEMPTIONS 4 AND 6

At the outset, Defendant should be granted summary judgment on all issues except for those expressly contested by EPIC in its opposition brief.  *See Franklin v. Potter*, 600 F. Supp. 2d 38, 60 (D.D.C. 2009) (treating defendant's argument in summary judgment motion as conceded where plaintiff failed to address it in plaintiff's response); *Hopkins v. Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004); *Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002) ("[I]f the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case." (citation omitted)).

In its opening brief, TSA moved for summary judgment on the sufficiency of the scope of TSA's search for responsive documents, and on all withholdings made by TSA.  EPIC's opposition brief does not contest the scope of search, nor does it address any of TSA's withholdings under Exemption 4 or Exemption 6.  For the reasons set forth in Defendant's opening brief, summary judgment should be granted to Defendant on all of the conceded issues.

### II.    SENSITIVE SECURITY INFORMATION IS EXEMPT FROM DISCLOSURE UNDER THE PLAIN LANGUAGE OF 49 U.S.C. § 114(r)

EPIC first contends that the public has an unfettered right to force disclosure of information that would be "detrimental to the security of transportation," known as Sensitive Security Information (SSI), despite Congress's explicit prohibition on that information's release. *See* 49 U.S.C. § 114(r).  This argument flies in the face of both the plain text of the statute and the cases from this and other circuits.

First, and despite clear statutory text, EPIC argues that Congress did not mean to authorize TSA to withhold SSI from a FOIA request, notwithstanding section 114(r)'s explicit prohibition on TSA disclosing SSI "[n]otwithstanding section 552 of title 5."  49 U.S.C. § 114(r)(1).  It is difficult to imagine how Congress could have been clearer that 114(r) supersedes FOIA.[1]  Indeed,  EPIC does not even attempt to explain what else Congress could have meant when it explicitly referenced FOIA.   SSI was properly withheld in light of the unambiguous Congressional command that SSI need not be disclosed under FOIA.

Not only is this provision clear on its face, the D.C. Circuit has already noted that virtually identical language (albeit in a different provision) "clearly and unambiguously . . . trumps FOIA's disclosure requirements."   *Pub. Citizen v. FAA*, 988 F.2d 186, 194 (D.C. Cir. 1993); *see also id.* at 195 ("[W]e conclude unmistakably that Congress intended the FAA to withhold from public disclosure information falling within § 1357(d), whether or not FOIA is invoked."); *id.* ("Where disclosure of information specified in § 1357(d)(2) and the FAA's implementing regulations would jeopardize passenger safety, Congress clearly intended for the

---

[1] The prohibition on release of SSI was enacted in 2002, long after FOIA.  Homeland Security Act of 2002, Pub. L. No. 107-296, § 1601, 116 Stat. 2135, 2312 (2002) (enacted as 49 U.S.C. §114(s)).  Its express modification of FOIA's disclosure requirements relating to SSI plainly satisfies the presumption against modification of FOIA.  *See* 5 U.S.C. § 559 ("Subsequent statute may not be held to supersede or modify this subchapter . . . except to the extent that it does so expressly."); *see also Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 149 & n.2 (D.C. Cir. 1986) (noting that Congress may still repeal or modify FOIA without doing so expressly, but holding that provision that did not specifically reference FOIA did not supersede FOIA).

FAA to be able to withhold such information under § 1357(d)(2)."); *id.* at 195-96 ("[Section] 1357(d)(2) allows the FAA to withhold security-sensitive information from members of the public, regardless of the legal basis of the request for the information.").[2] The provision at issue in *Public Citizen* is materially indistinguishable from 49 U.S.C. § 114(r):

| Provision in *Public Citizen*: | Provision relied upon by TSA here: |
|---|---|
| Notwithstanding section 552 of Title 5 relating to freedom of information, the Administrator shall prescribe such regulations as he may deem necessary to prohibit disclosure of any information obtained or developed in the conduct of security or research and development activities under this subchapter if, in the opinion of the Administrator, the disclosure of such information— . . . (C) would be detrimental to the safety of persons traveling in air transportation. | Notwithstanding section 552 of title 5, the Under Secretary shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security under authority of the Aviation and Transportation Security Act (Public Law 107-71) or under chapter 449 of this title if the Under Secretary decides that disclosing the information would—. . . (C) be detrimental to the security of transportation. |
| 49 U.S.C. § 1357(d)(2) (1993) (later recodified at 49 U.S.C. § 40119(b)). | 49 U.S.C. § 114(r)(1). |

EPIC offers no reason why section 114(r) should be viewed differently, and there is none. Congress's use of similar clear language compels the same conclusion: this information is exempt from disclosure under FOIA.

Not only does section 114(r) bring SSI outside of FOIA altogether, FOIA itself recognizes that SSI is exempt through Exemption 3. *See* 5 U.S.C. § 552(b)(3). "[F]or purposes of qualifying as a withholding statute under Exemption 3, a statute must on its face exempt matters from disclosure. We must find a congressional purpose for exempt matters from disclosure in the actual words of the statute . . . ." *Nat'l Ass'n of Home Builders v. Norton*, 309

---

[2] The specific issue that the Court in *Public Citizen* addressed was not whether the SSI provisions of § 1357(d)(2) trumped FOIA – that matter, as the court recognized, was "clear and unambiguous" – but whether, in addition, it enabled the FAA to withhold SSI from the public in contexts *other* than FOIA requests. 988 F.2d at 194-95. On that issue, the Court ruled in the FAA's favor, finding that § 1357(d)(2) granted the FAA such authority.

F.3d 26, 38 (D.C. Cir. 2002) (quotations omitted).  The Court should reject "[an] unduly strict reading of Exemption 3 [that would] strangle[] Congress's intent."  *Wis. Project on Nuclear Arms Control v. Dep't of Commerce*, 317 F.3d 275, 283 (D.C. Cir. 2003).  As noted above, the Congressional purpose is plain, as courts have universally concluded: SSI does not need to be disclosed under FOIA.  *Tooley v. Bush*, No. 06-306, 2006 WL 3783142, at *20 (D.D.C. Dec. 21, 2006), *rev'd & remanded in part on other grounds sub nom.*, *Tooley v. Napolitano*, 556 F.3d 836 (D.C. Cir. 2009); *Gordon v. FBI*, 390 F. Supp. 2d 897, 900 (N.D. Cal. 2004).[3]

Arguing to the contrary, EPIC contends that the statutory prohibition on disclosure of information that would "be detrimental to the security of transportation," 49 U.S.C. § 114(r), bestows "unfettered discretion" on TSA and "fails to 'establish particular criteria of withholding or refer to particular types of matters to be withheld.'"  Pl.'s Cross-Mot. For Summ. J. at 8, ECF No. 14-1 (quoting 5 U.S.C. § 552(b)(3)).  EPIC is wrong on both counts.  First, TSA does not have "unfettered discretion," but rather has *no* discretion to release information that would be detrimental to the security of transportation security.  *See* 49 U.S.C. § 114(r) (providing that TSA "shall prescribe regulations prohibiting the disclosure").

Second, section 114(r) refers to particular matters to be withheld, namely "information obtained or developed in carrying out security" when "disclosing the information would . . . be detrimental to the security of transportation."  49 U.S.C. § 114(r)(1).  Unlike the statute that

---

[3] It is irrelevant that TSA has adopted regulations regarding the prohibition on disclosure of SSI.  *See* 49 C.F.R. pt. 1520.  This authority flows directly from 49 U.S.C. §114(r), which instructed TSA to promulgate such regulations in the same sentence it exempted SSI from FOIA.  Moreover, TSA has not withheld any information as SSI *except* for information required to be withheld *by statute* because its release would "be detrimental to the security of transportation."  *See* Def.'s LCivR 7(h) Stmt. ¶¶ 21-28, ECF No. 13 (citing Benner Decl. ¶¶ 13-44); *see also* 49 C.F.R. §1520.5(a) (tracking language of 49 U.S.C. § 114(r)); *cf. Wisconsin*, 317 F.3d at 284 (suggesting Exemption 3 would apply to executive order that "continued precisely the provision originated and written by Congress").

permits an agency to consider the "interests of the public" when making a disclosure decision, as in *Administrator v. Robertson*, 422 U.S. 255 (1975), *superseded by statute as stated in Nat'l Parks and Conservation Ass'n v. Kleppe*, 547 F.2d 673, 687 (D.C. Cir. 1976), section 114(r) deals with the specific hazard of harm to transportation security.  Moreover, Section 114(r) further cabins discretion by providing that SSI cannot be used to conceal error, prevent embarrassment, restrain competition, or "prevent or delay the release of information that does not require protection in the interest of transportation security, including basic scientific research information not clearly related to transportation security."  49 U.S.C. § 114(r)(4). The particularity provided here is similar to other Exemption 3 statutes, such as the one recently considered by the D.C. Circuit which permitted withholding "whenever and to the extent it is determined by the President or his designee that the disclosure of matters involved in the Committee's proceedings would compromise the Government's negotiating objectives or bargaining positions on the negotiations of any agreement."  *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 511 (D.C. Cir. 2011) (quoting 19 U.S.C. § 2605(h)).[4] Whether viewed on its own or through the lens of Exemption 3, 49 U.S.C. §114(r) exempts SSI from release under FOIA.

---

[4] *Accord CIA v. Sims*, 471 U.S. 159, 167 (1985) (finding that "[s]ection 102(d)(3) of the National Security Act of 1947, which calls for the Director of Central Intelligence to protect 'intelligence sources and methods,' clearly 'refers to particular types of matters,' and thus qualifies as a withholding statute under Exemption 3"); *Nat'l Inst. of Military Justice v. DOD*, 404 F. Supp. 2d 325, 335-37 (D.D.C. 2005) (applying Exemption 3 to 10 U.S.C. § 130c, which permitted withholding information provided by foreign governments if disclosure "would have an adverse effect on the ability of the United States Government to obtain the same or similar information in the future"), *aff'd on other grounds*, 512 F.3d 677 (D.C. Cir. 2008); *Hornbostel v. U.S. Dep't of the Interior*, 305 F. Supp. 2d 21, 30 (D.D.C. 2003) (concluding Exemption 3 applied to 16 U.S.C. §5937, which permitted agency to withhold information regarding "rare or commercially valuable" resources located on public land), *summarily aff'd*, 2004 WL 1900562 (D.C. Cir. Aug. 25, 2004); *Colonial Trading Corp. v. Dep't of Navy*, 735 F. Supp. 429, 431 (D.D.C. 1990) (statute permitting withholding of "technical data with military or space application" is "clearly an exemption 3 statute").

Nowhere in its brief does EPIC dispute that the material was properly designated as SSI. Thus, EPIC has conceded this point. *See Franklin*, 600 F. Supp. 2d at 60.  Had this argument been made, it would be without merit.  First, as explained in TSA's motion for summary judgment, the court of appeals has exclusive jurisdiction over any challenge to TSA's designation of information as SSI.  *See* Def.'s Memo. in Supp. of Mot. For Summ. J. at 14-15, ECF No. 13 (collecting cases).   Second, TSA has asserted, and EPIC has not rebutted, that the release of the withheld information would be detrimental to transportation security.  EPIC does suggest in its response to TSA's statement of material facts (though not its memorandum) that TSA's conclusion regarding the harm to transportation security should be rejected because it is "hypothetical."  TSA's determination is not hypothetical but predictive: TSA's evidence is about what *would* happen *if* the information were disclosed.  That conclusion of the expert agency should not be disregarded.  "[A] reviewing court must take into account . . . that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm."  *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quotation omitted); *see also id.* at 376 (finding agency properly withheld information upon a showing that "could reasonably be expected" or "could potentially" cause harm).  Congress has decided that TSA is in the best position to decide whether the release of information would cause harm to transportation security.  49 U.S.C. §114(r); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) ("The assessment of harm . . . is entrusted to the Director of Central Intelligence, not to the courts.").  In light of the agency's greater expertise, courts "have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 927 (D.C. Cir. 2003).  TSA has explained why the information it

withheld would harm transportation security if disclosed, and this conclusion is both unrebutted by other evidence and entitled to significant deference. *See, e.g.*, *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009); *Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007) (noting "the special deference owed to agency affidavits on national security matters"). TSA's designation of material as SSI was proper.

Because Congress was clear that SSI need not be disclosed, and there is no contention that the material withheld as SSI was improperly designated, TSA is entitled to summary judgment on its withholding of SSI.

## III.   TSA PROPERLY WITHHELD DELIBEBRATIVE MATERIAL

EPIC also challenges TSA's withholding of certain deliberative material,[5] but it relies on an unduly constrained view of the deliberative process privilege.[6] Because disclosure of deliberative information to Congress does not waive the exemption; because the privilege covers the generation, compilation, and analysis of factual material contained in recommendation memoranda; and because TSA has provided all reasonably segregable, non-exempt information, TSA should be granted summary judgment on its Exemption 5 withholdings.

---

[5] EPIC has not challenged TSA's assertion of Exemption 5 over drafts of the Functional Requirements Document (FRD) or portions of the DHS Acquisition Review Board for ATR PowerPoint.

[6] Many of the pages withheld under Exemption 5 were also withheld as SSI. If the Court concludes that SSI is exempt from FOIA, the Court should only consider those redactions that do not contain SSI. *See Am. Civil Liberties Union v. DOD*, 628 F.3d 612, 619 n.2 (D.C. Cir. 2011) ("[T]he government need not prevail on both exemptions, but under the statute may refuse disclosure if the withheld records satisfy one exemption."). In addition, portions of page 416 and 417 should have been designated as SSI because their release would be detrimental to the security of transportation. *See* Ex. A, Sotoudeh Supp. Decl. ¶ 9.

*First*, TSA properly withheld a small amount of deliberative material contained in a document created by TSA that was, at one point, shared with Congress.[7]  As explained in Paul Sotoudeh's supplemental declaration (Exhibit A), the document qualifies for Exemption 5 because it is an intra-agency document containing information created as part of the agency's deliberative process.  Contrary to EPIC's argument, the privileged nature of this information does not evaporate when shared with Congress.

To begin, the document meets the threshold intra-agency or inter-agency requirement of Exemption 5.  The document was not created by Congress, a member of the public, or any other non-agency; it is a TSA document, and was created by TSA personnel using intra-agency information.  Ex. A, Sotoudeh Supp. Decl. ¶3; Def.'s MSJ, Ex. 1, Sotoudeh Decl. ¶36, ECF No. 13-1.  Thus, it is an "inter-agency or intra-agency memorandum[] or letter[]" to which Exemption 5 may apply.  *See DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (restating the "inter-agency or intra-agency memorandums or letters" requirement as "[the document's] source must be a Government agency"); *Government Accountability Project v. U.S. Dept. of State*, 699 F. Supp. 2d 97, 104 (D.D.C. 2011) (noting that, "in addition to *documents prepared within a government agency*," certain documents created outside an agency may qualify as inter-agency (emphasis added)).[8]  Further, the particular deliberative material

---

[7] Based on information disclosed in recent press releases, TSA will make a discretionary release to EPIC of information on pages 000415, 00416, and 000418 from the PowerPoint.  Sotoudeh Supp. Decl. ¶ 11.

[8] Even a document created by an agency for the sole purpose of being sent to the President--who, like Congress, is not an "agency" under FOIA, *see Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 156 (1980)--still qualifies as "inter-agency or intra-agency" for purposes of Exemption 5.  *EPA v. Mink*, 410 U.S. 73 (1973) (stating that it was "beyond question" that documents "prepared and used solely for transmittal to the President as advice and recommendations" were "'inter-agency or intra-agency' memoranda or 'letters,'"), *superseded on other grounds as stated in Zweibon v. Mitchell*, 516 F.2d 594, 642 (D.C. Cir. 1975) (citing 5

redacted from this TSA document was generated as part of the *agency's* internal deliberations. Ex. A, Sotoudeh Supp. Decl. ¶4; *see also Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) ("The focus of the FOIA is information, not documents. . .").[9]  Moreover, contrary to EPIC's mistaken suggestion, TSA only redacted information from its document when the information would reveal deliberation within the agency or the executive branch.  *See* Sotoudeh Supp. Decl. ¶4 ("TSA did not assert exemption 5 over any material unless it related to a deliberation internal to the executive branch."); *see also* Sotoudeh Decl. ¶36. Although the privilege does not protect "deliberations of a *non-agency*" such as Congress, it does protect "*the agency's* deliberative process." *Dow Jones & Co., Inc. v. DOJ*, 917 F.2d 571, 575 (D.C. Cir. 1990) (en banc) (emphasis in original); *cf. Paisley v. CIA*, 712 F.2d 686, 699 n.54 (D.C. Cir. 1983) (suggesting that Exemption 5 would not apply if "*Congress* is the only body engaged in decisionmaking" (emphasis added)), *vacated in part*, 724 F.2d 201 (1984).  TSA's Exemption 5 redactions seek to protect this internal deliberative process.

Applying Exemption 5 to the intra-agency deliberative material in this agency document is fully consistent with the purposes of the exemption.  When interpreting the meaning of "inter-agency or intra-agency," courts in this circuit have long considered the purposes behind the deliberative process privilege.  *See National Institute of Military Justice v. DOD*, 512 F.3d 677, 683-85 (D.C. Cir. 2008) (adopting "'common sense' interpretation to deem the documents 'intra-agency'"); *Formaldehyde Institute v. HHS*, 889 F.2d 1118, 1123-24 (D.C. Cir. 1989) ("The pertinent issue here is what harm, if any, the [non-agency document's] release would do to HHS'

U.S.C. 552(b)(1)); *Berman v. CIA*, 378 F. Supp. 2d 1209, 1220 (E.D. Cal. 2005), *aff'd on other grounds*, 501 F.3d 1136 (9th Cir. 2007).

[9] For example, some slides were copied from the DHS Acquisition Review Board for ATR PowerPoint, a document which contains deliberative process privilege redactions unchallenged by EPIC.  Sotoudeh Supp.  Decl. ¶¶ 5-6.

deliberative process.").[10]  The deliberative process privilege furthers several purposes relevant to this information, including "to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  This document is a TSA record that reveals the state of deliberation within the executive branch regarding certain topics as of the date of its creation, *see* Sotoudeh Supp. Decl. ¶ 10 (noting that redacted information "was still undergoing internal deliberation"), and applying the privilege to these tentative views of DHS is fully consistent with the privilege's goals.  The fact that the agency's tentative thinking was shared with Congress does *not* mean that a final decision had been reached or that the exemption vanishes.  For example, some proposals redacted as deliberative have actually been rejected by the agency after further deliberation.  *See* Sotoudeh Supp. Decl. ¶10.  Moreover, the document reveals DHS's opinions about what budget requests it may recommend to the President, *see* Def.'s LCivR 7(h) Stmt. ¶66, but this opinion was still subject to future deliberation, both within DHS and within the executive branch more generally.  *See Bureau of Nat'l Affairs v. DOJ*, 742 F.2d 1484, 1496 (D.C. Cir. 1984) ("[T]he President bears the ultimate responsibility for submitting a final budget proposal to the Congress, any

_____

[10] In *Klamath*, the Supreme Court noted that the D.C. Circuit had "recognized at least two instances of intra-agency consultants that arguably extend beyond what we have characterized as the typical examples."  532 U.S. at 12 n.4 (citing *Public Citizen, Inc. v. DOJ*, 111 F.3d 168 (D.C. Cir. 1997) and  *Ryan v. DOJ*, 617 F.2d 781 (D.C. Cir. 1980)).  However, the Court did not abrogate this circuit's precedent, *see id.*, which has been reaffirmed by the D.C. Circuit. *National Institute of Military Justice v. DOD*, 512 F.3d 677, 682 (D.C. Cir. 2008) ("Given the Supreme Court's disclaimer and its reasoning, we perceive no basis to jettison our binding Circuit precedent."); *see also McKinley v. Board of Governors of Federal Reserve System*, 647 F.3d 331, 338 (D.C. Cir. 2011).

recommendations made to him by the agencies are predecisional, deliberative interagency memoranda exempt from disclosure under 5 U.S.C. § 552(b)(5).").  It would be counter to FOIA's goals to exempt from disclosure the agency's recommendations regarding budget requests to the President, for example, but require disclosure of this same information when placed in a document shared with Congress.  *Cf. Mead Data*, 566 F.2d at 257 ("It would exalt form over substance to exempt documents in which staff recommend certain action or offer their opinions on given issues but require disclosure of documents which only 'report' what those recommendations and opinions are.").

Agency documents containing internal deliberations do not lose their privileged status when given to Congress.  It has been long established that sharing intra-agency deliberative information with Congress, as was done here, does not waive the exemption.  *See* 5 U.S.C. § 552(d) ("This section is not authority to withhold information from Congress."); *Rockwell Int'l Corp. v. DOJ*, 235 F.3d 598, 604 (D.C. Cir. 2001); *Murphy v. Dep't of the Army*, 613 F.2d 1151, 1155-59 (D.C. Cir. 1979); *Safeway Stores Inc. v. FTC*, 428 F. Supp. 346, 347 (D.D.C. 1977) ("Disclosure to an authorized congressional committee does not waive the exemption."). Congress wished agencies to be forthcoming to it, and a ruling that an agency waives the deliberative process privilege whenever it includes deliberative information in a document provided to Congress would work directly counter to that goal.  *See Murphy*, 613 F.2d at 1156 ("[U]nder such an interpretation every disclosure to Congress would be tantamount to a waiver of all privileges and exemptions, executive agencies would inevitably become more cautious in furnishing sensitive information to the legislative branch[:] a development at odds with public policy which encourages broad congressional access to governmental information." (footnote omitted)).  The need for agencies to freely share information with members of Congress is

particularly strong where, as here, the memoranda was shared with a Congressional committee that has oversight responsibilities for TSA.  Sotoudeh Supp. Decl. ¶3; *cf. Goland v. CIA*, 607 F.2d 339, 346 (D.C. Cir. 1978) ("Congress exercises oversight authority over the various federal agencies, and thus has an undoubted interest in exchanging documents with those agencies to facilitate their proper functioning in accordance with Congress' originating intent.").  When Congress exempted itself from FOIA and its disclosure requirements, it could hardly have intended to inhibit agencies from sharing deliberative material with it.  *Cf. Berman*, 378 F. Supp. 2d at 1220 ("Congress exempted the President from the definition of an 'agency' under FOIA because it wanted to protect the President from the burdens and intrusions of FOIA, not because it sought to deny the President the protections afforded by the exemptions for information communicated to the President but retained in an agency file.").  Because the release of the redacted information in this TSA document would reveal preliminary agency opinions at a particular point during intra-agency deliberations, and the fact that this was shared with Congress does not waive the exemption, the withholding should be upheld.

  *Second*, TSA properly withheld memoranda expressing opinions and making recommendations.  It is undisputed that (1) the Letter of Assessment is from a DHS component to the DHS Under Secretary for Management, recommending that DHS authorize the implementation of ATR, *see* Def.'s LCivR 7(h) Stmt. ¶69 (not challenged by EPIC); and (2) the Action Memoranda "were used to exchange recommendations and opinions between" DHS components regarding ATR use and testing, *see* Def.'s LCivR 7(h) Stmt. ¶71 (not challenged by EPIC).  Thus, each of the documents challenged by EPIC conveyed the author's recommendation to another decisionmaker, making each an easy fit for the privilege.  *See, e.g.*, *Murphy*, 613 F.2d at 1154 (applying privilege to "exchange of memoranda" between general

13

counsel and the "[a]ssistant Secretary who had the decision-making power"); *McPeek v.*
*Ashcroft*, 202 F.R.D. 332, 334 (D.D.C. 2001) (holding, in a non-FOIA context, that
recommendations and drafts of those recommendations are the "purest form" of deliberative
process documents and an "easy fit" for the privilege); *Tax Analysts v. IRS*, 152 F. Supp. 2d 1,
24-25 (D.D.C. 2001) (protecting memoranda "written by a component office without
decisionmaking authority to a different component office" that had such authority), *aff'd in part,*
*rev'd in part on other grounds and remanded*, 294 F.3d 71 (D.C. Cir. 2002).

Nevertheless, EPIC suggests that some information that was withheld was not
deliberative but factual, and therefore outside the privilege. Yet EPIC fails to identify what
material it considers to be factual.[11]  Moreover, "the legitimacy of withholding does not turn on
whether the material is purely factual in nature . . . but rather on whether the selection or
organization of facts is part of an agency's deliberative process." *Ancient Coin Collectors Guild*
*v. U.S. Dept. of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (citing *Montrose Chemical Corp. of*
*Cal. v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974)). Thus, for example, "factual summaries" that
were "culled by the Committee from the much larger universe of facts presented to it and reflect
an exercise of judgment as to what issues are most relevant to the pre-decisional findings and
recommendations" are protected by the privilege. *Id.*

The same is true here. What the staff decided to test for, how it decided to carry out these
tests, which results it chose to share, how it chose to present the results, and its analysis of those
results, all reflect an "exercise of judgment as to what issues are most relevant to the pre-
decisional findings and recommendations." *See id.* The factual compilation and analysis
contained in the recommendation memoranda is deliberative material, and is exempt from

---

[11] EPIC does not suggest that non-factual material in these recommendation memoranda must be
disclosed.

disclosure. *See, e.g., Mapother v. DOJ*, 3 F.3d 1533, 1539 (D.C. Cir. 1993) (holding that

privilege "shelter[s] factual summaries that were written to assist the making of a discretionary

decision"); *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 205 (D.D.C.

2007) (finding that deliberative process privilege protected spreadsheet and tables analyzing data

that reflect "decisions about how to look at the data, how to select portions of the data to

examine, and how to interpret the data"); *c.f. Carter v. U.S. Dept. of Commerce*, 307 F.3d 1084,

1091 (9th Cir. 2002) ("[N]umbers can constitute deliberative material where they represent

opinions and subjective judgments created to assist in the decision-making process. . . .").

  *Third*, TSA properly withheld proposals contained in a document entitled "Operational

Test Plan (OTP) & Operational Test and Evaluation (OT&E) for AIT/ATR."  It is undisputed

that the Operational Test Plan (OTP) for Operational Testing and Evaluation (OT&E) for

AIT/ATR sets forth a "proposal for how TSA will conduct future pilot Operational Test and

Evaluation."  *See* Def.'s LCivR 7(h) Stmt. ¶73 (citations omitted) (not challenged by EPIC).  The

purpose of the Test and Evaluation effort was "to provide credible, timely, and sufficient

information to support the evaluation of the effectiveness and suitability" of AIT with ATR.

Sotoudeh Supp. Decl. ¶ 12.  Even if the proposals were expressly adopted by DHS as the final

decision about field testing at the three pilot airports,[12] the details about testing are still

predecisional to the ultimate decision whether ATR should be rolled out for use in airports

---

[12] There is no evidence in the record on this point, and EPIC has the burden of showing adoption.
*See Casad v. HHS*, 301 F.3d 1247, 1252-53 (10th Cir. 2002) ("There is no indication in the
record that, in funding the NIA training grant, the NIH expressly adopted the reasoning of the
scientific peer group."); *Elec. Privacy Info. Ctr. v. DOJ*,  584 F. Supp. 2d 65, 78 (D.D.C. 2008)
("EPIC provides no evidence to support this assertion other than speculation, however. Such
speculation will not suffice."); *Trans Union LLC v. Federal Trade Com'n*, 141 F. Supp .2d 62,
70-71 (D.D.C. 2001) ("The agency does not have the burden of establishing that a document was
not adopted by the agency."); *North Dartmouth Properties, Inc. v. HUD*, 984 F. Supp. 65, 70 (D.
Mass. 1997) ("Plaintiff in this case gives the Court no reason to believe that Mr. Watson's
reasoning was ultimately adopted by the agency.").

nationwide. *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (holding that documents dated after drug had been approved "may still be predecisional and deliberative with respect to other, nonfinal agency policies"). TSA's decisions regarding what to test for reveals which factors it thought (at an early stage) were important in the decision whether to use ATR. The preliminary view of what matters, however, was not necessarily the same view at the time TSA made its ultimate recommendation regarding ATR's use nationwide. "[S]eparating the pertinent from the impertinent is a judgmental process, sometimes of the highest order." *Montrose Chem.*, 491 F.2d at 68. The deliberative process privilege protects "the ingredients of the decisionmaking process." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). These "ingredients" include preliminary views about what facts and criteria might be relevant to a later decision. *See Mead Data Central, Inc. v. U.S. Dept. of Air Force*, 575 F.2d 932, 935 (D.C. Cir. 1978) (holding that factual inquiries in the form of "cost comparisons and feasibility opinions" were deliberative because they would "reveal the 'evaluative' process by which different members of the decisionmaking chain arrived at their conclusions and what those predecisional conclusions are"); *Center For Medicare Advocacy, Inc. v. HHS*, 577 F. Supp. 2d 221, 237 (D.D.C. 2008) ("[T]he very purpose of the deliberative process privilege is to [among other things] avoid public confusion by not exposing facts considered for adopting agency policy when those factors are not the actual reason for the policy's adoption."); *Brinderson Constructors, Inc. v. U.S. Army Corps of Eng'rs*, 1986 WL 293230, at *5 (D.D.C. June 11, 1986) (holding that computations made in order to evaluate claim for compensation "are certainly part of the deliberative process"). The preliminary agency view about what facts were relevant and what factors should be considered in deciding whether to use AIT with ATR nationwide, as expressed in proposed testing methods, was properly withheld as deliberative.

*Finally*, TSA released all reasonably-segregable non-exempt information.  TSA did not withhold in full the documents challenged by EPIC; instead, it redacted individual phrases, sentences, paragraphs, or pages that contained deliberative material, and released the rest.  For these records, the unrebutted evidence shows that "TSA produced the segregable portion of each of the records . . . and [n]o further segregation was possible."  Sotoudeh Decl. ¶55; Def.'s LCivR 7(h) Stmt. ¶18 ("All reasonably segregable, non-exempt information has been released.") (disputed by EPIC "insofar as it states a legal conclusion"); *see also Judicial Watch, Inc. v. DOJ*, 2006 WL 2038513, at *5–6 (D.D.C. July 19, 2006) (rejecting plaintiff's segregability claim where agency declaration "very clearly declare[d], under penalty of perjury, . . . that 'all reasonably segregable information has been disclosed'").[13]  TSA has further offered a *Vaughn* index that describes with detail the specific material redacted on each page.  *See Vaughn* index, ECF No. 13-4.  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (citation omitted).  Rather than provide any reason to doubt this evidence, EPIC rehashes its argument that factual material cannot be withheld.  As discussed above, this argument is without merit.  Accordingly, the Court should grant summary judgment to TSA on its Exemption 5 withholdings, and find that all reasonably segregable, non-exempt information was released.

## IV.   PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES SHOULD BE DENIED AS PREMATURE.

In addition to contesting certain withholdings, EPIC also asks the Court, in its summary judgment brief, to rule that it is both eligible for, and entitled to, attorney's fees and costs.  EPIC's *de facto* motion for attorney's fees is premature, as it has been made prior to the Court's

---

[13] Paragraph 18 of TSA's Local Rule 7(h) statement erroneously cites to non-existent paragraph 57 rather than paragraph 55 of the Sotoudeh Declaration.

resolution of the merits of the case and without the conference required by this Court's Local Rules to determine whether the parties can resolve the issues of fees and costs without the need for the Court's intervention.  As such, the Court should defer consideration of attorney's fees and costs until after it resolves the merits of the case.  At that time, the Court can consider these issues if the parties are unable to resolve the question of fees and costs through negotiation.

To begin, this request is premature.  *See EPIC v. DHS*, 760 F. Supp. 2d 4, 9 n.5 (D.D.C. 2011) ("In its cross-motion, the plaintiff also moves the court for an award of attorney's fees. . . . The court agrees with DHS that resolution of this issue is premature . . .").  Typically a request for attorney's fees follows the entry of judgment.  *See, e.g., Davy v. CIA*, 550 F.3d 1155, 1158 (D.C. Cir. 2008) ("After the agency filed a superseding motion for summary judgment [in a FOIA case], the district court granted the agency's motion.  Davy thereafter timely filed a motion for attorney's fees under 5 U.S.C. § 552(a)(4)(E).").  Even assuming, *arguendo*, that EPIC could establish its eligibility for attorney's fees under the "catalyst theory" adopted in 5 U.S.C. § 552(a)(4)(E)(ii), based on its assertion that its initiation of litigation caused TSA to release non-exempt, responsive documents, in order to establish its entitlement to  attorney's fees, EPIC must further show that the balance of four factors – "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents" – tip in its favor. *Davy*, 550 F. 3d at 1159.  Although EPIC argues in its brief that these factors have been met, an evaluation of the first and fourth factors – the public benefit derived from the case and the reasonableness of TSA's withholdings – will necessarily depend on how the Court resolves the merits of the instant summary judgment motion as to the exemptions TSA has asserted over.

Moreover, EPIC's request asks the Court to adjudicate a matter that the parties may be able to resolve without Court intervention.  The United States and its agencies frequently settle fee disputes in FOIA cases – typically after the entry of judgment – and there is simply no need for the Court to rule on the issues of eligibility and entitlement for fees at this early stage. Indeed, the possibility of resolving a dispute without resort to a motion is the premise behind Local Rule 7(m), which provides:

> Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement. The duty to confer also applies to non-incarcerated parties appearing pro se. A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed.

Local Civ. R. 7(m).  A motion for attorney's fees – even one that is related to a dispositive motion – is a nondispositive motion that is subject to the requirements of Rule 7(m).  *Alberts v. HCA Inc.*, 405 B.R. 498, 502 (D.D.C. 2009); *see also Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 26 (D.D.C. 2001) ("Local Civil Rule 7.1(m) clearly states that it applies to 'any nondispositive motion,' and provides no exception for motions relating to dispositive motions."). "The purpose of the Local Rule is to promote the resolution of as many litigation disputes as possible without court intervention, or at least to force the parties to narrow the issues that must be brought to the court."  *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006).  One cannot avoid the purposes of the rule by adding unrelated requests for non-dispositive relief to a dispositive motion.  There is no need for the Court to consider the issues of fees and costs now, when the parties have not yet discussed or attempted to resolve these issues, and when EPIC made no attempt to approach TSA to ascertain its position on fees and costs before filing its motion.

Accordingly, TSA asks that the Court deny EPIC's request for judgment on the issues of eligibility and entitlement to fees and costs as premature.[14]

CONCLUSION

The Court should grant Defendant's Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment.

Dated:  November 1, 2011                      Respectfully submitted,

                                              TONY WEST
                                              Assistant Attorney General

                                              RONALD C. MACHEN JR.
                                              United States Attorney
                                              District of Columbia

                                              ELIZABETH J. SHAPIRO
                                              Deputy Branch Director,
                                              Federal Programs Branch

                                              /s/Joseph Mead
                                              JOSEPH MEAD (MI Bar No. P71528)
                                              Trial Attorney
                                              United States Department of Justice
                                              Civil Division, Federal Programs Branch
                                              20 Massachusetts Avenue, N.W.
                                              Washington, D.C. 20530
                                              Telephone: (202) 305-8546
                                              Fax: (202) 305-8517
                                              Email: joseph.w.mead@usdoj.gov

                                              Attorneys for Defendant

---

[14] To the extent that the Court agrees with EPIC that these issues are ripe for review now, TSA requests that the Court issue an Order for full briefing on the merits of EPIC's requests for fees and costs.

20