**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:11-cv-00290-ABJ |
| THE UNITED STATES TRANSPORTATION SECURITY ADMINISTRATION | ) ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS
CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff the Electronic Privacy Information Center ("EPIC") submits the following reply in support of its motion for summary judgment against Defendant the U.S. Transportation Security Administration ("TSA"). EPIC challenges the TSA's withholding of documents under Exemptions 3 and 5 of the Freedom of Information Act ("FOIA"). In addition, EPIC asked the Court to hold that EPIC is eligible for and entitled to attorneys' fees and costs in this lawsuit - EPIC has already qualified for such relief regardless of the outcome of the parties' cross-motions for summary judgment.

Although the TSA argues that 49 U.S.C. §114(r) is an adequate withholding statute under Exemption 3, Section 114(r) is insufficiently specific to qualify as an Exemption 3 statute under the FOIA statute and relevant case law. The TSA invokes Exemption 5 to withhold records that the agency disclosed to a congressional committee and records containing purely factual information that is neither deliberative nor pre-decisional. Exemption 5 does not permit an agency to withhold records that were previously disclosed to Congress. Exemption 5 does not

permit an agency to withhold records are purely factual and neither deliberative nor pre-decisional. The TSA's arguments would expand the scope of Exemption 5 beyond what Congress intended and what the Courts have previously recognized.

## ARGUMENT

EPIC is entitled to summary judgment ordering the disclosure of agency records withheld by the TSA pursuant to Exemptions 3 and 5. EPIC is also entitled to summary judgment concerning the organization's eligibility and entitlement to attorneys' fees and costs incurred in this matter.

### I.      49 U.S.C. §114(r) Is Not a Qualifying Statute Under FOIA Exemption 3

FOIA Exemption 3 permits an agency to withhold responsive records "specifically exempted from disclosure by statute," if the statute

> (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3). In enacting the FOIA, the Senate's floor report specifically referenced Exemption 3, stating "it is the purpose of the present bill to…establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language. 111 Cong. Rec. 26820 (October 13, 1965). Congress emphasized the important of "clear definitive guidelines in setting information policies." *Id*. Despite these clearly-stated goals, the TSA now argues that the vague standards in the Sensitive Security Information Statute may qualify as an exemption statute under Exemption 3.

### a.      49 U.S.C. § 114(r) is Not Sufficiently Specific to Qualify as an Exemption 3 Statute

The TSA does not meaningfully distinguish the language of 49 U.S.C. § 114(r) ("Section 114") from the statutory language that Congress explicitly removed as a basis for Exemption 3

withholdings in the 1976 FOIA amendments. *Irons & Sears v. Dann*, 606 F.2d 1215, 1219 (D.C. Cir. 1979) (noting that Congress intended to remove Section 1104 of The Federal Aviation Act as a basis for Exemption 3 withholdings. Section 1104 barred disclosure of information that "would adversely affect the interests of [the FAA] and is not required in the interest of the public."). Instead, the TSA primarily relies on *Public Citizen v. FAA*, 988 F.2d 186 (D.C. Cir. 1993), arguing that the case upheld Exemption 3 concerning a similarly-worded statute. But *Public Citizen* does not bind the Court as to Section 114(r). In fact, *Public Citizen* does not even resolve the question of whether the statute at issue in that case, 49 U.S.C. § 1357(d)(2), qualifies as an Exemption 3 statute.

In *Public Citizen*, the parties conceded that Section 1357(d)(2) was sufficient to support a withholding under the FOIA. *Id*. at 194 ("Petitioners argue that by expressly including this phrase, Congress plainly meant § 1357(d)(2) not to shield information from disclosure under any statute *other than FOIA*.") (emphasis added). The only issue addressed by the DC Circuit was the propriety of the agency's invocation of Section 1357(d)(2) to prevent disclosure under the Aviation Security Improvement Act of 1990. *Id*. ("the precise question here at issue is whether the FAA may use § 1357(d)(2) to avoid disclosure under statutes other than FOIA."). *Public Citizen* acknowledges that the language of Section 1357(d)(2) seeks to "specifically exempt [records] from disclosure by statute," thus satisfying the first prong of the Exemption 3 test. 5 U.S.C. § 552(b)(3). However, *Public Citizen* does not hold that Section 1357(d)(2) satisfies the second prong of Exemption 3's requirements – that the underlying statute "requires that the matters be withheld from the public in such a manner as to leave no discretion to the agency" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." Indeed, *Public Citizen* does not engage in an Exemption 3 analysis at all – the issue

was simply not before the court. Congress's specific exemption of records from disclosure by statute is a necessary, but not a sufficient, aspect of a qualifying Exemption 3 statute.

Exemption 3 authorizes agency withholdings under FOIA if they are both "specifically exempted from disclosure by statute" and either "requires that the matters be withheld from the public in such a manner as to leave no discretion to the agency" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3); *see, e.g.,* 42 U.S.C. § 2000e-5(b) (barring disclosure of "charges" filed in EEOC proceedings); 50 U.S.C. § 403g (prohibiting disclosure of "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the [Central Intelligence] Agency."). To qualify under Exemption 3, the statute must meet both conditions.[1] To hold otherwise would be to deny meaning to the plain meaning of Congress in passing the FOIA.

Statutes constitute a proper basis for Exemption 3 withholdings only when "Congress has itself made the basic decision, and has left to the administrator only the task of administration." *Am. Jewish Cong. v. Kreps*, 574 F.2d 624, 630 (D.C. Cir. 1978). The standard of Section 114 – that "the Under Secretary decides that disclosing the information would be detrimental to the security of transportation" – is nothing if not broad. To give meaning to these words, interpretation at the discretion of the Agency is necessary. In fact, the TSA has promulgated lengthy regulations in order to define and specify exactly the nature of information that is "detrimental to the security of transportation." *See* 49 CFR § 1520.5. The TSA argues that "SSI was properly withheld in light of the unambiguous Congressional command that SSI need not be disclosed under FOIA." Defendant's Reply Brief in Support of Defendant's Motion for Summary Judgment (Dkt. No. 17) at 3 ("Defendant's Reply"). Despite this assertion, Congress

---

[1] There is a third condition that, if passed after the Open FOIA Act of 2009, the statute must specifically cite to Exemption 3. 5 U.S.C. § 552(b)(3)(B). Section 114 does so.

never used the term "Sensitive Security Information," let alone commanded that it be withheld. Both the phrase and the definitions of what it encompasses were developed by the Agency, not lawmakers. The Agency's regulations cannot, however, supply the meaning to support the TSA's withholdings, because agency regulations are not statutes, and the plain language of the FOIA requires that Exemption 3 withholdings be "specifically exempted from disclosure *by statute*." 5 U.S.C. § 52(b)(3) (emphasis added).

In addition, despite the agency's argument to the contrary, the TSA was free to consider any factors it deemed relevant in applying Section 114. In fact, the agency interprets Section 114 to allow them to take into account the "interests of public safety" when making a disclosure determination. 49 CFR § 1520.5(b) ("except as otherwise provided in writing by TSA in the interest of public safety or in furtherance of transportation security, the following information, and records containing such information, constitute SSI"). The full responsibility for determining releasability of documents is in the hands of the Agency. Section 114(r) is precisely the sort of broad statute permitting "wholly discretionary non-disclosure" that Congress excluded as a basis for Exemption 3 withholdings and the Court should hold that it does not qualify under FOIA Exemption 3. *Lee Pharmaceuticals v. Kreps*, 577 F.2d 610 at 615.

**II.     FOIA Exemption 5 Does Not Permit the Agency to Withhold Congressional Briefing Materials or Purely Factual Information that is Neither Deliberative Nor Pre-Decisional.**

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.  5 U.S.C. § 552(b)(5). The exemption is to be applied "as narrowly as consistent with efficient Government operation." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) (citing S. Rep. No. 89-813 (1965)).

In order to qualify for the deliberative process privilege under Exemption 5, the government must demonstrate that the document is either inter-agency or intra-agency in nature, and also that it is both predecisional and part of the agency's deliberative process. *Dow Jones & Co., Inc. v. Dep't of Justice*, 917 F.2d 571, 574 (D.C. Cir. 1990). The Court should require the TSA to release agency records that were disclosed to Congress and records that are purely factual in nature.

      a.    *Document Created for and Presented to Congress Cannot be Exempt Under Exemption 5*

The TSA seeks to withhold agency records that were disclosed to Congress during a House appropriations hearing that concerned the funding of the TSA's ATR program. Exhibit 1 to Defendant's Motion for Summary Judgment (Dkt. No. 13) at ¶36 ("Sotoudeh Decl."). The withholdings are improper under Exemption 5 because Congress is not an executive agency, and records disclosed to Congress are not ""inter-agency or intra-agency memorandums or letters." 5 U.S.C. 552(b)(5). The withholdings are also inconsistent with the TSA's statements in this matter. Exhibit A to Defendant's Reply at ¶ 4 ("Supplemental Sotoudeh Decl.") (asserting that the agency "did not assert exemption 5 over any material unless it related to a deliberation internal to the executive branch.").

"The power to appropriate is a legislative power." Sandy Streeter, The Congressional Appropriations Process: An Introduction, Congressional Research Service (Dec. 2, 2008) at 1 ("CRS Appropriations Report"). The executive's role in the appropriations process involves the submission of an annual budget to Congress, which "recommends spending levels for various programs and agencies of the federal government." *Id*. at 2. This recommendation "initiates the annual budget cycle." *Id*. After the initial recommendation, the remainder of the process is in the

hands of Congress, until the final appropriations bill is sent to the President to be signed or vetoed. *See generally, Id.*

During the congressional appropriations process, "the House and Senate appropriations subcommittees hold hearings on the segments of the budget under their jurisdiction…focus[ing] on the details of the agencies' justifications." *Id.* at 5. The TSA seeks to withhold portions of a presentation made to Congress during a House appropriations hearing that specifically concerned the funding of the TSA's ATR program. Exhibit 1 to Defendant's Motion for Summary Judgment (Dkt. No. 13) at ¶36 ("Sotoudeh Decl.").

Once information is submitted to Congress for review on matters of appropriations, the Executive's role in the process is solely advisory – to testify in the appropriations hearings and to provide justification materials for funding requests. *See* CRS Appropriations Report at 3, 5. These consultations between Congress and the executive branch are designed to assist Congress in its Constitutional duty to make funding decisions. Exemption 5 does not permit withholding of records disclosed to a non-agency as "intra-agency" or "inter-agency" memoranda. *Dow Jones v. Dep't of Justice*, 917 F.2d 571, 575 (D.C. Cir. 1990). The TSA argues that withholding the redacted portions of the document "protect[s] against premature disclosure of proposed policies before they have been finally formulated or adopted." Defendant's Reply at 11. The TSA likens budget recommendations to the President to those made to Congress. However, budget recommendations to the President remain within the executive branch – they are much more like the "inter-agency" memos described in Exemption 5 than disclosures to Congress. Disclosures to Congress necessarily reveal agency records to individuals outside the executive branch. Congress is simply not an executive agency, and disclosures to Congress cannot be withheld pursuant to Exemption 5.

      b.      *The TSA has Withheld Agency Records that Do Not Qualify for the Deliberative Process Privilege Because They Are Neither Predecisional or Deliberative*

EPIC seeks disclosure of the "ATR Memoranda," Bates Numbers 000463-000483, including The AIT/ATR Letter of Assessment, Bates Numbers 000463-000476 ("Letter of Assessment"), and a series of memoranda regarding testing results and recommendations, Bates Numbers 000478-000483. *See* Sotoudeh Decl. at ¶¶ 36-37 (Collectively, the "ATR Memoranda").

"Factual information is generally not protected by the deliberative process privilege." *Reliant Energy Power Generation, Inc. v. FERC*, 520 F.Supp. 2d 194, 203 (D.D.C. 2007). EPIC acknowledges that "in some circumstances…the disclosure of even purely factual material may so expose the deliberative process within an agency that it must be exempted by section 552(b)(5)." *Mead Data Central, Inc. v. Dept. of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977). However, these circumstances are limited. *See Trentadue v. Integrity Committee*, 501 F.3d 1215 (10th Cir. 2007). In instances where factual information has been withheld, the cases have primarily involves "a summary of factual material on the public record." *See Montrose Chemical Corp. of CA v. Train*, 491 F.2d 63, 67 (D.C. Cir. 1974) (concerning "whether factual summaries should be exempt from disclosure."); *Mead Data Central*, 566 F.2d at 257 (documents that "provide summaries and discussions among Air Force staff relating to the negotiating positions of the Department and West Publishing Co."); *but cf. Playboy Enterprises, Inc. v. Dept. of Justice*, 677 F.2d 931, 935 (D.C. Cir. 1982) (ordering disclosure of purely factual material in a report, stating "anyone making a report must of necessity select the facts to be mentioned in it; but a report does not become a part of the deliberative process merely because it contains only those facts which the person making the report thinks material.").

8

The facts in the ATR Memoranda that the government seeks to withhold here – namely, "what the staff decided to test for, how it decided to carry out these tests, which results it chose to share, how it chose to present the results, and its analysis of those results" – are much closer to the information the Court ordered to be disclosed in *Playboy Enterprises* than the summaries in *Montrose* and *Mead Data Central*. Defendant's Reply at 14. Like the plaintiff in *Playboy Enterprises*, EPIC "does not wish to probe the process whereby [the defendant] assigned reliability or weight to specific evidence." 677 F.2d at 935. However, the purpose of TSA software testing, the objectives of those tests, and the test results will help the public to better assess the program. The case for the release of this information is bolstered by the fact that the TSA has not published any information on the testing of these machines, so the release of the information in these records would be the sole basis on which the public could make these important determinations. *See Montrose*, 491 F.2d at 71 (holding that certain documents were exempt from disclosure but stating that in cases "where the factual material is not already in the public domain, a different result might be reached.").

Further, by the TSA's own admission, some of this information is not predecisional . The first prong of the test to decide if a document can be withheld under the deliberative process privilege is to determine if the information is "predecisional," or if it is "antecedent to the adoption of an agency policy." *Judicial Watch, Inc. v. Dept. of Army*, 435 F. Supp. 2d 81, 88 (D.D.C. 2006). The TSA states that some of the redactions contain information concerning parameters of the software tests and the objectives of those tests. At some point, this information was pre-decisional, but it does not remain predecisional after the tests have been completed. Defendant's Reply at 14 ("what the staff decided to test for, how it decided to carry out these tests…"); 16 ("TSA's decisions regarding what to test for reveals which factors it thought (at an

early stage) were important in the decision whether to use ATR."). Therefore, at a minimum, the information that constitutes post-decisional matters is not exempt under Exemption 5.

EPIC also seeks disclosure of "Operational Test Plan (OTP) & Operational Testing and Evaluation (OT&E) for AIT/ATR," Bates Numbers 000484-000617 ("The Operational Documents").[2] The TSA argues, "details about testing are still predecisional to the ultimate decision whether ATR should be rolled out for use in airports nationwide," because the preliminary views about what facts and criteria might be relevant to a later decision. Defendant's Reply at 15-16. The TSA's argument would greatly expand the scope of Exemption 5 by holding that information relating to any final decisions that may later have some impact on a later decision may be withheld. Taking this to its logical conclusion, it is hard to imagine what documents would still be releasable under the FOIA, because it is logical that all information may one day be relevant to a subsequent decision. Further, the TSA cites a subsequent decision, whether to install ATR software in airports nationwide, which has already been publicly announced, and therefore is not pre-decisional. *See* TSA, *TSA Takes Further Steps to Enhance Passenger Privacy on Millimeter Wave Machines Nationwide*, TSA.gov, http://blog.tsa.gov/2011/07/tsa-takes-further-steps-to-enhance.html (July 20, 2011).

---

[2] The TSA notes that EPIC has not demonstrated that the proposals in this document have been adopted, and that "the government does not have the burden of establishing that a document was not adopted by the agency." *North Dartmouth Properties, Inc. v. HUD*, 984 F. Supp. 65, 70 (D. Mass. 1997). However, under the FOIA "the agency bears the burden of demonstrating that the documents it has withheld fall within one of the enumerated exemptions." *Reliant Energy Power Generation*, 530 F. Supp. 2d at 200; *see also* John Doe Agency v. John Doe Corp, 493 U.S. 146, 475 (1989) ("the burden is on the agency to sustain its action") (quoting 5 U.S.C. § 552(a)(4)(B)). In FOIA matters, the Agency is in a unique position to have information that is not accessible to the FOIA requester. However, despite a lengthy factual affidavit, the Agency has not demonstrated that the Operational Documents fall within the scope of Exemption 5.

   c.   *Even if the Court Finds that Portions of the Documents Are Protected Under the Deliberative Process Privilege, the Unprotected Factual Portions Are Segregable and Should be Released*

The TSA has not demonstrated that the documents contain no reasonably segregable factual information. The TSA argues that the Sotoudeh Declaration is sufficient to prove this point, in that it states that the "TSA produced the segregable portion of each of the records…and no further segretation was possible. Defendant's Reply at 17; Sotoudeh Decl. at ¶ 55. However, the TSA subsequently released portions of the records to EPIC. *See* Supplemental Sotoudeh Decl. at ¶ 8 ("The redacted information contained in the last bullet on bates page 000416 derives from TSA's existing contract with L3 Communications and already is in Plaintiff's possession. As such, TSA has decided it will make a discretionary release of this information."); ¶ 11 ("Certain information on the PowerPoint that was redacted under exemption 5 has since been publicly disclosed. Therefore, TSA will exercise its discretion to release this information to Plaintiff…"). The subsequent release is a tacit acknowledgement that the TSA had not, at the time of the original Sotoudeh Declaration, disclosed all segregable material.

**III.   EPIC is Eligible for and Entitled to Recover its Costs and Fees.**

EPIC has correctly asked the Court to grant it fees and costs in this matter because EPIC is both eligible for and entitled to fees.

The agency has not contested EPIC's eligibility for fees. In order to be eligible for attorney's fees in a FOIA matter, a plaintiff must have "substantially prevailed" in its lawsuit against an Agency. 5 U.S.C. § 552(a)(4)(E). "A complainant has substantially prevailed if the complainant has obtained relief through ... a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.*  By forcing the disclosure of 645 pages of documents, in full or in part, EPIC has clearly demonstrated that it has prevailed against the TSA in the immediate lawsuit.

However, the TSA contests EPIC's entitlement. Courts consider four factors in determining entitlement: 1) "the benefit to the public, if any, deriving from the case;" 2) "the commercial benefit of the complainant;" 3) "the nature of [the complainant's] interest in the records sought"; and 4) "whether the government's withholding of the records sought had a reasonable basis in law." H. Comm. on Gov't Operations and S. Comm. on the Judiciary, 94th Cong., *Freedom of Information Act and Amendments of 1974 (Pub. L. No. 93-502) Source Book,* 189-90 (J. Comm. Print 1975). TSA contends that EPIC is unable to demonstrate, prior to the final judgment, that two of these factors, public benefit and reasonableness of withholdings, were fulfilled. However, EPIC has already demonstrated how all four of the factors have been unequivocally met.

TSA attempts to convince the Court that EPIC's argument on this point is improper because the parties may be able to resolve the matter without Court intervention. The agency cites not case law to support the proposition that the Court cannot, or should not, consider the motion for fees and costs at this time.

The defendant's attempt to apply Local Rule 7(m) here is inappropriate because EPIC's Motion for Fees is a dispositive motion, and therefore exempt from Local Rule 7(m). The critical distinction is illustrated by three cases – *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207 (D.C. Cir. 1997), *Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 698 F. Supp. 2d 168, 173 (D.D.C. 2010), and *Alberts v. HCA Inc.*, 405 B.R. 498 (D.D.C. 2009).

In *Burkhart*, the D.C. Circuit held that "[t]he term "dispositive motion" includes a motion that, if granted, would result either in the determination of a particular claim on the merits or elimination of such a claim from the case." *Burkhart*, 112 F.3d at 1215. EPIC's Motion for Fees

is clearly dispositive under *Burkhart*. If granted, EPIC's Motion for Fees will result in the determination of a particular claim on the merits – EPIC's claim for attorneys' fees. EPIC's claim for attorneys' fees is set forth in EPIC's Complaint in this suit. Complaint at 11, Dkt. No. 1. DHS recognizes that EPIC properly pleaded its claim for fees, opposing the merits of EPIC's claim in its Answer. Answer at 11, Dkt. No. 4. EPIC moved for summary judgment concerning its eligibility and entitlement to attorneys' fees in its motion for summary judgment. EPIC Mot. for Summ. Judg. at 1, 20-24, Dkt. No. 14. These actions make clear that EPIC's Motion for fees will "result either in the determination of a particular claim on the merits or elimination of such a claim from the case." *Burkhart*, 112 F.3d at 1215.

 *Tripoli* applied *Burkhart* to a motion for attorneys' fees brought pursuant to a federal fee-shifting statute – the Equal Access to Justice Act ("EAJA").  *Tripoli* held that such motions are "dispositive motion[s], thereby rendering Rule 7(m) inapplicable" because adjudication of the fee petition would "result either in the determination of a particular claim on the merits or elimination of such a claim from the case." *Tripoli*, 698 F. Supp. 2d at 173.

 EPIC's Motion for Fees is essentially identical to the dispositive motion for attorneys' fees at issue in *Tripoli*. Like the motion at issue in *Tripoli*, EPIC's Motion for Fees arises from a fee-shifting statute – the FOIA. Like the motion at issue in *Tripoli*, EPIC's fee claim was pleaded in the complaint initiating the case. Like the motion at issue in *Tripoli*, EPIC incurred attorneys' fees prior to filing the lawsuit and sought to recover those fees in the suit.

 EPIC's Motion for Fees differs from the motion in *Tripoli* in only one respect. In *Tripoli*, fee recovery was the sole claim before the court. *Tripoli*, 698 F. Supp. 2d at 171. In the present case, EPIC's fee claim is one of several claims pleaded in the Complaint and detailed in the

Motion for Summary Judgment. However, this distinction is irrelevant for the purpose of determining the dispositive character of EPIC's Motion for Fees. "A motion need not obviate the need for a trial to be dispositive." *Burkhart*, 112 F.3d at 1215. "For example, a court may grant a partial summary judgment as to fewer than all the claims in a case. A grant of partial summary judgment often leaves necessary a trial to resolve the remaining claims." *Id*. However, partial motions for summary judgment are nonetheless dispositive motions. *E.g., Nixon v. Freeman,* 670 F.2d 346, 364 (D.C. Cir. 1982). There is no meaningful distinction in this context between fee-shifting statutes, such as the EAJA, and statutes that include fee-shifting provisions, such as the FOIA.

DHS cites *Alberts* in support of the agency's argument that EPIC's Motion for Fees is nondispositive. DHS Opp. at 7. But EPIC's motion is easily distinguished from the nondispositive motion for sanctions at issue in *Alberts*. *Alberts* involved a motion for attorneys' fees as sanctions for the abusive issuance of subpoenas during a bankruptcy litigation. *Alberts*, 405 B.R. at 499. Unlike the motion at issue in *Alberts*, EPIC's Motion for Fees arises from a fee-shifting statute – not from a motion for sanctions. Unlike the motion at issue in *Alberts*, EPIC's fee claim was pleaded in the complaint initiating the matter – the fees did not arise from a tangential discovery dispute. Unlike the motion at issue in *Alberts*, EPIC incurred attorneys' fees prior to filing the lawsuit and sought to recover those fees in the suit – the fees did not arise from conduct during the litigation.

Moreover, *Tripoli* distinguished *Alberts* on precisely these grounds. *Tripoli* observed that *Alberts*:

> concerned a motion for discovery sanctions in the form of attorney's fees. The defendant's reliance on this case ignores the distinction between motions for attorney's fees in the discovery sanction context and a motion to recover attorney's fees under a fee-shifting statute such as the EAJA. Motions seeking attorney's fees

> for discovery sanctions are nondispositive because they are tangential to the merits of the litigation and would not result in the determination of a particular claim in the case. Under the EAJA, however, the plea for attorney's fees is itself the underlying claim and it therefore satisfies the *Burkhart* standard because its resolution will result in "the determination of a particular claim on the merits or elimination of such claim from the case."

*Tripoli*, 698 F. Supp. 2d at 173 (internal citations omitted).

*Tripoli*'s application of *Burkhart* hinges on the critical difference between a motion for fees and a motion for sanctions. *Id. citing United States ex rel. Tenn. Valley Marble Holding Co. v. Grunley Constr.*, 433 F.Supp.2d 104, 112 (D.D.C.2006) ("a motion for sanctions is a nondispositive motion and is therefore subject to Local Rule 7(m).").

Motions for fees arising from fee-shifting statutes, like EPIC's motion in the present case, are dispositive motions because they require the court to determine a party's claims on the merits. Conversely, motions for fees as sanctions, like the motion at issue in *Alberts*, ask the court to resolve claims that arise from the prosecution of the lawsuit, not the parties' underlying claims on the merits. Therefore, Rule 7(m) is not applicable here and there was no duty to confer.

Further, a finding by the Court as to EPIC's eligibility for fees will not pre-empt the parties from resolving the dispute as to the amount of attorney's fees between one another without resorting to Court involvement. On the contrary, a decision by the Court will serve judicial economy by narrowing the issues and guiding these discussions for the parties toward a faster resolution.

Accordingly, the Court should order that EPIC is eligible and entitled to fees and costs in this proceeding.

## CONCLUSION

For the foregoing reasons and the reasons stated in EPIC's Motion for Summary Judgment (Dkt. No. 14), the Court should grant summary judgment EPIC's favor.

Respectfully submitted,

_____*/s/ John Verdi*_____

MARC ROTENBERG
JOHN VERDI
Electronic Privacy Information Center
1718 Connecticut Ave., NW
Suite 200
Washington, D.C. 20009
(202) 483-1140
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 15th day of November 2011, I served the foregoing PLAINTIFF'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT, including all exhibits and attachments, by electronic case filing upon:

JOSEPH MEAD
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC 20530
Tel.    (202) 305-8546
Fax    (202) 305-8517
joseph.w.mead@usdoj.gov

        _____/s/ John Verdi_____
        John Verdi
        *Counsel for Plaintiff*