**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
)
ELECTRONIC PRIVACY INFORMATION CENTER, )
)
            Plaintiff, )
)
      v. )  Case No. 11-290 (RCL)
)
TRANSPORTATION SECURITY )
ADMINISTRATION, )
)
           Defendant. )
_____)

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

INTRODUCTION .......................................................................................................... 1

BACKGROUND ........................................................................................................... 3

STANDARD OF REVIEW ............................................................................................ 5

ARGUMENT ................................................................................................................. 7

   I.    THE $28,382.00 IN ATTORNEYS' FEES THAT EPIC SEEKS IS UNREASONABLE AND SHOULD BE DENIED. .......................................................................................... 7

      a.   EPIC Is Entitled Only to Fees For Issues on Which It Prevailed. .................... 7

      b.   Fees and Expenses Incurred Before August 2011. ......................................... 9

      c.   The Release of Documents in August 2011 Does Not Make EPIC Eligible or Entitled to Fees Incurred After Release ...................................................................... 10

      d.   Even if EPIC had argued that its minimal success at summary judgment made it eligible for fees, EPIC should not receive compensation for time spent litigating losing claims ...... 13

      e.   EPIC Charged Improper Hourly Rates Under the Laffey Matrix for Individuals Who Were Not Members of the District of Columbia Bar. ......................................... 17

      f.   EPIC Seeks Fees for Time on Unallowable Tasks. ..................................... 19

      g.   EPIC Fails to Exercise Billing Judgment And Seeks Fees For Overstaffed "Conferences" Containing Eight Attorneys. ......................................................... 20

   II.   ANY AWARD SHOULD BE SEVERELY DISCOUNTED BASED ON NUMEROUS ERRORS AND INSTANCES OF DOUBLE-BILLING ....................................................... 23

   III.   ANY "FEES ON FEES" AWARDED MUST BE SEVERELY REDUCED .............. 27

      a.   "Fees On Fees" Should Be Reduced in Accordance with EPIC's Success In Obtaining Fees on the Merits. ..................................................................................... 29

      b.   Because Defendant Served a Rule 68 Offer of Judgment on April 12, 2013, Defendant Requests that the Court Divide any Fee Award into Fees Incurred Until and After that Date. .................................................................................................. 30

   IV.   PROPOSED CALCULATION OF FEE AND COST AWARDS. .............................. 31

   Time Before August 2011. ........................................................................................ 32

   Time Between August 2011 and March 2013. ........................................................... 32

   Time Incurred Between March 2013 and Service of the Offer of Judgment. ........... 33

   Time Incurred After Service of Offer of Judgment. .................................................. 33

CONCLUSION ............................................................................................................ 35

## <u>INTRODUCTION</u>

The Plaintiff seeks a windfall.  Despite losing the vast majority of its challenge to the Transportation Security Administration's (TSA) withholdings—prevailing on only portions of 8 pages out of approximately 3,000 pages challenged—Plaintiff Electronic Privacy Information Center (EPIC) asks the Court to order the taxpayers to subsidize EPIC's losing arguments and foot the bill for 100% of its time.  EPIC then inflates the amount sought by asking for clearly unallowable costs (such as time spent responding to the Court's order to show cause after EPIC failed to properly appear at a status conference), and by seeking attorney rates for time spent by individuals who do not appear to have been licensed to practice law.  EPIC further overreaches by charging dozens of identical entries to Defendant in this case <u>and</u> the defendant in Case Number 10-1992—entries that suggest that EPIC is seeking to double its recovery of attorneys' fees <u>for the same time</u>.  And EPIC's evidentiary support is riddled with other errors that cast serious doubt on the accuracy of EPIC's timekeeping.  Finally, EPIC attempts to dramatically increase its overall recovery by seeking excessive "fees on fees," despite rejecting settlement offers and a Rule 68 Offer of Judgment well above what EPIC could hope to obtain for fees on the merits.

Significantly, EPIC's motion claims eligibility for fees exclusively based on TSA's release of records in June and August 2011.  But EPIC's own records indicate that it had incurred only $2,539.50 in fees to that point (a number that itself is vastly inflated due to improperly calculated rates and inclusion of clearly unallowable time).  For purposes of this motion, TSA does not contest that, under FOIA, EPIC is eligible for its reasonable and allowable time in litigation to obtain the June and August 2011 releases under the catalyst theory.  What TSA <u>does</u>

dispute is EPIC's premise that these releases of documents makes EPIC eligible for any and all expenses that follow in the litigation, even those incurred litigating losing claims.

Even if EPIC had made an argument—and it did not—that it was eligible and entitled to for fees for its time spent on summary judgment based on the Court's March 2013 Opinion and Order, its request for 100% of this time is foreclosed by well-established precedent from this Circuit and the Supreme Court.  During summary judgment, EPIC challenged withholdings on thousands of pages of TSA's records.  The Court disagreed with EPIC on most of its arguments. However, the Court agreed with EPIC on a single argument under Exemption 5, and ordered TSA to release a few lines from a PowerPoint that had been shared with Congress.  Despite prevailing on only a fraction of the arguments it made—and a much smaller fraction of the withholdings it challenged—EPIC's motion seeks compensation for 100% of its time on summary judgment (which, according to EPIC's records and EPIC's incorrect hourly rate, amounts to $16,304).  EPIC's request fails to take into account that most of this time was spent litigating claims, and EPIC made no attempt to exclude any hours spent on its unsuccessful claims, which has caused its fee request to be vastly inflated.

Beyond EPIC's unreasonable claim for fees spent on losing arguments, EPIC's billing records contain cases of duplicative, excessive, or otherwise unnecessary billing time. Significantly, EPIC has submitted a timesheet containing more than 50 identical entries for what appears to be the same time in both this case as Case Number 10-1992, which would amount to a double recovery from the taxpayers.  Moreover, EPIC has also improperly sought attorney rates for EPIC staff members who were not yet admitted to the bar at the time they performed the work in question.  EPIC's submissions contain a number of other errors, such an affidavit that directly contradicts a prior declaration that had been signed by the same attorney.  Based on

these errors, the Court should deny EPIC's request entirely, or, at the very least, reduce any award by 50%.

Finally, EPIC's contention that it spent nearly as much on "fees on fees" as it did on the merits is also unreasonable. Any "fees on fees" to which EPIC may be entitled must be reduced to the extent that EPIC does not succeed in its motion for fees on the merits. Additionally, EPIC must be denied any expenses that were incurred following a Rule 68 Offer of Judgment—including all of the time spent litigating this fee motion—if the Court awards EPIC less on fees incurred before the date of Offer than the amount of the Offer. Awarding "fees on fees" otherwise would reward a recalcitrant plaintiff and provide a strong incentive for FOIA plaintiffs to litigate fees rather than settle.

Given this general unreasonableness of EPIC's inflated demand, the Court should deny the request in its entirety. But even if the Court chooses to award fees, EPIC is only entitled to costs, including fees, incurred in connection with TSA's initial, pre-summary-judgment releases of non-exempt documents. Thus, the maximum amount that EPIC is eligible for is its allowable fees and costs incurred to obtain TSA's release of information in August 2011, as calculated under the Laffey Matrix – $1,028. Even if the Court should determine that EPIC is entitled to attorneys' fees associated with summary judgment expenses based on an argument that EPIC never makes, fees for summary judgment should be reduced to at most $1,283, to correspond to EPIC's minimal success in this matter.

## **BACKGROUND**

This case involves a FOIA request for records concerning the development of the Automated Target Recognition (ATR) software upgrade for advanced imaging technology ("AIT") scanners employed by TSA. EPIC filed two FOIA requests seeking specific categories

of records relating to ATR.  Although TSA began to search immediately, Sotoudeh Decl. ¶¶ 9,

20 (ECF No. 13-1), it did not release documents until after EPIC had filed this lawsuit.

On July 29, 2011, TSA made an initial release of several hundred pages of records, and

on August 22, 2011, TSA made a supplemental release of 166 pages.[1]  TSA withheld

information on many of the pages based on Exemptions 3, 4, 5, 6, and 49 U.S.C. § 114(r).  TSA

also withheld approximately 2,865 pages in their entirety under Exemption 3 and 49 U.S.C.

§114(r).

TSA moved for summary judgment on the adequacy of the search and the propriety of

the withholdings.  See Def.'s MSJ (ECF No. 13).  EPIC cross-moved for summary judgment,

and did not expressly challenge – and therefore conceded – the vast majority of TSA's

withholdings, as well as the adequacy of the agency's search.  However, it argued that TSA may

not withhold Sensitive Security Information ("SSI") under Exemption 3; challenged the agency's

assertion of Exemption 5's deliberative process privilege over several documents; and

challenged whether TSA had adequately segregated the documents.  Pl.'s MSJ (ECF No. 14).

EPIC also argued that the Court should grant summary judgment in favor of EPIC on its

eligibility and entitlement to attorneys' fees, based on the "catalyst theory."  See id. at 22-27.

On March 7, 2013, the Court granted in part and denied in part both parties' motion for

summary judgment.  See Mem. Op. (ECF No. 23).  The Court granted TSA summary judgment

as to all issues conceded or not challenged by EPIC, including the scope of TSA's search, all

Exemption 4 and Exemption 6 withholdings, and certain withholdings pursuant to Exemption 5.

---

[1] On September 8, 2011, TSA sua sponte re-released 18 pages when, upon further examination and consultation, TSA determined that certain excerpts previously withheld could be released. Moreover, TSA re-released portions of the PowerPoint in November 2011, because some of the information previously withheld as predecisional and deliberative had subsequently been made public.  EPIC's motion does not mention either of these releases, nor does it suggest that either release makes EPIC eligible for or entitled to fees.

See id. at 5, 9 n.7.  The Court also granted TSA summary judgment on documents withheld

pursuant Exemption 3, finding that the statute authorizing the withholding of Sensitive Security

Information ("SSI") is an Exemption 3 statute and that review of SSI designations may be sought

only in a court of appeals.  Id. at 5-8.  The Court also found that TSA properly invoked

Exemption 5 as to 2 of the 3 challenged Exemption 5 withholdings.  Id. at 13-20.  However, the

Court found that TSA could not invoke Exemption 5 to withhold information contained in a

PowerPoint that was shared with Congress because it was not "inter-agency or intra-agency," 5

U.S.C. § 552(b)(5).  Id. at 9-13.  As a result of this order, TSA released a few lines of new

information from 8 pages of the PowerPoint.

     The Court also directed the parties to meet and confer in an attempt to negotiate

attorneys' fees.  Mem. Op. at 22.  On April 12, 2013, TSA served an Offer of Judgment pursuant

to Fed. R. Civ. P. 68 regarding EPIC's fees and costs incurred to that date.  Ex. E.  EPIC

declined the offer, and filed its motion for attorneys' fees and costs on May 1, 2013, seeking a

total of $28,832.  See Pl.'s Mot. for Attys' Fees and Costs ("Pl.'s Mot.") (ECF No. 24).  Exhibit

A to this Opposition contains a breakdown of EPIC's requested fees.

### **STANDARD OF REVIEW**

     A plaintiff must satisfy a two-step inquiry to receive fees and costs in a FOIA action.

First, the plaintiff must show that it is eligible for an award.  To meet this standard, the plaintiff

must show that it has "substantially prevailed," which means it obtained relief through either (1)

"a judicial order, or an enforceable written agreement or consent decree;" or (2) "a voluntary or

unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5

U.S.C. § 552(a)(4)(E)(ii).  The second of these two options "essentially codifies the 'catalyst

theory'" of recovery, under which a plaintiff is eligible for fees if the "litigation substantially

caused the requested records to be released." N.Y.C. Apparel F.Z.E. v. U.S. Customs& Border Prot. Bureau, 563 F. Supp. 2d 217, 221 (D.D.C.2008) (internal citation omitted). To recover attorneys' fees under this theory, "a litigant must . . . show[] that the lawsuit was reasonably necessary and the litigation substantially caused the requested records to be released." Burka v. HHS, 142 F.3d 1286, 1288 (D.C. Cir. 1998). Although it is a "'salient factor' in the analysis,' "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." Weisberg v. DOJ, 745 F.2d 1476, 1496 (D.C. Cir. 1984); Pub. Law Educ. Inst. V. DOJ, 744 F.2d 181, 184 n.5 (D.C. Cir. 1984) ("While the temporal relation between an FOIA action and the release of documents may be taken into account in determining the existence vel non of a causal nexus, timing, in itself or in conjunction with any other particular factor, does not establish causation as a matter of law.").

Eligibility does not end the inquiry, however, as FOIA plaintiffs seeking fees must show that they are not only eligible for fees, but entitled to them. Church of Scientology of Cal. v. Harris, 653 F.2d 584, 590 (D.C. Cir. 1981). The entitlement inquiry examines (1) the public benefit derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding had a reasonable basis in law. See Davy v. CIA, 550 F. 3d 1155, 1159 (D.C. Cir. 2008). Ultimately, the decision on whether a plaintiff is entitled to attorneys' fees "rests in the sound discretion of the district court." Church of Scientology, 653 F.2d at 590.

If the Court finds that EPIC is eligible for, and entitled to, attorneys' fees, it must determine a reasonable amount of fees. An appropriate starting point is typically the lodestar, a reasonable number of hours multiplied by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1982). Fees for unsuccessful claims, however, are not awarded. See Nat'l

Sec. Archive v. U.S. Dep't of Defense, 530 F. Supp. 2d 198, 204-205 (D.D.C. 2008).  Moreover,

as a decision to award fees is discretionary, a court "may deny in its entirety a request for an

'outrageously unreasonable' amount, lest claimants feel free to make 'unreasonable demands,

knowing that the only unfavorable consequence of such misconduct would be reduction of their

fee to what they should have asked for in the first place.'" Envtl. Defense Fund, Inc. v. Reilly, 1

F.3d 1254, 1258 (D.C. Cir. 1993) (quoting Brown v. Stackler, 612 F.2d 1057, 1059 (7th

Cir.1980)).  If overbilling is less egregious but still unreasonable, the Court "may impose a lesser

sanction, such as awarding a fee below what a 'reasonable' fee would have been in order to

discourage fee petitioners from submitting an excessive request." Id. (citation omitted).

## ARGUMENT

### I.   THE $28,382.00 IN ATTORNEYS' FEES THAT EPIC SEEKS IS UNREASONABLE AND SHOULD BE DENIED.

#### a.  EPIC Is Entitled Only to Fees For Issues on Which It Prevailed.

For the purposes of this motion, TSA does not contest that under the circumstances of

this suit, EPIC is eligible for some fees incurred prior to TSA's production of documents in June

through August 2011 under FOIA's "catalyst theory."   What TSA does contest is EPIC's

premise that the agency's production of documents in August 2011 entitles EPIC to be paid for

100% of fees incurred thereafter, even on losing claims.

EPIC's position that United States taxpayers should subsidize EPIC's losing arguments is

foreclosed by well-established precedent.   "[A] prevailing FOIA plaintiff is not entitled to an

attorneys' fees award for 'nonproductive time or for time expended on issues on which plaintiff

ultimately did not prevail.'" Weisberg, 745 F.2d at 1499 (reversing fee award for failure to

reduce fees attributable to unsuccessful motions) (quoting Nat'l Ass'n of Concerned Veterans v.

Sec. of Def., 675 F.2d 1319, 1323 (D.C. Cir. 1982)) (emphasis added); Summers v. U.S. Dep't.

7

of Justice, 477 F. Supp. 2d 56, 64 (D.D.C. 2007) ("Nor should fees be granted for hours spent on unsuccessful claims that are distinct in all respects from successful claims"); see also  Farrar v. Hobby, 574 U.S. 103, 114 (1992) ("[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained.").

The rationale for this well-established principle is the Supreme Court's holding in Hensley v. Eckerhart, 461 U.S. 424 (1982), that if "counsel's work on one claim [is] unrelated to his work on another claim," then "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved'" that entitles a party to attorneys' fees. Hensley. 461 U.S. at 435; see also Judicial Watch, Inc. v. United States DOC, 2007 U.S. App. LEXIS 2337, at *1-4 (D.C. Cir. Jan. 31, 2007) (per curiam) ("[W]here a losing claim is severable from a winning one, an award of fees is properly reduced by the percentage of counsel's time spent on the losing claim.").  An unrelated claim is a "claim[] for relief . . . based on different facts and legal theories." Hensley, 461 U.S. at 434.

The D.C. Circuit applies this "relatedness" analysis not merely to claims, but to the discrete legal issues raised by a fee petitioner.  See Kennecott Corp. v. EPA, 804 F.2d 763, 765 (D.C. Cir. 1986); Sierra Club v. EPA, 769 F.2d 796, 801-02 (D.C. Cir. 1985); see also Anthony v. Sullivan, 982 F.2d 586, 589 (D.C. Cir. 1993) ("Hensley says loud and clear that when a party has received no favorable results in a particular aspect of a litigation, that party may receive no fee for work on the part of the case.").  Thus, "[t]o those issues upon which [EPIC] has prevailed, [it] is entitled to fees.  To those issues upon which [it] did not prevail, [it] is not so entitled." Hawaii Longline Ass'n v. Natl Marine Fisheries Service, No. 01-765, 2004 WL 2239483, at *6 (D.D.C. Sept. 27, 2004) (citing Hensley, 461 U.S. at 435).

Given that EPIC premises its eligibility and entitlement on the June and August 2011 release of documents, it is appropriate to divide its request for fees on the merits (i.e. not fees on fees) into two distinct phases: those fees that were incurred before August 2011 to catalyze the production of documents, and those fees incurred in connection with the summary judgment briefing.  Accord Allen v. Department of Defense, 713 F. Supp. 7, 12 (D.D.C. 1989) ("[A] number of … courts have divided the FOIA proceedings into two discrete phases: an initial phase where the plaintiff establishes its eligibility to receive all non-exempt documents followed by a second phase involving piecemeal disputes over specific exemptions claimed by defendant.").

**b.  Fees and Expenses Incurred Before August 2011**.

TSA does not dispute that EPIC would be entitled to fees for reasonable time incurred in the litigation before the documents were released in June through August 2011.  EPIC has sought $2,539.50 in attorneys' fees for time spent prior to August 2011.  However, as discussed below, approximately half of the fees that EPIC seeks for this period were spent on clearly unallowable tasks, and all of the remaining time was billed at an incorrect rate.  After correcting for these errors, the maximum that EPIC should receive for this time period is $1,028, plus its $350 filing fee.[2]

---

[2] Ms. Stepanovich also claims that she spent 10.4 hours reviewing documents.  This review time was not incurred in order to catalyze the release of document, but arguably informed EPIC's decision to pursue summary judgment briefing.  Defendant assumes, arguendo, that EPIC may claim time spent reviewing documents in connection with summary judgment.  Compare CREW v. DOJ, 825 F. Supp.2d 226, 231 (D.D.C. 2011) (Boasberg, J.) (holding, in case where plaintiff received no further relief after documents were produced, that "the cost of reviewing documents produced in response to a FOIA  request is simply the price of making such a request," and that "the time Plaintiff expended reviewing the documents . . . [was] a post-relief activity, separate from litigation.") with Electronic Privacy Information Center v. U.S. Dept. of Homeland Sec., 811 F. Supp. 2d 216, 239-40 (D.D.C. 2011) (Urbina, J.) (finding that fees could be awarded for time spent "reviewing documents during the course of active litigation" even though plaintiff received no further relief after reviewing documents).  However, as explained below, EPIC

### c.   The Release of Documents in August 2011 Does Not Make EPIC Eligible or Entitled to Fees Incurred After Release

Between August 2011 and March 2013, EPIC claims that it incurred $16,304.50 in attorneys' fees in tasks related to summary judgment briefing.  It premises its eligibility for these fees <u>solely</u> on the <u>pre</u>-Summary Judgment release of documents in June through August, 2011. <u>See</u> Pl.'s Mot. at 7-8.

EPIC's position is contrary to law, as a party seeking attorneys' fees under FOIA "must show that the prosecution of the action could reasonably be regarded as necessary to obtain the information . . . <u>and that a causal connection exists between that action and the agency's surrender of the information.</u>" <u>Weisberg</u>, 745 F.2d at 1496 (emphasis added).  There is no plausible basis to argue that Plaintiff's activities in November 2011 caused TSA to release documents three months prior.  For this reason, courts that have considered this issue subsequent to the enactment of the 2007 FOIA amendments that reinstated the "catalyst theory" in FOIA cases, <u>see generally</u> Pub. L. No. 110-175, 121 Stat. 2524 (2007), § 4(a), have found that FOIA plaintiffs, notwithstanding initial eligibility under the catalyst theory, cannot collect fees for summary judgment motions that are wholly or largely unsuccessful.  <u>See</u> <u>Judicial Watch, Inc. v. U.S. Dep't of Justice</u>, 878 F. Supp. 2d 225 (D.D.C. 2012) (Walton, J.) (in FOIA case where plaintiff was eligible for fees under catalyst theory, denying plaintiff any fees for time spent preparing "preparing [plaintiff's] <u>unsuccessful</u> cross-motion for summary judgment, and for reviewing the DOJ's largely <u>successful</u> motion for summary judgment") (emphasis in original); <u>Electronic Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.</u>, 811 F. Supp. 2d 216, 239 (D.D.C. 2011) (Urbina, J.) (in FOIA case where plaintiff was eligible for fees under catalyst theory, denying fees "related to the summary judgment litigation" "[b]ecause the plaintiff's unsuccessful

should not be paid for this time because it has not shown its entitlement to its summary judgment fees.

motion for summary judgment can be reasonably separated from the portion of the litigation that catalyzed the release of responsive records, and because the plaintiff's time spent on that motion was unproductive").[3]

Thus, the "catalyst theory" is not a "poisonous tree" that continues to bear fruit in the form of attorneys' fees assessed against federal taxpayers for the duration of litigation.  The fallacy in EPIC's position is plain when its potential applications are considered.  Under EPIC's theory, if the filing of a Complaint catalyzes an agency's production of documents, this would render the agency liable for any and all attorneys' fees incurred by the plaintiff – regardless of whether the plaintiff <u>ever</u> succeeds on the merits in the litigation.  Indeed, under EPIC's theory of attorneys' fee liability, if EPIC's recently-filed appeal of the Court's summary judgment ruling is ultimately denied in its entirety by the D.C. Circuit, there would be no reason why EPIC could not seek fees for its appeal, citing DHS's original 2010-2011 release of documents.  This cannot be, and is not, the law.  The effect of such a principle would be to compensate a plaintiff for work on unsuccessful claims, which is impermissible.  <u>Accord</u> <u>Nat'l Sec. Archive v. DOD</u>, 530 F. Supp. 2d 198, 205 (D.D.C. 2008) ("Awarding NSA its entire fee, and thus compensating it at least in part for time spent on a losing claim, would be an abuse of discretion under <u>Hensley</u>.").   Rather, EPIC may receive fees associated with its summary judgment expense only to the extent that it can show that (a) it prevailed at summary judgment, and (b) it its victory at summary judgment entitles it to fees.  Short of such a showing, EPIC is limited to the expenses it

---

[3] In <u>Judicial Watch v. U.S. Dep't of Commerce</u>, 470 F.3d 363, 369 (D.C. Cir. 2006), the D.C. Circuit largely affirmed this Court's award of attorney's fees for time incurred after the release of documents when there was Court-ordered relief (such as discovery into allegedly destroyed records) and a judicial finding that the agency had acted in bad faith.  <u>See Judicial Watch v. Dep't of Commerce</u>, 384 F. Supp. 2d 163, 169 (D.D.C. 2005).  Notably, the Court declined to award time spent on unsuccessful summary judgment briefing, noting that "[i]n FOIA cases, even a prevailing plaintiff is not generally entitled to fees and costs spent in unsuccessfully opposing government withholdings." <u>Id</u>. at 171 (collecting cases).

incurred to obtain the documents, and nothing more.  See  Judicial Watch, Inc. v. U.S. Dep't of Justice, 878 F. Supp. 2d at 240 (limiting FOIA Plaintiff's fees to "the hours it reasonably expended . . . on drafting and filing the complaint and effecting service of process on the DOJ" when remainder of Plaintiff's fees were associated with unsuccessful summary judgment motions); see also Ajluni v. FBI, 947 F. Supp. 599, 611 (N.D.N.Y. 1996) (limiting plaintiff's award to "fees incurred up to, and including" the point at which "the last of the . . . documents were released" in a case where the defendant agency was granted summary judgment on its use of exemptions).  A holding that a Defendant's release of records early in litigation allowed recovery of any and all expenses incurred thereafter—even for losing claims—would provide a strong incentive for FOIA plaintiffs to litigate meritless arguments, and would unfairly punish the agency and create a windfall for the plaintiff.  See Steenland v. CIA, 555 F. Supp. 907, 911 (W.D.N.Y. 1983) (finding that work performed after records were released, where defendant's asserted exemptions were subsequently upheld, "would assess a penalty against defendants which is clearly unwarranted"); see also, e.g., Davy v. CIA, 550 F.3d 1155, 1158 (D.C. Cir. 2008) (quotation omitted) ("[T]he provision for attorney's fees 'was not enacted to provide a reward for any litigant who successfully forces the government to disclose information it wished to withhold.'"); Mobley v. Department of Homeland Sec., --- F. Supp. 2d ----, 2012 WL 6103000, at *6 (D.D.C. 2012) ("[V]oluntary compliance very early in a FOIA litigation, like the government's compliance here, should be encouraged rather than punished.").[4]

---

[4] The unreasonableness of EPIC's professed entitlement to fees for the entire litigation notwithstanding its minimal success at summary judgment is furthered by the fact that the provision in FOIA authorizing an award of attorneys' fees is a limited waiver of the federal government's sovereign immunity.  See Kennedy v. Andrus, 459 F. Supp. 240, 242 (D.D.C. 1978).  Because "[c]ourts must strictly construe any waiver of sovereign immunity, in terms of its scope, in favor of the sovereign," Webman v. Fed. Bureau of Prisons, 441 F.3d 1022, 1025 (D.C. Cir. 2006) (internal quotation marks and citations omitted), "an express waiver is required before attorneys' fees can be assessed against the federal government." Kennedy, 459 F. Supp.

### d.   Even if EPIC had argued that its minimal success at summary judgment made it eligible for fees, EPIC should not receive compensation for time spent litigating losing claims

EPIC's motion does not argue that its limited success at summary judgment or TSA's subsequent release of a few pages makes it eligible or entitled to fees.  The Court should not consider an argument that has not even been raised by the Plaintiff.  See, e.g., Catawba Cnty., N.C. v. EPA, 571 F.3d 20, 38 (D.C. Cir. 2009) ("[P]etitioners waived two of their statutory arguments by failing to raise them in their opening briefs").

But even if Plaintiff had chosen to present this argument to the Court, it would not entitle EPIC to the full $16,304.50 that it seeks for time spent litigating summary judgment.  First, EPIC has not shown that it is entitled to fees based on the extremely limited relief it obtained at summary judgment.  In particular, EPIC failed to show that TSA's position on summary judgment lacked "a colorable basis in law."  Chesapeake Bay Foundation, Inc. v. USDA, 11 F.3d 211, 216 (D.C. Cir. 1993).  Second, even if Court were to award fees for time spent on summary judgment, it should reduce the amount awarded commensurate with EPIC's limited success.

First, EPIC has not demonstrated an entitlement to fees based on the limited relief it obtained at summary judgment.  See Davy v. CIA, 550 F. 3d 1155, 1159 (D.C. Cir. 2008) (factors for determining entitlement include the public benefit derived and whether the government's withholding had a reasonable basis in law).  EPIC obtained only a negligible amount of information from the Court's summary judgment ruling, and it has provided no

---

at 242; see also N.Y.C. Apparel F.Z.E., 563 F. Supp. 2d at 226-27 (construing the FOIA attorneys' fee provision narrowly because of concerns that a broader construction would impermissibly go beyond the scope of Congress's explicit waiver of sovereign immunity).  Thus, absent some clear congressional intent to make FOIA plaintiffs entitled to attorneys' fees under the catalyst theory for expenses incurred after the party obtains the "catalyzed" relief, it would be improper to presume that Congress so intended, particularly given that such an intention would have been contrary to over two decades of well-established case law on attorneys' fees articulated in Hensley.

evidence showing that a few lines of predecisional information furthers the public interest. See

Pies v. IRS, 668 F.2d 1350, 1353 (D.C. Cir. 1981) ("There is no real public interest in

[predecisonal] documents save perhaps for satisfying public curiosity."); Coastal States Gas

Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980) (noting the harm that results to the

public interest if predecisional information is released); cf. Hersh & Hersh v. HHS, 2008 WL

2725497, at *2 (N.D. Cal. Jul. 10, 2008) ("[T]he court's finding only resulted in the disclosure to

plaintiff of 18 pages of documents. Even though this minuscule amount is not dispositive of the

question whether plaintiff has substantially prevailed, it is a factor that the court may consider

and one that suggests that plaintiff has not substantially prevailed.").

Moreover, TSA's position at summary judgment had a "colorable basis in law."

Chesapeake Bay Foundation, 11 F.3d at 216.  The Court agreed with TSA on the majority of its

arguments.  See generally Memo. Op.; see also Chesapeake Bay Foundation, 11 F.3d at 216 ("If

the Government's position is correct as a matter of law, that will be dispositive.").  Even on the

narrow issue on which the Court disagreed with TSA, TSA had a colorable basis for its

argument.  The case law on Exemption 5's applicability to communications with Congress is not

beyond question, and TSA had a colorable basis to argue that the agency should not be required

to release predecisional information that the agency happened to share with Congress.  See Reply

Br. at 9-13; Compare Ryan v. Dep't of Justice, 617 F.2d 781, 789–90 (D.C. Cir. 1980)

(questionnaire sent to members of Congress qualified for Exemption 5) with Dow Jones & Co.,

Inc. v. Dep't of Justice, 917 F.2d 571, 574–75 (D.C. Cir. 1990) (letter sent to Congress not

eligible for Exemption 5).  Although the Court found that TSA had not met its burden to

withhold the information, this does not show that TSA lacked any colorable basis for the

argument.  See, e.g., Fenster v. Brown, 617 F.2d 740, 744 (D.C. Cir. 1979) ("To satisfy the

'reasonable basis in law' requirement it is not necessary for the court to find that the information

the government chose to withhold was in fact exempt."). EPIC's request for fees for time spent

on summary judgment should therefore be denied. See Summers v. U.S. Dept. of Justice, 477 F.

Supp. 2d 56, 63 (D.D.C. 2007) ("Although these factors must be balanced, failure to satisfy the

fourth element may foreclose a claim for attorney fees." (collecting cases)).

Second, even if the Court determines that EPIC is entitled to some fees for its summary

judgment expenses as a result of the Court's partial grant of summary judgment, such fees must

be substantially reduced. See Hensley, 461 U.S. at 440 ("[W]here the plaintiff achieved only

limited success, the district court should award only that amount of fees that is reasonable in

relation to the results obtained."). EPIC did not prevail on its argument that TSA could not

withhold Sensitive Security Information under Exemption 3 and 49 U.S.C. § 114. Nor did EPIC

prevail on two of its three challenges to TSA's Exemption 5 withholdings. EPIC also did not

prevail on its challenge to TSA's segregability, nor its request that the Court adjudicate

attorneys' fees before the issue was ripe. Indeed, out of the thousands of pages of withholdings

that EPIC challenged, it prevailed on a single document, and obtained the release of only a few

short portions on eight pages. EPIC's arguments were not arguments in the alternative, but

involved different legal theories and different factual predicates. See, e.g., Nat'l Sec. Archive v.

Dep't of Defense, 530 F. Supp. 2d 198, 209 (D.D.C. 2008) (for purposes of determining amount

of attorneys' fees, FOIA plaintiff's argument for fee waiver as a "news organization" was

distinct from claim it was an "educational institution").

EPIC makes no attempt in its fee records to distinguish between those hours attributable

to its (partially) successful Exemption 5 argument and those hours attributable to the remainder

of its claims, which were unsuccessful. See Piper v. Dep't of Justice, 339 F. Supp. 2d 13, 24

(D.D.C. 2004) (holding that plaintiff was not entitled to fees for disputing the government's withholdings under an exemption that the court found to be properly applied); see also Schwarz v. Secretary of HHS, 73 F.3d 895, 906 (9th Cir. 1995) ("[A]n attorney 'should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.'"(quoting Hensley, 461 U.S. at 437)).  Instead, Plaintiff has offered only generic entries—"Draft Motion for Summary Judgment" and "Draft EPIC Reply"—of a type that have been repeatedly found to be insufficient by this Court and the D.C. Circuit.  See, e.g., Parsi v. Daioleslam, --- F. Supp. 2d ----, 2013 WL 1403226, at *2 (D.D.C. 2013) (non-FOIA) ("Kapshandy's billing entries—which consist almost exclusively of descriptions like 'Review and revise motion for sanctions,' 'Draft and revise sanctions motion,' and 'Reply to sanctions motion'—make it hard to tell whether the nearly 40 hours claimed for drafting, reviewing, and revising were reasonably expended." (collecting cases)).  EPIC's failure to keep precise records is an additional ground for reducing its fees for these filings.  See, e.g., Nat'l Sec. Archive, 530 F. Supp.2d at 209 (finding, in FOIA case, "that [plaintiff's] inability to segregate the time spent on the claim it won from the time spent on the claim it lost militates against the award of fees it seeks.").

        Under a circumstance such as this one, where EPIC's records make no indication which hours were spent briefing which arguments, the Court estimate how EPIC divided its time on its dispositive motion.   One appropriate estimate approved by the D.C. Circuit is the number of pages of argument directed at the losing claim as a proxy for allocating attorneys' fees.  See Judicial Watch, Inc. v. United States DOC, 2007 U.S. App. LEXIS 2337, at *3 (citing Turner v. D.C. Bd. of Elections & Ethics, 354 F.3d 890, 894, 899 (D.C. Cir. 2004)).  Here, out of 18 pages of argument in its summary judgment brief, EPIC devoted approximately 6 pages to its Exemption 5 argument, and only 1 page to its argument that the PowerPoint should be released.

See Pl.'s Mem. In Supp. Of Summ. J. (ECF No. 14-2) at 6-24 (total argument section), 14-20

(Exemption 5); 14-15 (PowerPoint).  In its reply, out of 13 pages of argument, EPIC devoted

approximately 6 pages to Exemption 5, and only 3 to the PowerPoint.  See Pl.'s Reply in Supp.

of Summ. J. (ECF No. 18) at 2-15 (argument section), 5-11 (Exemption 5); 6-7, 11 (PowerPoint).

Thus, out of 31 pages of argument, 12 were spent on Exemption 5, and only a total of 4 pages

were spent on the Exemption 5 argument on which it actually prevailed: a mere 12.9%.[5]

Thus, even if the Court were to find EPIC entitled to receive attorneys' fees for its

summary judgment motions, EPIC should receive at most 12.9 % of the total reasonable fees it

expended at summary judgment.  See, e.g., Thompson v. Int'l Ass'n of Machinists & Aerospace

Workers, 664 F. Supp. 578, 583 (D.D.C. 1987) (reducing lodestar fee by 75% where plaintiff

prevailed on only one of four discrimination claims); Noble v. Herrington, 732 F. Supp. 114,

117-18 (D.D.C. 1989) (reducing lodestar fee by 80% to account for plaintiff's extremely limited

overall victory).

### e.  EPIC Charged Improper Hourly Rates Under the Laffey Matrix for Individuals Who Were Not Members of the District of Columbia Bar.

Although it appears that several individuals were or are not members of the District of

Columbia Bar (or, for some, any bar) when the fees were incurred, EPIC seeks to improperly

charge the United States an hourly rate under the Laffey Matrix that applies only to licensed

attorneys.  As this Court has previously instructed EPIC, the hourly rates of individuals who

---

[5] Alternatively, EPIC's summary judgment briefs raised five arguments—(1) Exemption 3 could
not be invoked; (2) the agency improperly withheld the PowerPoint; (3) the AIT/ATR Letter of
Assessment and the ATR Memoranda were not predecisional nor deliberative; (4) the agency
failed to segregate factual portions from withheld documents; (5) the Court should adjudicate
attorney's fees as part of the summary judgment motion—but EPIC prevailed on only one,
giving EPIC a mere 20% success rate.  Another alternative metric the Court could adopt is
overall the number of pages EPIC obtained at summary judgment as a percentage of the number
of pages it challenged.  As EPIC obtained only 8 pages out of approximately 3,000 challenged,
such a metric would entitle it to far less than 1% of its fees incurred at summary judgment.

have not become members of a bar should be reduced to the lower <u>Laffey</u> rate for law clerks or paralegals.  <u>See</u> <u>EPIC v. DHS</u>, 811 F.Supp.2d 216, 238 (D.D.C. 2011) ("[B]ecause the plaintiff does not refute that one of its attorneys, Ms. Ginger McCall, conducted work on this litigation prior to her admittance to the bar, the court applies the "paralegal/clerk" <u>Laffey</u> rate to this time." (citing <u>Blackman v. District of Columbia</u>, 677 F. Supp. 2d 169, 175 (D.D.C.2010)).

EPIC seeks compensation for 0.9 hours of Jeramie Scott's time at the rate applicable to an attorney ($245), even though it appears that he is not a member of any bar.  <u>See</u> Scott Aff. ¶ 5 (ECF No. 28-16).   Mr. Scott's time should instead be billed at the hourly rate applicable to law clerks and paralegals.

Moreover, EPIC seeks to recover for 72 hours spent by Amie Stepanovich between 2010 and 2011.  However, even though EPIC bears the burden of proving each aspect of its fee petition, including the propriety of the rate charged, <u>see, e.g.</u>, <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984) (non-FOIA case), EPIC has failed to put in evidence that she was a member of <u>any</u> bar during the time when she incurred the fees.  <u>See generally</u> Stepanovich Decl. (ECF No. 28-14).  Indeed, a search of public records suggests that Ms. Stepanovich only became a member of the District of Columbia Bar in 2013.  Ex. B.  Although it may be that Ms. Stepanovich became a member of the bar of another jurisdiction prior to 2013—although Plaintiff has supplied no evidence as to when[6]—it is not enough to prove that she was licensed in <u>some</u> other jurisdiction.  Rather, to be compensated at the rate of an attorney, EPIC must show that the individual is permitted to practice law in the jurisdiction in which she practices (i.e., the District of Columbia).  <u>See</u> <u>Dickens v. Friendship-Edison P.C.S.</u>, 724 F. Supp. 2d 113, 119-20 (D.D.C.

---

[6] A search of the records of the New York indicate that she was admitted in 2011, but it remains unknown <u>when</u> in 2011—early, late or middle—she became a member of the bar.  Ex. B.  Thus, the record presented by Plaintiff, it is impossible to know whether the time she spent in 2011 on this case was before or after she became a member of any bar.

2010) (non-FOIA case) ("Though they were admitted to the bars of other states, neither RR nor CB were licensed to practice law in the District of Columbia during the time they worked on these cases. . . . Accordingly, this Court accepts Defendant's suggestion that attorneys RR and CB are reasonably billed at the hourly rate for paralegals."); Baker v. D.C. Public Schools, 815 F. Supp. 2d 102, 116 (D.D.C. 2011) (non-FOIA case) ("[A]ttorneys who are not admitted to the D.C. Bar are not entitled to reimbursement at attorney rates[ . . . ]" (citing Dickens, 724 F. Supp. 2d at 120; Agapito v. District of Columbia, 477 F.Supp.2d 103, 112–13 (D.D.C. 2007)).  Nothing in EPIC's submissions establish that Ms. Stepanovich was a member of the Bar of the District of Columbia or otherwise permitted to practice law here during 2010 and 2011.  For that reason, she should be compensated no more than at the rate of a paralegal, or $135-$140, instead of the $230-240 rate sought by EPIC.  The recalculation of Ms. Stepanovich's rate for 2010 and 2011 reduces EPIC's figure by $8,828.

**f.   EPIC Seeks Fees for Time on Unallowable Tasks**

EPIC's dramatic overreaching is underscored by its request for fees on plainly unallowable time, including time spent on an unsuccessful motion to appear pro hac vice and a response to the Court's order to show cause for failing to properly appear at a status conference.

First, Amie Stepanovich seeks time on June 13, 2011, for drafting and filing a motion for Ginger McCall to appear pro hac vice in the case.  See Ex. A, Line No. 8; see also ECF No. 6. This motion, however, was denied by the Court.  Minute Order of June 13, 2011.  Regardless, "time spent gaining admittance to the bar of this court should not be counted as attorney fees." American Wrecking Corp. v. Secretary of Labor, 364 F.3d 321, 331 (D.C. Cir. 2004) (citation omitted) (non-FOIA case).

Even more egregiously, based on an entry of June 15, 2011, EPIC seeks fees for time

spent responding to the Court's order for EPIC to show cause.  See  Ex. A at Line No. 9 (June

15, 2011 Entry of M. Rotenberg).  The Court entered this order after EPIC failed to appear at a

status conference through a properly admitted attorney.  Minute Order of June 13, 2011

("[P]laintiff was not represented at the [Initial Status Conference]. Therefore it is ORDERED

that counsel for Plaintiff SHOW CAUSE by 6/20/2011 why sanctions should not be imposed for

his non-appearance.").  The United States should not have to pay for EPIC's failure to properly

appear at a status conference.  See, e.g., Heller v. District of Columbia, 832 F. Supp.2d 32, 53

(D.D.C. 2011) (holding that attorney's time "spent 'correcting an appendix because of counsel

error' is not compensable").[7]

   EPIC's request for these unallowable costs should be denied.

### g.   EPIC Fails to Exercise Billing Judgment And Seeks Fees For Overstaffed "Conferences" Containing Eight Attorneys.

EPIC seeks compensation for two unnecessary and duplicative "conferences" on March

22, 2013 and March 25, 2013 that included seven and eight attorneys, respectively.  See ECF No.

28-3 at 3; Ex. A at Line Nos. 34-40; 42-49.  As an initial matter, EPIC has wholly failed to state

what was addressed in these "conferences" so that the Court might determine their

reasonableness or their allowability.  See Role Models America, Inc. v. Brownlee, 353 F.3d 962,

971 (D.C. Cir. 2004) ("Similarly inadequate are the numerous entries in which attorneys billed

simply for 'research' and 'writing,' or for time spent in teleconferences or meetings-over one

hundred in total-the purposes of which are not provided.").  Indeed, EPIC offers no basis for the

---

[7] Similarly, EPIC asks the Court to charge the United States for time such as "Review
Accounting," without explaining why this is properly charged to TSA.  Ex. A at Line No. 61
(April 3, 2013 Entry of M. Rotenberg).

Court to conclude that this conference was reasonably necessary to obtain some relief under

FOIA.   Thus, EPIC should receive nothing for the conference.

But even if the Court were to award EPIC some time for these "conference[s]," it is

unclear why EPIC believed it necessary to bill time for so many of the attorneys in these

conferences, particularly given that several of these individuals – Khaliah Barnes, Julia Horwitz,

Davis Jacobs, and Jeramie Scott – were recent law school graduates who had not participated in

this litigation at all beforehand, or since.   Courts should examine with skepticism claims that

several lawyers were needed to perform a task, and should deny compensation for such needless

duplication.  Trimper v. City of Norfolk, 58 F.3d 68, 76-77 (4th Cir. 1995) (district court should

scrutinize fee petitions for duplicative billing when multiple lawyers seek fees.);  Lipsett v.

Blanco, 975 F.2d 934, 938 (1st Cir.1992) ("A trial court should ordinarily greet a claim that

several lawyers were required to perform a single set of tasks with healthy skepticism.");

Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980) (holding "[if] three attorneys are

present at a hearing when one would suffice, compensation should be denied for the excess

time.").

Hensley also requires the district court to exclude from the calculation, and a prevailing

party to exclude from its fee request, hours that are "excessive, redundant or otherwise

unnecessary."  461 U.S. at 434; accord Oklahoma Aerotronics, Inc. v. United States, 943 F.2d

1344, 1347 (D.C. Cir. 1991) (courts must disallow "excessive, redundant, or otherwise

unnecessary" hours).  Some courts view this requirement as a matter of billing judgment.  See

e.g. Brown v. Bolger, 102 F.R.D. 849, 862-63 (D.D.C. 1984).

Not only has EPIC failed to state the activities addressed in these "conferences," it

charged the government time for each attendee, totaling 3.5 hours for the first 30-minute

"conference" and 3.2 billing hours for the second 24-minute "conference."  Attorneys ordinarily do not charge their clients fees for time spent on internal meetings because they are often not the most productive use of time and have little relevance to resolving the case.  Additionally, internal meetings are often disproportionately expensive in relation to their benefit if fees are charged for multiple attorneys.  Even if some amount of conference time would be billable, the amount billed here is clearly excessive.  See Shephard v. Dorsa, No. 95-8748, 1998 WL 1799018, at 2 (C.D. Cal. July 2, 1998) (reducing hours by a flat percentage to account for excessive conferencing); Keith v. Volpe, 644 F. Supp. 1317, 1324 (C.D. Cal. 1986)  ("[T]he court has deleted all that time reflected in nonserial entries involving conferences of three or more people").  Rather, assuming that EPIC had justified that these "conferences" were litigation expenses connected to this case, the amount billed for each conference should be reduced to the amount attributable to one junior attorney and one senior attorney, which would give EPIC at most $375 for the first conference ($122.50 + $252.50) and $300 for the second conference ($202 + $98).  The remainder of the fees for these conferences should not be allowed.

Another example comes from EPIC's request for compensation for time spent reviewing, "discuss[ing]" and "conferenc[ing]" about the PowerPoint that Defendant released following the Court's order.  Ex. A at Line Nos. 84-86, 88.  Again, EPIC does not explain why it should be permitted to bill time for multiple attorneys and multiple conferences to discuss the tiny amount of information released.  Nor does EPIC attempt to explain why this time is properly included as an allowable "fee on fees,"— particularly since EPIC made no mention of the document's contents in its fee petition.

22

## II.   ANY AWARD SHOULD BE SEVERELY DISCOUNTED BASED ON NUMEROUS ERRORS AND INSTANCES OF DOUBLE-BILLING

Out of all the problems infecting EPIC's petition for fees, perhaps the most troubling are more than 60 entries—nearly one-half of the total number of entries—which are <u>identical</u> down to the minute with entries submitted in Case Number 10-1992.  These identical entries strongly suggest that EPIC is billing the United States twice for the same time.  At the very least, EPIC's request should be substantially reduced based on these and other errors.

For example, EPIC has claimed that its attorneys spent a combined 3 hours—1.5 hours for Marc Rotenberg and 1.5 hours for Ginger McCall—attending a status conference before this Court on April 17, 2013.  Ex. A at Line Nos. 110, 113.  Yet EPIC <u>again</u> sought compensation for 3 hours of attorney time for the <u>same</u> status conference in Case Number 10-1992.  <u>See</u> Ex. C. EPIC never explains why it has charged both cases for the same status conference.   Nor is there any evidence that EPIC divided its time between this case and Case Number 10-1992, by, for example, charging half to each case.[8]  Indeed, the evidence strongly suggests to the contrary: the status conference lasted only a few short minutes, and it is highly unlikely that EPIC spent more than a total of 1.5 hours per attorney at the conference.[9]  This is but one example of dozens of identical entries—entries that are identical down to the minute.  <u>Compare</u> ECF No. 28-3, at 3-7

---

[8] If EPIC were faithfully dividing its time between the two cases, then we would expect that at least <u>one</u> time entry could not be split evenly between the two cases to the tenth of an hour.  For example, if EPIC spent 0.5 hours on a task, it might have allocated 0.2 to one case and 0.3 hours to the other, or even 0.25 to both.  But this never happened in any of the dozens of identical entries that EPIC has submitted.  It would be quite remarkable that attorneys could just happen to always spend time in tenths of an hour evenly divisible by two.

[9] Similarly, Mr. Rotenberg and Ms. McCall have each claimed 0.4 hours (24 minutes) in each case for emails to and from opposing counsel sent on March 26, 2013, yet undersigned counsel's email records show only a few very short emails to and from M. Rotenberg on that date.  If EPIC were simply dividing its total time equally among the two cases, this amounts to a claim that each of its attorneys spent a total of 48 minutes on March 26 sending and receiving a few very short emails.

(records in this matter beginning March 21, 2013) with Ex. C (records in Case No. 10-1992 beginning March 21, 2013).  Entries that are identical to those submitted in Case Number 10-1992 are highlighted in green italic font in Exhibit A.

Similarly, EPIC again sought fees in both cases for 0.2 hours spent by Ginger McCall on "Email with opposing counsel on document disclosures."  ECF No. 28-3, at 5 (April 4, 2013 entry of G. McCall); Ex. A at Line No. 74.  But EPIC is not entitled to be paid twice for sending one e-mail, and it is highly doubtful that EPIC spent more than 12 minutes on a very short e-mail.  Further, the only e-mail received by defense counsel in either case on that date from Ms. McCall pertained exclusively to Case Number 10-1992, and had nothing to do with this matter.  Indeed, Ms. McCall's email was not even sent to any counsel then of record in this case, but only the lead attorney for Case Number 10-1992.  See Mead Decl. ¶ 4 (Ex. D).

Plainly, an attorney cannot bill two clients for the same time, In re Tun, 26 A.3d 313, 314 (D.C. 2011) (suspending attorney's license because  "[a] review of the vouchers revealed that respondent sought payment for the same time period for two or more clients (a practice known as "double billing") on 162 occasions"), and "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) (quoting Copeland v. Marshall, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original)).  This is all the more true when someone seeks fees against the United States.  Cf. American Petroleum Institute v. EPA, 72 F.3d 907, 912 (D.C. Cir. 1996) (non-FOIA case) ("[I]tems of expense or fees that may not be 'unreasonable between a first class law firm and a solvent client, are not [always] supported by indicia of reasonableness sufficient to allow us justly to tax the same against the United States" (quotation omitted)).  Yet EPIC's time entries strongly suggest double-billing against the taxpayers.   For this reason, its request should be

denied in its entirety.  See Keener v. Department of Army, 136 F.R.D. 140, 150-51 (M.D. Tenn. 1991) (denying fee petition and referring counsel for disciplinary proceedings because the plaintiff had sought the same fees from both Department of Army and Department of Labor, which the court described as an attempt "to perpetrate a fraud on this Court."), aff'd 1992 WL 34580 (6th Cir. 1992); see also Environmental Defense Fund, 1 F.3d at 1258 (Court "may deny in its entirety a request for an outrageously unreasonable amount").

Assuming that negligence (rather than an intentional effort) could explain the dozens of instances of what appears to be double-billing, EPIC's fee request should be substantially reduced to reflect the obvious unreliability of its records.  In fact, there are other several other entries which appear to be incorrect.

For example, EPIC alleges that Ms. McCall and Mr. Rotenberg had a "discussion with opposing counsel on motion" on April 3, 2013.  Ex. A at Line No. 64, 72.  No such conversation was had; indeed, no motion regarding this case was discussed with Mr. Rotenberg or Ms. McCall at any point anywhere near April 4.  Mead Decl. ¶ 3.  The most likely explanation is that the entry was meant to refer to Case Number 10-1992.

And it is not even clear that EPIC's sworn affidavits are accurate, even though EPIC has sought time for drafting the affidavits filed in support of its fee application.  See ECF No. 28-3 at 7; Ex. A at Line Nos. 111-112, 115-117, 119, 121.  For instance, Ginger McCall states in her May 1, 2013 affidavit that her application to the Bar of the District of Columbia is pending. McCall Aff. at ¶ 6 (ECF No. 28-10).  Yet nearly two years ago, she filed a declaration with the Court in this very case that indicated that she was already a member of the District of Columbia Bar.  Decl. of Ginger McCall ¶¶ 2, 5 (ECF No. 6).  The fact that a sworn affidavit contains such a basic error strongly suggests that there are other errors lurking in EPIC's documentation.

And, indeed, there are other manifest errors.   Consider, for example, Marc Rotenberg's time entry on October 13, 2011, where he states that he spent time on "Review Reply."  ECF No. 28-3 at 2; Ex. A at Line No. 27.  However, Ms. Stepanovich had not even begun to <u>draft</u> the reply until November 2011.  Ex. A. at Line Nos. 27-28.  Ms. Stepanovich had drafted EPIC's motion for summary judgment by this date, and Mr. Rotenberg's other entries on that day and the day before indicate time spent "Review[ing] Motion for Summary Judgment."  <u>Id.</u> at Line Nos. 21-22.  Notably, however, Mr. Rotenberg then spent no time reviewing the reply brief when it was actually written.  <u>See</u> ECF No. 28-3, at 2-3.

Or consider the fact that Ms. McCall claims she incurred time spent on a "conference" with Mr. Rotenberg on April 30, 2013.  Ex. A at Line No. 103.  And yet, despite generally attempting to charge TSA for every internal e-mail exchange and every discussion the two had, <u>see, e.g.</u>, Ex. A at Line Nos. 76, 78, 81, 84, 85, 88, 92, 95, 99, 102, Mr. Rotenberg's time reflects no such conference.  <u>See</u> <u>Role Models America, Inc. v. Brownlee</u>, 353 F.3d 962, 972 (D.C. Cir. 2004) (reducing fees in part based on "unexplained inconsistencies" such as when "one attorney's records indicate that he or she spent time meeting with another attorney, while the second attorney's records report no such meeting").

Still further, EPIC seeks time for Ms. Stepanovich to "File Motion for Summary Judgment," Ex. A at Line No. 24 (October 14, 2011) as well as to "file motion to appear pro hac vice re: Ginger McCall," <u>id</u>. at 8 (June 13, 2011).[10]  But Ms. Stepanovich filed neither document, <u>see</u> ECF Nos. 6, 14,15; indeed, despite her accounting for the majority of EPIC's hours (and nearly all of EPIC's time prior to 2013), Ms. Stepanovich never entered an appearance nor filed

---

[10] Ms. Stepanovich also states that she had a "Call with opposing counsel to discuss meet and confer" on June 1, 2011, ECF No. 28-3 at 1; Ex. A Line No. 7, but counsel does not recall ever speaking to her.   In fact, Defendant first learned of Ms. Stepanovich's involvement in the case when it received EPIC's time statement.

any documents in the case.  Curiously, the attorney who did sign and file the documents—John Verdi—appears nowhere in the records.

It is Plaintiff's burden to establish that it has maintained contemporaneous and accurate records that reflect its actual time.  See, e.g., In re North, 32 F.3d 607, 608-09 (D.C. Cir. 1994) (denying fee request in its entirety when there were no contemporaneous records); National Ass'n of Concerned Veterans v. Secretary of Defense, 675 F.2d 1319, 1327 (D.C. Cir. 1982). But these errors—particularly when coupled with evidence of double billing, requests for unallowable and redundant time, and vague entries—raise considerable doubt about the reliability of EPIC's records in general.  For example, if EPIC is unable to identify even the correct case that a particular time entry is associated with, it is dubious whether it has accurately described other information, such as amount of time spent or a description of the work.  The Court should discount the entire award by at least 50% to take into account the unreliability of EPIC's entries.  See, e.g., Role Models America, 353 F.3d at 973 (reducing award by 50% because, among other things, there were several inconsistencies in the time entries).

## III.   ANY "FEES ON FEES" AWARDED MUST BE SEVERELY REDUCED

In addition to claiming fees for litigating the merits of its mostly-unsuccessful summary judgment motion, EPIC also seeks "fees on fees" for time spent following the Court's ruling on summary judgment.  These expenses comprise of unspecified "conferences," background research on attorney's fees, negotiations with Defendant, and preparation of EPIC's filings on attorneys' fees.  Such expenses claimed by EPIC total $9,638 to date.  Depending on how much time EPIC spends on the Reply Brief, these fees could potentially exceed the amount EPIC has sought on the merits.

Although "fees on fees" may be awarded in the Court's discretion, the Court should review EPIC's requests carefully.  See, e.g., Judicial Watch, 878 F.Supp.2d at 240 ("Courts, therefore, have an obligation to scrutinize the hours spent preparing the fee petitions to insure that the total is reasonable and that it does not represent a windfall for the attorneys." (quotation omitted)).  As argued above, EPIC's request for fees on the merits suffer from a number of defects.  At the very least, the Court should reduce the amount of "fees on fees" to take into account reductions that the Court makes to EPIC's fee award.  Moreover, the Court should deny EPIC all fees incurred after Defendant served its Offer of Judgment under Rule 68, including fees incurred in connection with this motion.

Awarding EPIC 100% of its "fees on fees" despite the numerous problems with its request would encourage future FOIA plaintiffs to litigate rather than settle attorney's fees disputes, driving up the amount of fee litigation before the Court.  Future litigants could seek unreasonable attorney's fee amounts, and then proceed to litigate the issue of fees, comfortable with the knowledge that any reduction in the attorney's fee amount requested on the merits would be more than made up in "fees on fees."   This is not what FOIA contemplates, and it should not be allowed by the Court.  In fact, if the Court determines EPIC's initial fee request was "outrageously unreasonable," it retains discretion to award EPIC no fees at all to discourage fee petitioners from submitting an excessive request.  See Envtl. Defense Fund, 1 F.3d at 1258. The need to rein in excessive requests is all the more critical in a time of reduced budgets.  Cf. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, ---, 130 S.Ct. 1662, 1677 (2010) ("[T]he fees are paid in effect by state and local taxpayers, and because state and local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services.").

28

a.   **"Fees On Fees" Should Be Reduced in Accordance with EPIC's Success In Obtaining Fees on the Merits.**

If the Court does choose to grant EPIC "fees on fees," such an award should be reduced significantly to the same extent that the Court reduces any award to EPIC on the merits.  See Commissioner, I.N.S. v. Jean, 496 U.S. 154, 163 n. 10 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."); Judicial Watch, Inc. v. U.S. Dep't of Justice, 878 F. Supp. 2d at 241 (after finding that plaintiff was entitled to only 5.3% of fees sought for litigating the merits, awarding plaintiff the same percentage of the "fees on fees" plaintiff sought); Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd., 248 F.R.D. 64, 71 (D.D.C. 2008) (non-FOIA) ("The Court finds that a reduction of hours spent preparing the fee request in proportion to the time excluded by the Court for preparing the motion to compel is an appropriate method to determine attorneys' fees in this case."); Nat'l Veterans Legal Svcs. Prog v. Department of Veteran Affairs. 1999 WL 33740260, at *5-*6 (D.D.C. 1998) (finding that an award of "fees on fees" should be reduced by the amount of time spent unsuccessfully defending hours eliminated by the court).

As set forth above, it is Defendant's position that EPIC has dramatically inflated the amount of fees sought in this case by charging the Government for losing claims, using incorrect Laffey Matrix rates, including unallowable expenses, and possibly seeking a double recovery by double-billing, among other things.  If the Court agrees with any or all of these concerns and subsequently reduces EPIC's award of fees on the merits, it should also reduce the award of "fees on fees" by the same percentage as any reduction to EPIC's underlying fee request that may be ordered by the Court.  Without a reduction in the amount of "fees on fees" commensurate with the reduction of fees on the merits, FOIA plaintiffs will have a strong incentive to litigate

inflated fee petitions (after first demanding unreasonable settlements from the agencies), and

recover through "fees on fees" what they cannot obtain through fees on the merits.

> **b. Because Defendant Served a Rule 68 Offer of Judgment on April 12, 2013, Defendant Requests that the Court Divide any Fee Award into Fees Incurred Until and After that Date.**

One final important condition applies to any fees awarded to EPIC as a result of

Defendant's service of an Offer of Judgment on EPIC on April 12, 2013 pursuant to Fed. R. Civ.

P. 68.  See Ex. E.  This Offer of Judgment was far greater than the amount to which EPIC is

reasonably entitled, and was tendered by Defendant in a good-faith attempt to settle this

litigation without burdening the Court with fee litigation.  EPIC did not accept this offer within

14 days of service, choosing instead to litigate and further drive up its expenses.

Under Rule 68, if an offeree prevails but recovers less than the amount that was offered,

the offeree cannot recover any costs incurred after the offer.  See Tunison v. Continental Airlines

Corp., 162 F.3d 1187, 1192-93 (D.C. Cir. 1998); B.L. Through Lax v. District of Columbia, 517

F. Supp. 2d 57, 60 (D.D.C. 2007); Wright & Miller, Federal Practice and Procedure, § 3006.

The Supreme Court has held that such "costs" include attorney's fees if the relevant fee-shifting

statute defines "costs" to include attorney's fees.  See Marek v. Chesney, 473 U.S. 1, 9 (1985).

FOIA does, in fact, include attorney's fees as part of its definition of costs.  See 5 U.S.C. §

552(a)(4)(E) (authorizing award of "attorney fees and other litigation costs") (emphasis added);

Marek, 473 U.S. at 44 (Brennan, J., dissenting) (listing FOIA as a statute in which attorney's fees

are included as costs); Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of

Justice, No. 1:10cv750, ECF No. 21 (unpublished) (attached as Ex. F) at 2-4 (holding that FOIA

includes attorneys' fees as litigation costs for the purposes of Rule 68 and reducing award of

plaintiff that rejected Rule 68 offer, noting that "the thrust of Rule 68" is that "a party who recovers less than it was offered must bear the expense of its erroneous choice").

For the purpose of determining whether a judgment for attorneys' fees is, or is not, more favorable than an unaccepted Offer of Judgment, the point of comparison is the court's determination of the amount of fees reasonably incurred <u>prior</u> to the Offer of Judgment.  <u>See</u> <u>Marek</u>, 473 U.S. at 7 ("[P]ost-offer costs merely offset part of the expense of continuing the litigation . . . and should not be included in the calculus"); <u>Goos v. Nat'l Ass'n of Realtors</u>, 68 F.3d 1380, 1382 (D.C. Cir. 1995).

At this time, unless requested to do so by the Court, Defendant is not disclosing the amount of its Offer of Judgment out of concern that it could influence improperly the Court's factfinding or be construed as a concession by Defendant that the amount specified in the Offer represents a reasonable award.  Rather, Defendant respectfully requests that if the Court finds EPIC entitled to attorneys' fees, the Court divide such fees into two categories: those incurred until April 12, 2013, and those incurred after that date, and that the Court refrain from entering final judgment for any amount of attorneys' fees immediately.[11]  Defendant will then determine whether the Offer of Judgment is greater or less than any pre-Offer expenses awarded to EPIC, and will expeditiously either file the unredacted Offer (and a request to deny any fees subsequent to the Offer), or will file a Notice that the Offer did not exceed EPIC's pre-Offer expenses.

## IV.    PROPOSED CALCULATION OF FEE AND COST AWARDS.

Consistent with the arguments outlined above, Defendant proposes the following calculation of EPIC's reasonable fees and costs.

---

[11] In its proposed calculation <u>infra</u>, Defendant has divided its proposed fees into those incurred until and after April 12, 2013.

**Time Before August 2011.**

EPIC should receive no more than $514 for attorney's fees bringing the complaint:

| Description | Calculation | Result |
|---|---|---|
| Fee sought for pre-disclosure time | Sum all of EPIC's records before August 2011 | $2,539.50 |
| Exclude time spent on motion for admission pro hac vice and responding to Court's order to show cause | $2,539.50 - $787.50 | $1,752 |
| Apply correct rate to unexcluded time incurred by A. Stepanovich | 7.2 x $135 + 0.4 x 140 | $1,028 |
| Apply 50% reduction based on unreliable records | $1,028 x 50% | **$514** |

**Time Between August 2011 and March 2013.**

Because EPIC has sought attorney's fees exclusively premised on the June through August 2011 release of records, it should not receive any fees spent on summary judgment briefing that post-dated the release. Moreover, TSA's withholdings had a reasonable basis in law, and EPIC is not entitled to any fees for this time. Thus, EPIC should receive **$0**.

In the alternative, EPIC should receive no more than $642 for time spent on summary judgment, as follows:

| Description | Calculation | Result |
|---|---|---|
| EPIC's Request | Sum of EPIC's records between August and March 2013 | $16,304.50 |
| Determine Fees Incurred on All MSJ Arguments | Hours x Appropriate <u>Laffey</u> Matrix rates | $9,944.50 |
| Discount based on limited success on merits | $9,944.50 x 12.9% | $1,282.84 |
| Apply 50% reduction based on unreliable records | $1,282.84 x 50% | **$641.42** |

**Time Incurred Between March 2013 and Service of the Offer of Judgment**.

Assuming that the Court awards EPIC some fees for its time spent on summary judgment, EPIC's "fees on fees" should be limited to no more than $144.16:

| Description | Calculation | Result |
|---|---|---|
| EPIC's request | Sum all entries March 1, 2013 through April 12, 2013 | $5,318 |
| Eliminate all individuals but M. Rotenberg and G. McCall from "conferences" | $5,318 - $1,200.50 | $4,117.50 |
| Eliminate excessive time discussing document | $4,117.50 - $297 | $3,820.50 |
| Exclude time that is clearly related to another case | $3820.50 - $124 | $3,696.50 |
| Calculate EPIC's Ratio of Success on Requested Fees by Comparing Amount Awarded on Merits to Amounts Sought | $(864+642) ÷ ($16304.50+$2539.50+$350) | 7.8% |
| Multiply Fees on Fees by Success Ratio | $3,696.50 x .078 | $288.32 |
| Apply 50% reduction based on unreliable records | $288.32 x 0.50 | **$144.16** |

**Time Incurred After Service of Offer of Judgment**.

EPIC should receive nothing for all time incurred after the Offer of Judgment was served on April 12, 2013.  See Fed. R. Civ. P. 68.

| Description | Calculation | Result |
|---|---|---|
| EPIC's request | Sum all entries April 12, 2013 through present | $4,320 |
| Apply 50% reduction based on unreliable records and double billing | $4,320 x 50% | **$2,160** |
| Apply Rule 68 | | **$0** |

33

In sum,

| | |
|---|---|
| December 2010 to August 2011 (catalyst theory): | $514 |
| August 2011 to March 2013 (summary judgment): | $0 - or - $641.42 |
| March 2013 to present (fees on fees): | $144.16 |
| Complaint filing fee | $350 |

**TOTAL:**                                                      **$1,649.58**

Moreover, if the Court determines EPIC's initial fee request was "outrageously unreasonable," it retains discretion to award EPIC no fees, or reduced fees, in lieu of these amounts in order to discourage fee petitioners from submitting an excessive request. See Envtl. Defense Fund, 1 F.3d at 1258. This clearly appears to be a case in which the plaintiff made "'unreasonable demands, [believing] that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place.'" Id. Defendant submits that in light of EPIC's complete failure to segregate expenses for claims on which it did not succeed, failure to discount its summary judgment fees in light of its minimal success, overstaffing this matter during the later stages of the case, and its improper claims of attorney rates for staff not admitted to the bar, EPIC should receive only its costs for filing the Complaint, and nothing more. At minimum, though, Defendant respectfully requests that any fees awarded to EPIC be reduced by an amount the Court determines appropriate to deter this type of unreasonable behavior by FOIA fee applicants in the future. Such unreasonable actions will only increase the number of fee disputes that must be submitted to the Court for adjudication, as federal agencies, particularly during these difficult financial times, are constrained not to yield to unreasonable demands. See Perdue, 130 S. Ct. at 1677 ("[T]he fees

are paid in effect by state and local taxpayers, and because state and local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services.").

## CONCLUSION

Based on the foregoing, Defendant requests that EPIC be awarded $864 for its costs and fees incurred to bring this litigation and catalyze the release of records. Alternatively, to the extent that the Court deems EPIC entitled to some attorneys' fees associated with its summary judgment filings and "fees on fees" briefing, Defendant requests that the overall award be limited to $1,649.58.

Date: May 17, 2013                    Respectfully submitted,

                                      STUART F. DELERY
                                      Acting Assistant Attorney General

                                      RONALD S. MACHEN JR.
                                      United States Attorney for
                                      the District of Columbia

                                      ELIZABETH J. SHAPIRO
                                      Deputy Branch Director


                                      /s/ Joseph Mead
                                      JOSEPH MEAD (MI Bar No. P71528)
                                      Trial Attorney
                                      United States Department of Justice
                                      Civil Division, Federal Programs Branch
                                      20 Massachusetts Avenue, N.W.
                                      Washington, D.C. 20530
                                      Telephone: (202) 305-8546
                                      Fax: (202) 305-8517
                                      Email: joseph.w.mead@usdoj.gov

                                      Attorneys for Defendant